Case No. 24-20480

# United States Court of Appeals for the Fifth Circuit

LOYDA ALVAREZ; LEDYS DUNN, Independent
Executor of the Estate of Sammie D. Dunn; ALBERT RODRIGUEZ;
AN NG; ANDREW JAMIESON, *et al.*,

*Plaintiffs-Appellees / Cross-Appellants,*

v.

NES GLOBAL, L.L.C.,

*Defendant-Appellant / Cross-Appellee.*

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division
Civil Action No. 4:20-CV-01933

## PETITION FOR INITIAL HEARING EN BANC OF APPELLANT/CROSS-APPELLEE NES GLOBAL, LLC

J. Stephen Barrick
Eric Grant

HICKS THOMAS LLP
700 Louisiana St., Suite 2300
Houston, Texas 77002
(713) 547-9100

*Attorneys for Defendant-Appellant
NES Global, LLC*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-20480
*Lloyda Alvarez, et al. v. NES Global, LLC*
(USDC No. 4:20-CV-01933)

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    Loyda Alvarez - *Plaintiff-Appellee*

2.    Ledys Dunn - *Independent Executor of the Estate of Plaintiff-Appellee Sammie D. Dunn*

3.    Albert Rodriguez - *Plaintiff-Appellee*

4.    An Ng - *Plaintiff-Appellee*

5.    Andrew Jamieson - *Plaintiff-Appellee*

6.    Josephson Dunlap LLP (Michael A. Josephson, Andrew W. Dunlap, and Carl A. Fritz) - *attorneys for Plaintiffs-Appellees*

7.    Bruckner Burch, PLLC (Richard J. "Rex" Burch) - *attorneys for Plaintiffs-Appellees*

8.    NES Global, LLC - *Defendant-Appellant*

9.    NES Global Talent US Inc. - *sole member of Defendant-Appellant*

i

10. Baker & Hostetler LLP (Ashlee Cassman Grant, Justin A. Guilfoyle, and Jennifer R. DeVlught) - *attorneys for Defendant-Appellant*

11. Hicks Thomas LLP (J. Stephen Barrick and Eric Grant) - *attorneys for Defendant-Appellant*

*/s/ J. Stephen Barrick*
Attorney of record for Appellant
NES Global, LLC

## STATEMENT PURSUANT TO RULE 40(b)(2)

The outcome of this appeal is largely controlled by this Court's interpretation—in *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 718-25 (5th Cir. 2024)—of the "salary basis" test established by 29 C.F.R. § 541.602(a), which test helps determine whether an employee is exempt from the time-and-a-half overtime-pay requirement of the Fair Labor Standards Act, 29 U.S.C. § 207(a). But for two reasons, *Gentry*'s interpretation of § 541.602(a) should be reconsidered en banc.

First, that interpretation conflicts with two other decisions of this Court: both (1) the **earlier**-decided *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427, at *2 (5th Cir. June 21, 2023), *cert. denied*, 144 S. Ct. 820 (2024); and (2) the **later**-decided *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 299-300 (5th Cir. 2024). En banc consideration is therefore necessary to secure uniformity of this Court's decisions. *See* FED. R. APP. P. 40(b)(2)(A).

Second, *Gentry*'s interpretation of § 541.602(a) also conflicts with the authoritative decisions of other United States Courts of Appeals: *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 760-62 (3d Cir. 2023), and *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1174-79

(10th Cir. 2023), *cert. denied*, 144 S. Ct. 2630 (2024). The latter expressly drew support from *Hebert* and at the same time did "not find *Gentry* persuasive." *Id.* at 1178, 1179 n.4 (citing district court decision that was affirmed in relevant part by this Court). *See* FED. R. APP. P. 40(b)(2)(C).

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 40(b)(2) ...................................... iii

TABLE OF CONTENTS ................................................................ v

TABLE OF AUTHORITIES ..................................................... vi

STATEMENT OF THE ISSUE .............................................. 1

STATEMENT OF THE CASE ................................................ 1

STATEMENT OF RELEVANT FACTS ................................... 5

ARGUMENT ..................................................................... 6

   I.   *Gentry*'s interpretation of 29 C.F.R. §§ 541.602(a) and 541.604(a) conflicts with two of this Court's decisions......... 11

      A.   *Venable* ........................................................ 12

      B.   *Hebert* ......................................................... 13

   II.   *Gentry*'s interpretation of 29 C.F.R. §§ 541.602(a) and 541.604(a) also conflicts with authoritative decisions of the Third and Tenth Circuits............................................ 15

      A.   The Tenth Circuit's decision in *Wilson* ........................ 15

      B.   The Third Circuit's decision in *Higgins* ....................... 17

CONCLUSION .................................................................. 18

CERTIFICATE OF COMPLIANCE ........................................ 19

# TABLE OF AUTHORITIES

## Cases

*Brock v. Claridge Hotel & Casino,*
    846 F.2d 180 (3d Cir. 1988)............................................................ 11

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.,*
    102 F.4th 712 (5th Cir. 2024)........................... iii, 8, 9, 10, 11, 14, 18

*Greinstein v. Granite Servs. Int'l Inc.,*
    2024 WL 3771455 (5th Cir. Aug. 13, 2024) (per curiam) .............. 14

*Hebert v. FMC Technologies, Inc.,*
    No. 22-20562, 2023 WL 4105427 (5th Cir. June 21,
    2023), *cert. denied,* 144 S. Ct. 820 (2024) ....................iii, 11, 13, 14

*Helix Energy Solutions Group, Inc. v. Hewitt,*
    598 U.S. 39 (2023) ...................................................................... 2, 10

*Higgins v. Bayada Home Health Care Inc.,*
    62 F.4th 755 (3d Cir. 2023)...................................................iii, 15, 17

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
    133 F.4th 575 (6th Cir. 2025)........................................................ 18

*Venable v. Smith Int'l, Inc.,*
    117 F.4th 295 (5th Cir. 2024)..................................iii, 11, 12, 13, 17

*Wilson v. Schlumberger Tech. Corp.,*
    80 F.4th 1170 (10th Cir. 2023),
    *cert. denied,* 144 S. Ct. 2630 (2024)................................iii, iv, 15, 16

**Statutes, Regulations, and Court Rule**

Fair Labor Standards Act

     29 U.S.C. § 207 ............................................................................iii, 2

     29 U.S.C. § 213 ................................................................................2

U.S. Department of Labor Regulations

     29 C.F.R. § 541.602 .................................................iii, 1, 3, 4, 6, 7, 8

     29 C.F.R. § 541.604 ........................................................ 3, 4, 7, 8, 10

     89 Fed. Reg. 32842 (Apr. 26, 2024) .................................................4

Fed. R. App. P. 40 ........................................................................ iv, 14, 18

## STATEMENT OF THE ISSUE

U.S. Department of Labor regulations establish the "salary basis" test to help determine whether an employee is exempt from the overtime-pay requirements of the Fair Labor Standards Act (FLSA). *See* 29 C.F.R. § 541.602(a). All courts agree that the test is satisfied if an employee is regularly paid—on a weekly (or less frequent) basis—**only** a predetermined or guaranteed minimum amount. The issue presented by this petition—an issue that divides courts both within this Circuit and among the Circuits—is whether the salary-basis test continues to be satisfied if the employee is paid **additional** compensation on an hourly or daily basis.

## STATEMENT OF THE CASE

Plaintiffs-Appellees Loyda Alvarez, et al., individually and behalf on all others similarly situated (Plaintiffs), are employees of Defendants-Appellants NES Global, LLC (NES), a global staffing company that supplies workers for various industries, including the oil and gas industry. ROA.1271, 1315, 4398. Plaintiffs sued NES in the Southern District of Texas, asserting a claim that NES failed to pay them time-

1

and-a-half overtime pay in violation of the FLSA, 29 U.S.C. § 207(a). ROA.4398-99 (summary judgment order).

NES defended against Plaintiffs' FLSA claim primarily on the ground that Plaintiffs are exempt from the statute's overtime-pay requirements because they are "employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1). As the Supreme Court recently explained, since 1940, "the Secretary's 'bona fide executive' standard has comprised three distinct parts," the first of which is the "salary basis" test. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023). The "basic idea" of the salary-basis test "is that an employee can be a bona fide executive only if he receives a predetermined and fixed salary—one that does not vary with the precise amount of time he works." *Id.* at 45 (internal quotation marks omitted).

As distilled by the parties' cross-motions for summary judgment, the district court observed that the instant case "turns on whether [NES]'s pay policy passes the salary-basis test, one of the three required elements of the bona fide executive exemption." ROA.4401. What the

2

court called the "main salary-basis provision" appears in regulations codified at 29 C.F.R. § 541.60<u>2</u>(a):

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain exceptions], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

ROA.4402 (alterations by the district court).

This provision is supplemented by 29 C.F.R. § 541.60<u>4</u>(a), which addresses compensation consisting of a "Minimum guarantee plus extras":

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example . . . . Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $1,128 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time

hourly amount, time and one-half or any other basis), and may include paid time off.[1]

The district court determined that NES's compensation structure for Plaintiffs (as described below) failed to satisfy the salary-basis test set forth in § 541.60$\underline{2}$(a), as supplemented by § 541.60$\underline{4}$(a). ROA.4405-11. In the court's view, such structure likewise failed an alternative means of satisfying the test—an issue that NES does not raise on appeal—and NES accordingly failed to show that Plaintiffs qualified for the bona fide executive exemption, such that Plaintiffs were entitled to partial summary judgment on their FLSA claim. ROA.4414-15, 4425.

Subsequently, the parties stipulated to the number of overtime hours worked by Plaintiffs and submitted an agreed form of judgment based on the stipulation and the district court's summary-judgment rulings. ROA.4432-33, 4830-36. The court signed and entered the parties' proposed final judgment. ROA.4837. NES timely appealed that judgment. ROA.5371.

---

[1] This regulation was amended after the district court issued its decision on summary judgment. *See* 89 Fed. Reg. 32842, 32972 (Apr. 26, 2024). In the text quoted above, only the dollar amount changed, from $684 to $1,128.

4

## STATEMENT OF RELEVANT FACTS

The key relevant fact in this case is the structure by which NES compensated the affected employees, as illustrated by reference to lead Plaintiff Loyda Alvarez. In 2019 and 2020, NES employed Ms. Alvarez as a Planning and Scheduling Lead II (i.e., a project scheduler) to work with XTO Energy in Midland, Texas. ROA.1276. NES paid her a weekly base salary of $1,120 per week. *Id.* As the district court correctly observed, this meant that she "was entitled to $1,120 for any week in which she performed **any** work." ROA.4404 (emphasis added). That amount far exceeded the then-applicable minimum weekly rate for exempt employees, namely, $455 in 2019 and $684 in 2020. ROA.4401 & n.1.

But Ms. Alvarez received additional compensation, specifically "an additional $560 per day for any week in which she worked more than two days." ROA.4404. Under this compensation structure, NES paid Ms. Alvarez (who worked four months in 2019 and for less than five months in 2020) at an annualized rate of $120,000 per year in 2019 and $175,000 per year in 2020. ROA.1276-77.

All other Plaintiffs enjoyed the benefits of the same compensation structure, i.e., a "guaranteed . . . weekly amount of pay . . . for any

workweek in which they performed **any** work, plus additional compensation for all days (or hours) worked in excess of" a set number of days. ROA.4403. This structure resulted in base salaries ranging from $675 to more than $2,250 per week and total annualized compensation for all Plaintiffs of at least $100,000 per year. ROA.1277.

## ARGUMENT

As noted in the Statement of the Issue (p. 1), all of the decisions cited below agree that the salary-basis test established by 29 C.F.R. § 541.602(a) is satisfied if an employee is regularly paid—on a weekly (or less frequent) basis—**only** a predetermined or guaranteed minimum amount. That conclusion readily follows from the plain text of § 541.602(a): the employee would "regularly receive[] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." Thus, for example, if Ms. Alvarez had received no additional compensation beyond her base salary, she would have regularly received each pay period, on a weekly basis, a predetermined amount of $1,120 constituting all of her compensation, which amount was not subject to

reduction so long as Ms. Alvarez had "performed any work" at all during the given week. ROA.4404.

But like her fellow Plaintiffs and all of the employees in the decisions cited below, Ms. Alvarez **did** receive additional compensation. Did that compensation, by itself, cause her to fail the salary-basis test? By the plain text of the regulations, the answer is *no*. Consider first § 541.602(a), as just quoted above. Notice that the predetermined amount that an employee regularly receives on a weekly basis may constitute "all **or part** of the employee's compensation" (emphasis added). Therefore, § 541.602(a) itself makes clear that base pay that otherwise satisfies the salary-basis test does not lose its satisfactory quality just because it constitutes only "part" of an employee's compensation.

If § 541.60<u>2</u>(a) itself were not enough, there is also § 541.60<u>4</u>(a), whose title—"Minimum guarantee **plus extras**"—indicates that it addresses this very issue. The very first sentence of the latter provision confirms in crystal clear terms that an "employer may provide an exempt employee with **additional compensation** without losing the exemption or violating the salary basis requirement" (emphasis added). The only requirement is that the "employment arrangement also includes a

7

guarantee of at least the minimum weekly-required amount paid on a salary basis," *i.e.*, that the base salary must be a guaranteed weekly minimum. And the very last sentence of § 541.604(a) addresses another relevant issue, namely, the "basis" on which the additional compensation must be paid. Specifically, even though the base salary must be paid "on a weekly, or less frequent basis," § 541.60<u>2</u>(a), "additional compensation may be paid on **any basis**," including as a "straight-time **hourly** amount" or on "**any other** basis," § 541.60<u>4</u>(a) (emphasis added).

Therefore, the additional, daily-based compensation received by Ms. Alvarez and her fellow Plaintiffs did **not** cause them to fail the salary-basis test. To say the same thing in more general terms, the salary-basis test continues to be satisfied if the employee is paid additional compensation on an hourly or a daily basis.

Unfortunately, the panel in *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 718-25 (5th Cir. 2024), came to a different conclusion. *Gentry* involved a "two-tiered" compensation structure under which two employees were paid first a "Guaranteed Weekly Salary equal to 8 hours of pay," *id.* at 716, which amounted to "$984 and $1,200 per week, respectively," *id.* at 724. As with Plaintiffs here, these base pay

amounts far exceeded the then-applicable minimum weekly rate for exempt employees, which (as stated above) was $455 in 2019. The two employees in *Gentry* were also paid additional compensation that varied from week to week: "for any hour they worked beyond their eighth hour, [they] were paid at their hourly rates, including any hours worked over 40." *Id.* at 716. Under the plain text of §§ 541.602(a) and 541.604(a), it should have been an easy conclusion that this compensation structure satisfied the salary-basis test. But *Gentry* made the question hard by ignoring that plain text in three respects.

*First*, the panel held that because the employees' "actual earnings could only be ascertained by determining the number of **hours** worked that week," the employer "did not compensate [the employees] on a '**weekly** basis.'" *Id.* at 721, 722 (emphasis added). This holding ignored the express statement in § 541.602(a) that the predetermined amount

regularly received "on a weekly, or less frequent basis" need constitute only "**part**" of the employee's total compensation.[2]

*Second*, the panel in *Gentry* held that while § 541.604(a) "permit[s] employees to be paid by the hour (in some form) so long as the employer guarantees 'at least the minimum weekly-required amount paid on a salary basis'" (as the *Gentry* employer guaranteed to its two employees), nonetheless the provision "expressly contemplates hourly compensation [only] for work 'beyond the normal workweek.'" 102 F.4th at 723-24. This holding ignores that the quoted language was expressly couched as an "example," not a stand-alone requirement: "Thus, **for example** . . . . [Two examples involving commissions and percentages of sales or profits.] Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $1,128 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a) (emphasis added).

---

[2] In this context, the *Gentry* panel purported to rely on the Supreme Court's decision in *Helix*, but that decision is manifestly inapposite to the issue at hand. The employees in *Gentry* (and in all of the other cases discussed herein) were compensated under a two-tiered or bifurcated structure in which the employees were unambiguously paid on a "weekly, or less frequent basis" in the first (or "base") tier. *Helix*, by contrast, concerned an employee whose "paycheck is based **solely** on a **daily** rate." 598 U.S. at 43 (emphasis added).

*Third*, the panel in *Gentry* more generally endorsed a Third Circuit decision that found the salary-basis test not satisfied by any compensation structure that was "dissimilar to the regulatory examples" set forth in § 541.604(a). *Id.* at 725 (citing *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988)). That endorsement again ignores that the examples are just that—**examples**. And it also ignores that the regulation's final sentence underscores that, whatever the basis of payment in the examples, additional compensation may be paid "on any basis," specifically including an "hourly" basis.

Notably, the panel in *Gentry* denied both (1) a timely and unopposed motion to extend the time to file a petition for rehearing en banc and (2) an unopposed motion to file that rehearing petition one day out of time. *See* No. 22-40219, Doc. Nos. 127 and 136 (June 7 and 14, 2024).

**I.    *Gentry*'s interpretation of 29 C.F.R. §§ 541.602(a) and 541.604(a) conflicts with two of this Court's decisions.**

In its interpretation of the two relevant regulations, *Gentry* cannot be reconciled either with *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 299-300 (5th Cir. 2024), or with *Hebert v. FMC Techs., Inc.*, 2023 WL 4105427, at *2 (5th Cir. June 21, 2023), *cert. denied*, 144 S. Ct. 820 (2024).

112711487

### A.  *Venable*

Like the employees in *Gentry* and in the instant case who were paid a guaranteed (weekly) salary, the employees in *Venable* were paid a guaranteed (annual) salary, *i.e.*, one "which is not subject to reduction regardless of the numbers of hours or days worked and [which] more than satisfies the requisite guaranteed minimum weekly salary requirement." 117 F.4th at 299-300. If that were the only basis of the *Venable* employees' compensation, no issue would have arisen under § 541.602(a). But again, as in *Gentry* and in the instant case, *Venable* involved a "compensation scheme [that] was bifurcated," specifically "[1] an annual salary and [2] daily-rate job bonuses." *Id.* at 298. As described above, such a weekly-or-greater-based salary supplemented by a less-than-weekly-based bonus was precisely the kind of compensation scheme that *Gentry* **excluded** from the purview of § 541.602(a).

*Venable*, however, reached precisely the opposite conclusion. That employees "are given the opportunity to make additional compensation"—specifically including "additional compensation **at a day rate**"—does **not** exclude the compensation structure from § 541.602(a). 117 F.4th at 300 (emphasis added). That is, "the additional compensation at the daily

12

rate does not defeat [the employees'] qualification for the bona fide executive exemption." *Id.* In short, unlike the employees in *Gentry*, the employees in *Venable* satisfied the salary-basis test of § 541.602(a).[3]

### B.   Hebert

Nearly a full year before *Gentry* was finally decided, *Hebert* considered the application of § 541.602(a) to an employee who "received a bi-weekly salary without regard to the number of hours or days he worked." 2023 WL 4105427, at *2. Again, if that were the only basis of Mr. Hebert's compensation, no issue would have arisen under the regulation. But Mr. Hebert received additional compensation: "in addition to his salary, he was also paid a field service premium for **days** that he was required to be in the field to assist with installation projects." *Id.* (emphasis added). Mr. Hebert argued that this premium "means that he was not paid on a salary basis." *Id.* No doubt *Gentry* would have accepted this argument on the ground that the premium did not constitute "hourly compensation for work beyond the normal workweek,"

---

[3] We note that although *Venable* cited *Gentry*, *see* 17 F.4th at 300, the former did not purport to distinguish or otherwise reconcile the latter.

102 F.4th at 723, and that the premium was "dissimilar to the regulatory examples" set forth in § 541.604(a), *id.* at 725.

*Hebert*, by contrast, ignored all of those considerations: notwithstanding that the employee was paid **by the day**, notwithstanding that he was sometimes paid more **within** the normal workweek, and notwithstanding that his compensation structure fit into none of the "regulatory examples," that structure satisfied § 541.602(a). In particular, an employee "does not lose his status as an employee paid on a salary basis just because he is also paid a bonus on top of the salary that the record has established was guaranteed to him." 2023 WL 4105427, at *2.[4]

\* \* \*

*Gentry* conflicts with this this Court's earlier-decided *Hebert* and later-decided *Venable*, necessitating "the full court's consideration." Fed. R. App. P. 40(b)(2)(A).

---

[4] The incoherence of this Court's decisions on the issue at hand is further illustrated by *Greinstein v. Granite Servs. Int'l Inc.*, No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024) (per curiam). **Expressly relying on *Gentry***, the *Greinstein* panel held that 29 C.F.R. § 604(a) "permits additional pay so long as the underlying [*i.e.*, base] compensation scheme satisfies § 602(a)." 2024 WL 3771455, at *2. That holding is actually **contrary to *Gentry***, not consistent with it.

II. *Gentry*'s interpretation of 29 C.F.R. §§ 541.602(a) and 541.604(a) also conflicts with authoritative decisions of the Third and Tenth Circuits.

In its interpretation of the two relevant regulations, *Gentry* likewise cannot be reconciled either with *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1174-79 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2630 (2024), or with *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 760-62 (3d Cir. 2023).

A. The Tenth Circuit's decision in *Wilson*

*Wilson* concerned a jury finding that "Schlumberger failed to prove that it paid Mr. Wilson on a salary basis, and therefore Mr. Wilson did not qualify for FLSA's overtime-pay exemption." 80 F.4th at 1174. Like all of the employees in these cases, Mr. Wilson was paid under a multi-tiered compensation structure. First, he "received a bi-weekly base salary ($923.08) that Schlumberger paid regardless of the number of hours, days, or shifts worked." *Id.* at 1175. Moreover, he "was paid an additional rig-rate bonus for time spent in the field," and this "rig rate was paid at a high **hourly** rate while Mr. Wilson's base salary was relatively low," such that "the rigday rate typically accounted for the bulk of his compensation." *Id.* (emphasis added). It is not difficult to see that Mr.

15

Wilson would have prevailed under the *Gentry* panel's analysis: the rig-rate bonus did not constitute compensation for work "beyond the normal workweek," 102 F.4th at 723, and the bonus was "dissimilar to the regulatory examples" set forth in § 541.604(a), *id.* at 725.

But the Tenth Circuit ruled against Mr. Wilson, based first of all on the "text" of § 541.604(a), which "applies to employees who receive additional compensation above a base salary." 80 F.4th at 1176. The court observed (as we have observed above) that the "first sentence of § 541.604(a) explains that an employer may pay an employee additional compensation without losing the employee's exempt status," and the last sentence of the regulation "expressly states that 'additional compensation may be paid on any basis.'" *Id.* Thus, "§ 541.604(a) applies when an employee receives a base salary and additional compensation"; and because "Mr. Wilson received a fixed base salary and additional compensation in the form of a rig-rate payment and other bonuses," § 541.604(a) applies and the salary-basis test is satisfied. *Id.*

Notably, *Wilson* expressly referred to all three of the decisions of this Court discussed above. That is, the Tenth Circuit opined that "the Fifth Circuit's recently decided *Hebert* . . . supports our interpretation,"

16

and that "a district court in the Fifth Circuit reached the same conclusion on nearly the same set of facts we have before us," which conclusion this Court affirmed in *Venable*. 80 F.4th at 1179. But, referring to a different district court decision that this Court likewise affirmed, the Tenth Circuit opined that it did "not find *Gentry* persuasive." *Id.* at 1179 n.4.

## B.    The Third Circuit's decision in *Higgins*

In *Higgins*, the Third Circuit considered the salary-basis test in the context of considering whether "PTO [paid time off] qualifies as salary under the FLSA and its related regulations." 62 F.4th at 767. The employees at issue were paid under a compensation structure that has a familiar ring: a "guaranteed base salary" supplemented by payment for "productivity points." *Id.* (Each point was "roughly equivalent to 1.33 hours of work," such that in practice employees were paid based on additional hours worked. *Id.*) Emphasizing (among other reasons) that § 541.602(a) "requires only that the employee receive a predetermined amount of money each pay period that is '**part** of the employee's compensation,'" the Third Circuit held that under these circumstances,

"the employer has satisfied the salary basis test." *Id.* at 761. *Gentry* doubtless would have held the opposite.[5]

*    *    *

The panel decision in *Gentry* conflicts not only with other decisions of this Court but also with authoritative decisions of other United States Court of Appeals—an independent basis for consideration en banc. *See* FED. R. APP. P. 40(b)(2)(C). In the interest of judicial economy, that consideration should occur **now**: initial hearing en banc will relieve this Court of the burden of issuing an opinion that inevitably deepens an intra-Circuit split and prompts a petition for <u>re</u>hearing en banc.

## CONCLUSION

For all the foregoing reasons, NES's petition for initial hearing en banc should be granted.

---

[5] The Sixth Circuit's split decision in *Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575, 579–87 (6th Cir. 2025), appears to join the *Gentry* side of the conflict. *Cf. id.* at 599 (Murphy, J., dissenting) ("My reading undoubtedly conflicts with the Fifth Circuit's view in" *Gentry*, but it "adheres to the reasoning of the Tenth Circuit decision in *Wilson*.").

Respectfully submitted,

*/s/ J. Stephen Barrick*
J. Stephen Barrick
Texas Bar No. 00796168
sbarrick@hicks-thomas.com

Eric Grant
Texas Bar No. 24076167
grant@hicks-thomas.com

HICKS THOMAS LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 547-9100
(713) 547-9150 (Fax)

*Attorneys for Defendant-Appellant*
*NES Global, LLC*


# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limitations set in
    Fed. R. App. P. 40(d)(3)(A) because, excluding the parts exempted
    by Fed R. App. P 32(f) and Fifth Circuit Rule 32.1, this document
    contains 3,611 words.

2.  This document complies with the typeface requirements of Fed. R.
    App. P. 32(a)(5), Fifth Circuit Rule 32.1, and the type-style
    requirements of Fed R. App. P 32(a)(6) because it has been prepared
    in a proportionately spaced typeface using Microsoft Word 365 in
    14-point Century Schoolbook font.

Dated: May 22, 2025

*/s/ J. Stephen Barrick*