Case No. 24-20480

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

LOYDA ALVAREZ; LEDYS DUNN, Independent
Executor of the Estate of Sammie D. Dunn; ALBERT RODRIGUEZ;
AN NG; ANDREW JAMIESON, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

NES GLOBAL, L.L.C.,

*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division
Civil Action No. 4:20-CV-01933

## OPENING BRIEF OF DEFENDANT-
## APPELLANT NES GLOBAL, LLC

J. Stephen Barrick
Eric Grant

HICKS THOMAS LLP
700 Louisiana St., Suite 2300
Houston, Texas 77002
(713) 547-9100

*Attorneys for Defendant-Appellant*
*NES Global, LLC*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-20480
*Lloyda Alvarez, et al. v. NES Global, LLC*
(USDC No. 4:20-CV-01933)

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Loyda Alvarez – *Plaintiff-Appellee*

2. Ledys Dunn – *Independent Executor of the Estate of Plaintiff-Appellee Sammie D. Dunn*

3. Albert Rodriguez – *Plaintiff-Appellee*

4. An Ng – *Plaintiff-Appellee*

5. Andrew Jamieson – *Plaintiff-Appellee*

6. Josephson Dunlap LLP (Michael A. Josephson, Andrew W. Dunlap, and Carl A. Fritz) – *attorneys for Plaintiffs-Appellees*

7. Bruckner Burch, PLLC (Richard J. "Rex" Burch) – *attorneys for Plaintiffs-Appellees*

8. NES Global, LLC – *Defendant-Appellant*

9. NES Global Talent US Inc. – *sole member of Defendant-Appellant*

10. Baker & Hostetler LLP (Ashlee Cassman Grant, Justin A. Guilfoyle, and Jennifer R. DeVlught) – *attorneys for Defendant-Appellant*

11. Hicks Thomas LLP (J. Stephen Barrick and Eric Grant) – *attorneys for Defendant-Appellant*

*/s/ J. Stephen Barrick*
Attorney of record for Appellant
NES Global, LLC

## STATEMENT REGARDING ORAL ARGUMENT

As elaborated in the concurrently filed Petition for Initial Hearing En Banc, the case law construing the governing regulations in this FLSA overtime-pay case is evolving and inconsistent. Appellant therefore believes that oral argument may assist the Court in resolving this appeal.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iii

TABLE OF CONTENTS .......................................................... iv

TABLE OF AUTHORITIES ..................................................... vi

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION ............................................. 2

STATEMENT OF THE ISSUES ................................................ 3

STATEMENT OF THE CASE ................................................... 4

    I.    NES's compensation structure................................. 4

    II.    Alvarez files a collective action under the FLSA. ................. 7

    III.    The parties file cross-motions for summary judgment. ......... 7

    IV.    The district court holds that NES's compensation structure does not comply with the salary-basis test............ 9

    V.    The district court enters a final judgment for the Plaintiffs. ................................................... 10

SUMMARY OF THE ARGUMENT ....................................... 11

ARGUMENT ................................................................. 13

    I.    Applicable legal standards.................................. 13

        A.    Standard of review. ................................... 13

        B.    Construction of regulations. ....................... 13

        C.    The salary-basis test. ............................... 14

II.   NES's compensation structure meets the salary-basis test. ................................................................. 16

III.  The weight of authority supports the conclusion that NES's compensation structure satisfies the salary-basis test. ............................................................................ 18

     A.   Case law from this Circuit and other Circuits holds that if the requirements of § 602(a) are met, additional compensation may be paid on any basis without losing the exemption. ..................................... 18

     B.   *Helix* does not support the district court's ruling ........ 24

     C.   *Gentry* inappropriately rewrites the salary-basis regulations to impose an additional "normal workweek" requirement. .............................................. 29

     D.   *Pickens* is equally non-textual and contrary to *Helix*. ........................................................................ 38

CONCLUSION ......................................................................... 41

CERTIFICATE OF COMPLIANCE ....................................... 42

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Anani v. CVS Rx Servs., Inc.*,
730 F.3d 146 (2d Cir. 2013) ................................................................ 23

*Bearry v. Beech Aircraft Corp.*,
818 F.2d 370 (5th Cir. 1987) ............................................................... 38

*Bell v. Callaway Partners, LLC*,
394 F. App'x 632 (11th Cir. 2010) (per curiam) ............................... 23

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) (en banc), *aff'd*,
602 U.S. 406 (2024) ............................................................................. 37

*Coates v. Dassault Falcon Jet Corp.*,
961 F.3d 1039 (8th Cir. 2020) ............................................... 22, 27, 32

*Copeland v. C.I.R.*,
290 F.3d 326 (5th Cir. 2002) ............................................................... 13

*Dodd v. United States*,
545 U.S. 353 (2005) .............................................................................. 31

*ExxonMobil Pipeline Co. v. United States Dep't of Transp.*,
867 F.3d 564 (5th Cir. 2017) ............................................................... 13

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
102 F.4th 712 (5th Cir. 2024) ................................. 29, 30, 31, 32, 35, 36

*Gentry v. Hamilton-Ryker IT Sols., LLC*,
No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4,
2022), *adopted*, 2022 WL 889276 (S.D. Tex. Mar. 25,
2022), *aff'd*, 102 F.4th 712 (5th Cir. 2024) ................................. 29, 30

*Gregory v. Helvering*,
293 U.S. 465 (1935) .............................................................................. 37

*Greinstein v. Granite Servs. Int'l*,
  No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024)
  (per curiam) ..................................................................... 20, 21, 31, 33

*Hebert v. FMC Techs., Inc.*,
  No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) ........... 20, 36

*Helix Energy Sols. Grp. v. Hewitt*,
  598 U.S. 39 (2023) ............. 11, 14, 16, 17, 24, 25, 26, 27, 33, 34, 35, 39

*Higgins v. Bayada Home Health Care Inc.*,
  62 F.4th 755 (3d Cir. 2023) ................................................................ 24

*Lamb v. Ashford Place Apartments LLC*,
  914 F.3d 940 (5th Cir. 2019) .............................................................. 13

*Lara v. Cinemark USA, Inc.*,
  207 F.3d 783 (5th Cir. 2000) .............................................................. 13

*Litz v. Saint Consulting Grp., Inc.*,
  772 F.3d 1 (1st Cir. 2014) ............................................................. 16, 22

*Pickens v. Hamilton-Ryker IT Sols., LLC*,
  133 F.4th 575 (6th Cir. 2025) ................................................. 38, 39, 40

*United States v. Arrieta*,
  862 F.3d 512 (5th Cir. 2017) .............................................................. 13

*Venable v. Schlumberger Ltd.*,
  No. 6:16-cv-00241, 2022 WL 895447 (W.D. La. Mar. 25,
  2022), *aff'd*, 117 F.4th 295 (5th Cir. 2024) ........................................ 20

*Venable v. Smith Int'l, Inc.*,
  117 F.4th 295 (5th Cir. 2024) ....................................... 19, 20, 24, 33, 36

*Wilson v. Schlumberger Tech. Corp.*,
  80 F.4th 1170 (10th Cir. 2023) ..................................................... 21, 35

**Rules**

FED. R. APP. P. 40(g) ................................................................................. 29

**Statutes**

28 U.S.C. § 1291 ................................................................ 2

28 U.S.C. § 1331 ................................................................ 2

29 U.S.C. § 207(a)(1) ......................................................... 1

29 U.S.C. § 213(a)(1) ........................................... 1, 3, 4, 5, 7

29 U.S.C. § 216(b) ............................................................. 2

**Regulations**

29 C.F.R. pt. 541 ............................................................... 1

29 C.F.R. § 541.200(a) ...................................................... 4

29 C.F.R. § 541.600 ........................................................... 5

29 C.F.R. § 541.601(a) ...................................................... 5

29 C.F.R. § 541.602 ........................................................... 8

29 C.F.R. § 541.602(a) ............................................. *passim*

29 C.F.R. § 541.604(a) .................... 12, 17, 24, 28, 31, 32, 34, 39

29 C.F.R. § 541.604(b) ............................................ 8, 9, 11

81 Fed. Reg. 32393 ........................................................... 5

89 Fed. Reg. 32842 ........................................................... 5

84 Fed. Reg. 51230 ........................................................... 5

84 Fed. Reg. 51239 ......................................................... 14

## INTRODUCTION

Under the Fair Labor Standards Act ("FLSA"), employers generally must pay time-and-a-half or "overtime" for work in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). This requirement, however, is subject to several exemptions, including an exemption for those "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Congress did not define what this phrase means, but it authorized the U.S. Department of Labor ("DOL") to "define and delimit" its meaning. *Id.* And the DOL has issued extensive regulations purporting to do so. *See* 29 C.F.R. pt. 541.

Central to this appeal is whether the employees in this case—all of whom were paid at a rate exceeding $100,000 per year—were paid on a "salary basis," as defined in the DOL regulations. The district court held that the Plaintiffs were not paid on a salary basis and, therefore, were not exempt, even though their employer, Defendant-Appellant NES Global, LLC ("NES"), followed the DOL's salary-basis regulations to the letter. All Plaintiffs were guaranteed a minimum weekly salary exceeding the DOL's minimum salary level for every week in which they performed any work, in accordance with the regulations. In holding that

the Plaintiffs nevertheless were not paid on a salary basis and were not exempt, the district court misconstrued the regulations and misapplied the law. The court's holding is therefore erroneous and should be reversed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because the claims arise under the Fair Labor Standards Act. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final judgment. The district court entered the final judgment on July 23, 2024; the district court denied Appellant's motion for new trial or to alter or amend the judgment on September 26, 2024; and Appellant timely filed its notice of appeal on October 24, 2024. ROA.4837, 4841, 4904, 5371.

## STATEMENT OF THE ISSUES

To qualify for the "bona fide executive" exemption under 29 U.S.C. § 213(a)(1), the DOL requires (among other things) that the employee be paid on a "salary basis" and has defined in detail what that requires. *See* 29 C.F.R. § 541.602(a). The regulation provides that if the employee is paid a fixed, "predetermined amount" on a weekly or less frequent basis that is not subject to reduction based on the quantity or quality of work performed, the employee is paid on a "salary basis." *Id.* And if this is the employee's only compensation, all courts agree that it satisfies the "salary-basis test."

The issue presented is whether the salary-basis test under § 541.602(a) continues to be satisfied if, on top of the predetermined amount, the employer pays the employee *additional compensation* on an hourly or daily basis. In addressing cross-motions for summary judgment, the district court erroneously held that the salary-basis test was no longer satisfied in this circumstance. Consequently, the district court erred in: (a) granting Appellees' Motion for Partial Summary Judgment; (b) denying Appellant's Motion for Summary Judgment; and (c) awarding a Judgment based on these rulings.

3

# STATEMENT OF THE CASE

## I.    NES's compensation structure.

NES is a global staffing company that supplies workers for various industries, including the oil and gas industry. ROA.1271, 1315. In 2019-2020, NES employed Plaintiff-Appellee Loyda Alvarez to work as a project scheduler for XTO Energy in Midland, Texas. ROA.1276. NES paid Ms. Alvarez a weekly base salary (called a "retainer") of $1,120 per week, plus additional compensation of $560 per day for work in excess of two days in a given week. *Id.* Under this compensation structure, NES paid Ms. Alvarez at a rate exceeding $100,000 per year. ROA.1276-77.

NES adopted this compensation structure after a DOL audit of its pay practices in 2016. ROA.1272-76. The DOL analyzed NES's pay records for all of its daily and hourly employees (called "candidates") who were assigned to work for NES's clients. ROA.1272. In a report focusing on the day-rate candidates, the DOL advised that a day-rate candidate whose job responsibilities met the "duties" test under the regulations[1]

---

[1] The "duties" test generally requires that the employee's primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.200(a)(2)-(3). This standard is slightly relaxed for "highly compensated employees," requiring simply that "the employee customarily

and were guaranteed compensation that exceeded the "salary level" requirement of $455 per week[2] were exempt from the FLSA overtime requirement. ROA.1272, 1357 (p. 23:18-23), 1420-21 (pp. 49:22-25, 50:10-13, 53:5-13), 1463, 1466, 1474. NES therefore reviewed and updated its pay policies to ensure that the candidates who met the "duties" and "salary level" requirements under the regulations received a weekly base salary that exceeded the minimum salary level required under the regulations so that NES could properly classify them as exempt. ROA.1273-76, 1373-75, 1411-12, 1418-21, 1428.

Under NES's post-audit compensation structure, many formerly day-rate candidates were guaranteed a weekly base salary—called a "retainer"—in an amount that was based on a multiple of the candidate's daily rate. ROA.1274-75. For example, if a candidate had a day rate of $1,000 per day, NES might calculate the amount of their base

---

and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee identified in subpart B, C, or D of this part." 29 C.F.R. § 541.601(a). It is undisputed that the Plaintiffs here are all highly compensated employees.

[2] The DOL has since increased the threshold salary level requirement multiple times. *See* 81 Fed. Reg. 32393 (2016 revisions); 84 Fed. Reg. 51230 (2019 revisions); 89 Fed. Reg. 32842 (2024 revisions); *see also* 29 C.F.R. § 541.600 (specifying minimum salary level). There is no dispute that all of the Plaintiffs were guaranteed a minimum weekly amount that exceeded the required salary level to qualify for the exemption under 29 U.S.C. § 213(a)(1). *See* ROA.1316.

salary/retainer by assuming two work days and multiplying that by the candidate's daily rate, resulting in a base salary of $2,000. *See* ROA.1275, 1316-17. Here, the Plaintiffs' weekly base salaries ranged from $675 to more than $2,250 per week—all in excess of the minimum salary-level requirement under the regulations. ROA.1277, 1316.

On top of their weekly base salaries, NES paid the candidates a day rate for work performed in excess of the assumed number of days used in determining their base salary. ROA.1274-75, 1358, 1410. Thus, for example, if a candidate had a daily rate of $1,000 and the company assumed two days in calculating the base salary (resulting in a base salary of $2,000), and if that candidate worked three days in a given week, then that candidate was entitled to receive his or her weekly base salary of $2,000, plus $1,000 for the additional day they worked beyond two days. *See* ROA.1275-76, 1316-17, 1387. If the same candidate worked any time at all that week, *e.g.*, 30 minutes, he or she was still entitled to the full $2,000 base salary. ROA.1275, 1387. And if that candidate worked every day that week (seven days), he or she was entitled to the same $2,000 base salary, plus $5,000 ($1,000/day x 5 days) for the five

additional days they worked beyond the two that were assumed in setting the amount of the base salary. *See id.*

## II.    Alvarez files a collective action under the FLSA.

On June 2, 2020, Ms. Alvarez filed an Original Class and Collective Action Complaint against NES, alleging that she and other similarly situated employees were not exempt from the FLSA overtime requirement and that NES is liable for unpaid overtime and liquidated damages under the FLSA and the New Mexico Minimum Wage Act ("NMMWA"). ROA.29, 35-38. On August 12, 2021, the district court certified the case as a collective action under the FLSA, defining the collective as: "All individuals employed by or working on behalf of NES Global, LLC who were paid a day rate with no overtime in the past three years." ROA.876, 880. Ultimately, 85 individuals filed notices of consent to join the collective action. ROA.4727, 989-1090, 1155, 1157, 1165, 1170.

## III.   The parties file cross-motions for summary judgment.

After completing discovery, the parties filed cross-motions for summary judgment. ROA.1260, 5962. NES argued that all of the Plaintiffs are exempt under 29 U.S.C. § 213(a)(1) (the "bona fide executive" or "EAP" exemption), and that it cannot be liable for unpaid

overtime under the FLSA or the NMMWA because the Plaintiffs were entitled to a weekly base salary; the Plaintiffs' weekly salaries exceeded the salary level required under the DOL regulations; and that their base salaries were not subject to reduction because of variations in the quality or quantity of the work performed. ROA.1278-1282; *see* 29 C.F.R. § 541.602 (salary-basis requirement). NES also argued that summary judgment should be granted on Ms. Alvarez's claim under the NMMWA because there is no evidence she worked any overtime hours in New Mexico. ROA.1292-93. NES further argued that even if the Plaintiffs' FLSA claims survived summary judgment, summary judgment should be granted for NES on the Plaintiffs' claims that NES violated the FLSA willfully and in bad faith. ROA.1297-1303.

In their cross-motion, the Plaintiffs argued that they were actually paid on a daily basis, and that to satisfy the salary-basis test for day-rate workers, NES had to show that the guaranteed weekly amount NES paid was "reasonably related" to the amount that the Plaintiffs actually earned for the week. *See* ROA.5962 (Sealed Motion) at 9-19; *see also* 29 C.F.R. § 541.604(b) (salary-basis requirements for employees paid on an hourly, daily, or shift basis). And, because the Plaintiffs typically earned

significantly more than their weekly retainer each week, NES's compensation structure failed the "reasonable relationship" test, and the employees were not exempt. ROA.5962 (Sealed Motion) at 8, 19-20.

## IV.    The district court holds that NES's compensation structure does not comply with the salary-basis test.

The district court granted partial summary judgment for the Plaintiffs, holding that NES's compensation structure did not comply with the salary-basis requirement and, therefore, the Plaintiffs were not exempt. ROA.4398, 4414-15, 4425. The court accepted the Plaintiffs' argument that to satisfy the salary-basis test, NES had to comply with 29 C.F.R. § 541.604(b)—applicable only to employees paid on an hourly, daily, or shift basis—which requires guaranteed weekly pay that bears a "reasonable relationship" to the employee's usual earnings for a normal scheduled workweek. ROA.4411. Because the Plaintiffs typically earned significantly more than their base salary in a normal workweek, the court held that NES's compensation structure did not comply with the reasonable-relationship test under § 604(b), and the Plaintiffs were not exempt. ROA.4413-15. The court, however, granted summary judgment for NES on the Plaintiffs' claims that NES violated the FLSA willfully and NES's affirmative defense that it acted in good faith. ROA.4420-21.

And the court found a fact issue on whether NES violated the NMMWA. ROA.4416-17.

## V.    The district court enters a final judgment for the Plaintiffs.

After the partial summary judgment, the parties stipulated to the amount of overtime the Plaintiffs worked and submitted an agreed form of judgment based on the court's summary-judgment rulings and the parties' stipulations, reserving their rights to appeal the court's summary-judgment rulings. ROA.4432-33, 4830-36. The court then signed and entered the parties' proposed final judgment. ROA.4837. NES filed a Motion for New Trial or to Alter or Amend the Judgment, and the district court denied NES's motion. ROA.4841, 4904. NES appeals the final judgment. ROA.5371.

## SUMMARY OF THE ARGUMENT

In *Helix Energy Solutions Group v. Hewitt*, the Supreme Court held that under the DOL's salary-basis regulations, there are two "non-overlapping paths to satisfy the salary-basis requirement": (a) satisfy the requirements of 29 C.F.R. § 541.602(a); or (b) satisfy the requirements 29 C.F.R. § 541.604(b). *See* 598 U.S. 39, 56 (2023). The undisputed facts establish that NES's compensation structure satisfied all the requirements of § 602(a), as confirmed by the plain text of the regulation. Therefore, NES paid the Plaintiffs on a "salary basis" as a matter of law.

The district court, however, held that compliance with the plain text of the regulations is not enough. It held that NES must also comply with an additional requirement that the "predetermined amount" paid to the employee every week under § 602(a) must compensate the employee for all work performed in the "regular workweek," even though no such requirement is specified in the regulation. ROA.4411. In fact, the regulations provide the opposite—that the "predetermined amount" may constitute only "part" of the employee's compensation, and the employer may provide "additional compensation" to the employee on "any basis"

without affecting the employee's status. 29 C.F.R. §§ 541.602(a), 541.604(a).

The district court's holding is contrary to the plain text of the regulations and numerous authorities, including multiple recent decisions of this Court. Under the controlling regulations, if the requirements of § 602(a) are met (as they were in this case), the employee is "considered to be paid on a 'salary basis'." *Id.* § 541.602(a). The district court therefore erred in holding that NES's compensation structure did not comply with the salary-basis test under DOL regulations and in granting partial summary judgment for the Plaintiffs. This Court should reverse the district court's judgment and render a judgment for NES on the Plaintiffs' claims for overtime under the FLSA.

# ARGUMENT

## I.    Applicable legal standards.

### A.    *Standard of review.*

NES appeals the summary judgment holding that the plaintiffs are not exempt from the FLSA overtime pay requirement under the "bona fide executive" or "EAP" exemption because they were not paid on a "salary basis." This Court reviews summary judgments de novo, applying the same standard as the district court. *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 943 (5th Cir. 2019). This Court also reviews issues of statutory and regulatory construction de novo. *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017).

### B.    *Construction of regulations.*

The issues in this appeal turn on the construction of federal regulations. Federal regulations are interpreted in the same manner as statutes, looking first to the regulation's plain language. *ExxonMobil Pipeline Co. v. United States Dep't of Transp.*, 867 F.3d 564, 573 (5th Cir. 2017); *Copeland v. C.I.R.*, 290 F.3d 326, 332-33 (5th Cir. 2002); *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 787 (5th Cir. 2000). When the language of the regulation is unambiguous, the Court applies that

language as written, without looking beyond the plain language of the regulation to determine its meaning. *Id.*

### C.    The salary-basis test.

Under the regulations, there are three distinct requirements or "tests" that must be met for the EAP exemption to apply: (1) the salary-basis test, requiring that the employee receive a "predetermined and fixed salary;" (2) the salary-level test, requiring that the preset salary exceed a specified amount; and (3) the "duties" test, which focuses on the employee's job responsibilities. *Helix*, 598 U.S. at 44-45 (citing 84 Fed. Reg. 51239). The duties test is slightly different for "highly compensated employees" (the type of employees at issue here), but the other two requirements are the same. *Id.* at 45-46.

The district court held that the Plaintiffs were not exempt under the EAP exemption based solely on the salary-basis test. *See* ROA. 4411, 4414-15. The key salary-basis provision is § 602(a), which provides:

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a). The regulation goes on to clarify that the employee "must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked," but employees "need not be paid for any workweek in which they perform no work." *Id.* § 541.602(a)(1). And the employer may not deduct "for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available." *Id.* § 541.602(a)(2).

Thus, under the controlling language of the regulation, an employee is "considered to be paid on a 'salary basis'" if:

(1)   Each pay period, the employee receives a "predetermined amount;"

(2)   The predetermined amount constitutes "all or part of the employee's compensation" for that pay period;

(3)   The predetermined amount is paid on a "weekly, or less frequent basis";

(4)   The predetermined amount is not "subject to reduction because of variations in the quality or quantity of the work performed";

(5)   The employee is entitled to receive the full predetermined amount "for any week in which the employee performs any work without regard to the number of days or hours worked"; and

(6)    The predetermined amount is not subject to deductions "for absences occasioned by the employer or by the operating requirements of the business."

*Id.* § 541.602(a); *accord Litz v. Saint Consulting Grp., Inc.*,, 772 F.3d 1, 3-4 (1st Cir. 2014) (holding that a guaranteed weekly amount was "paid on a 'salary basis' if it was (1) 'a predetermined amount,' (2) 'constituting all or part of the employee's compensation,' and (3) 'not subject to reduction because of variations in the quality or quantity of the work performed'"). According to the Supreme Court, these regulatory requirements embody the "standard meaning" of the word "salary." *Helix*, 598 U.S. at 51.

## II.    NES's compensation structure meets the salary-basis test.

The compensation structure here clearly complies with the salary-basis test in § 602(a). NES paid all of the Plaintiffs a predetermined amount—their weekly base salary or "retainer"—on a weekly basis. ROA.1274, 1277, 1358, 1410. For any week in which the Plaintiffs performed any work, they were entitled to receive the entire amount of their weekly base salary, with no reductions or deductions based on the quality or quantity of work performed. ROA.1275-76, 1387. Although this weekly base salary generally was not the only compensation they

16

received, that is immaterial: the regulations expressly provide that the predetermined amount or salary need only represent "*part* of the employee's compensation," and the employer may pay the employee "*additional* compensation" beyond the predetermined amount, on "any basis," without affecting the employee's exempt status. 29 C.F.R. §§ 541.602(a), 541.604(a) (emphasis added); *see also Helix*, 598 U.S. at 46 (opining that § 602(a) requires that the employee "get at least part of his compensation through a preset weekly (or less frequent) salary" that is not subject to reduction if any work is performed).

In its Memorandum and Order, the district court found it significant, if not dispositive, that the predetermined *amounts* of the Plaintiffs' base salaries (which were fixed and did not vary from week to week) were determined by multiplying the individual's daily rate by an assumed number of days. ROA.4411. The court found that this method of selecting the "predetermined amount" made the Plaintiffs *daily* employees and foreclosed any application of § 602(a). *Id.* This ignores the plain text of § 602(a), which requires only that a predetermined amount be paid on a weekly or less frequent basis. 29 C.F.R. § 541.602(a). It is irrelevant *how* the parties arrived at the particular amount as long as it

17

was predetermined, not subject to reduction, and paid on a weekly or less frequent basis. *See id.*[3] NES's compensation structure complied with all of these requirements, as the Plaintiffs were entitled to their weekly base salary regardless of the number of hours, days, or shifts they worked that week. ROA.1275, 1387. Therefore, the requirements of § 602(a) were met, and the Plaintiffs were paid on a salary basis.

## III. The weight of authority supports the conclusion that NES's compensation structure satisfies the salary-basis test.

### A. *Case law from this Circuit and other Circuits holds that if the requirements of § 602(a) are met, additional compensation may be paid on any basis without losing the exemption.*

As discussed above, NES's payment of the weekly base salary or "retainer," by itself, complies with § 602(a). The amount undisputedly exceeded the salary-level requirement; the Plaintiffs were entitled to their base salary for any week in which they performed any work; and their base salary was not subject to reduction based on the amount or

---

[3] Consistent with the district court's conclusion on this point, if NES had *arbitrarily* selected the amount of the Plaintiffs' base salaries, even at an amount that was less than the base salaries they were actually paid, leaving all other factors the same, that pay structure presumably would comply with § 602(a) and the Plaintiffs would be exempt. This illustrates the absurdity of the district court's conclusion. Nothing in the regulations requires that the "predetermined amount" under § 602(a) be arbitrary.

quality of work performed. Thus, the only remaining issue is whether the *additional compensation* that NES paid the Plaintiffs on top of their weekly base salaries negates NES's compliance with § 602(a).

It does not. Case law from this Circuit and other Circuits firmly supports the conclusion that NES's compensation structure complies with the salary-basis test. First, in *Venable v. Smith Int'l, Inc.*, 117 F.4th 295 (5th Cir. 2024), the employees received an annual base salary plus additional compensation, paid on a daily basis, for time spent on their clients' drilling rigs. *Id.* at 298. Like the weekly base salary here, the annual base salary in *Venable* complied with the express requirements of § 602(a). But, like the Plaintiffs here, the employees in *Venable* argued that the employer's payment of additional compensation on a daily basis meant that the employer had to comply with the separate requirements of § 604(b) in order to satisfy the salary-basis test. *Id.* at 299. This Court rejected that argument, holding that the employer's "hybrid compensation structure" complied with the salary-basis test because the employees received an annual salary that was not subject to reduction regardless of the number of hours or days worked. *Id.* at 299-300. The fact that most of the employees' overall compensation was paid on a daily

basis did not defeat the employer's compliance with the salary-basis test because § 604(a) expressly allowed it. *Id.* at 300; *see Venable v. Schlumberger Ltd.*, No. 6:16-cv-00241, 2022 WL 895447, at *3-5 (W.D. La. Mar. 25, 2022) (showing the employees' day-rate pay accounted for most of their total compensation), *aff'd*, 117 F.4th 295 (5th Cir. 2024).

Two other recent opinions of this Court are equivalent. In *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023), the employees received a bi-weekly base salary plus additional compensation, paid on a daily basis, for time spent working at an offshore site. *Id.* at *1. The Court held that this compensation structure complied with the salary-basis test because the employees received a bi-weekly salary without regard to the number of hours or days they worked, which "plainly satisfies the definition of 'salary basis' in § 541.602(a)." *Id.* at *2. The additional compensation paid on a daily basis did not change that because it was allowed under § 604(a). *Id.* Likewise, in *Greinstein v. Granite Servs. Int'l*, No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024) (per curiam), the employees received a weekly base salary plus additional compensation, paid on an hourly basis, for working more than 40 hours in a week. *Id.* at *1. As in *Venable* and *Hebert*, the Court held

that this compensation structure complied with the salary-basis test because it met all the requirements of § 602(a). *Id.* at *2. The additional compensation paid on an hourly basis did not defeat the exemption because "§ 604(a) permits additional pay so long as the underlying compensation scheme satisfies § 602(a)." *Id.*

Other Circuits are in accord. Most notably, in *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023), the employees received a bi-weekly base salary plus additional compensation, paid on an hourly basis, for time spent on a drilling rig. *Id.* at 1173. The Tenth Circuit held that this compensation structure complied with the salary-basis test because the employees received a fixed base salary above the FLSA minimum, in accordance with § 602(a). *Id.* at 1176, 1177. The additional compensation paid on an hourly basis, which (as in *Venable*) made up the largest portion of the employees' total earnings, did not change that because the additional compensation was permitted under § 604(a). *Id.*[4]

---

[4] Notably, the Tenth Circuit cited this Court's opinion in *Hebert* and the district court's opinion in *Venable* (which this Court affirmed) in support of its holding. *Wilson*, 80 F.4th at 1178-79. The court also noted and rejected the holding in *Gentry*, finding it unpersuasive. *Id.* at 1179 n.4. The holding in *Gentry* is discussed *infra*.

In *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039 (8th Cir. 2020), the employees were paid an annual salary on a bi-weekly basis plus additional compensation, paid by the hour, for work in excess of 40 hours in a week. *Id.* at 1044. The Eighth Circuit held that this compensation structure, on its face, complied with the salary-basis test because the employees received a predetermined amount on a bi-weekly basis that was not subject to reduction based on the quality or quantity of the work performed. *Id.* at 1045. The court emphasized that compliance with § 602(a) is all that is required: "The FLSA requires no other contractual 'bells and whistles.'" *Id.*

In *Litz v. Saint Consulting Grp., Inc.*, *supra*, the employees received a weekly base salary of $1,000, but they also billed their time by the hour, and if they billed more than $1,000 at their hourly rate, they received the hourly compensation that was more than $1,000. 772 F.3d at 2. The First Circuit held that this compensation structure complied with the salary-basis test because the employees received a predetermined amount that was part of their compensation that was not subject to reduction, in accordance with § 602(a). *Id.* at 3-4. The fact that most of their compensation was paid on an hourly basis did not defeat the exemption

22

because the base salary was "part of the employee's compensation." *Id.* at 5 (citing § 602(a)).

In *Anani v. CVS Rx Servs., Inc.*, 730 F.3d 146 (2d Cir. 2013), the employees received a bi-weekly base salary plus additional compensation, paid on an hourly basis, for hours worked in excess of 44 hours per week. *Id.* at 147. The First Circuit held that this compensation structure complied with the salary-basis test because the employees' base salary exceeded the minimum salary level per week and there were no permissible deductions, as required by § 602(a). *Id.* at 147-48. Similarly, in *Bell v. Callaway Partners, LLC*, 394 F. App'x 632 (11th Cir. 2010) (per curiam), the employees received a guaranteed weekly salary, subject to certain allowable deductions, plus additional compensation, paid on an hourly basis, for hours worked in excess of 40 hours per week. *Id.* at 633. The Eleventh Circuit held that this compensation structure complied with the salary-basis test under § 602(a) because the employees received a non-deductible minimum weekly salary, and, under § 604(a), the employer "was free to structure any bonus program as it saw fit." *Id.* at 634.

NES's compensation structure here is fundamentally the same as in these cases. The Plaintiffs were all entitled to a minimum weekly salary—a fixed, predetermined amount that was not subject to reduction or deductions—for every week in which they performed any work. *See Helix*, 598 U.S. at 51 (defining "salary" as "fixed compensation regularly paid, as by the year, quarter, month, or week"); *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 761 (3d Cir. 2023) (same).  And, as the regulations and these cases expressly provide, NES could pay the Plaintiffs additional compensation, on top of their base salary, "on any basis," whether by the day, by the hour, or any other basis. *E.g.*, 29 C.F.R. § 541.604(a); *Venable*, 117 F.4th at 300. Therefore, consistent with the weight of authority (including within this Circuit), NES's compensation structure satisfies the salary-basis test, and the district court erred in holding otherwise.

## B.     Helix *does not support the district court's ruling.*

In holding that NES's compensation structure does not satisfy the salary-basis test, the district court suggested that the Supreme Court's decision in *Helix* supports its analysis. ROA.4408-11. In fact, it does not. In stark contrast to the facts here, in *Helix*, there was no question that

the compensation structure at issue did not comply with § 602(a). The case involved a highly compensated employee whose pay was "based *solely* on a *daily* rate," 598 U.S. at 43 (emphasis added), and the question was whether the salary-basis test should apply to such highly compensated employees, *id.* at 49-50. The Supreme Court construed the regulations and held that compliance with the salary-basis test was required. *Id.* And, because simple compensation at a daily rate did not comply with § 602(a) or § 604(b), it did not satisfy the salary-basis test and the employee in that case was not exempt. *Id.* at 50. This is materially different from the facts here, which show that the Plaintiffs were paid a predetermined amount on a *weekly basis* that was not subject to reduction if any work was performed, in compliance with § 602(a). *See* ROA.1274-77.

The district court did not meaningfully evaluate whether NES's compensation structure actually complied with § 602(a). Instead, it focused on dictum in *Helix* discussing an argument by two dissenting justices (Kavanaugh joined by Alito) that § 602(a) was satisfied merely because the employee's daily rate for a single day was more than the minimum weekly salary level. *See* ROA.4409-11; *Helix*, 598 U.S. at 64-65

(Kavanaugh, J., dissenting). The majority disagreed with that argument, holding that "a daily-rate worker does not qualify under § 602(a) as a salaried employee—even if (like Hewitt) his daily rate is high." *Id.* at 54.

The discussion in *Helix* does not apply here because none of the Plaintiffs were paid solely on a daily basis, and NES does not contend that the salary-basis test is automatically satisfied with regard to highly compensated employees. Nevertheless, the district court highlighted a footnote in *Helix* that elaborated on the majority's disagreement with the dissent on this point. ROA.4409-11. The *Helix* majority emphasized that the employee's high salary only satisfied the salary *level* requirement and did not, in itself, satisfy the salary *basis* requirement. *Helix*, 598 U.S. at 54 n.5. Section 602(a) requires that the employee receive a "predetermined amount" on a weekly or less frequent basis that "cannot be changed because of the 'number of days or hours' he labors," and those were not the facts in *Helix*. *Id.*

The majority also noted and rejected the dissent's suggestion that § 602(a) supports their argument because it provides that the weekly predetermined amount may constitute only "part" of the employee's compensation. *See id.* The majority noted:

[B]efore any discussion of salary level comes in, an employer must pay an employee on a salary *basis*. And here is where it helps to really look at § 602(a)'s text, because it describes when an employee is paid on a "salary basis." He is paid that way (pardon the repetition) when he gets a "predetermined amount" that cannot be changed because of "the number of days or hours" he labors, but instead must be paid "without regard to [that] number"; when he receives his "full salary for any week" in which he works even one day; and when he is paid "on a weekly basis." Or, one might say that an employee is paid on "a salary basis," within the regulation's meaning, when he gets what ordinary people think of as a salary. And contra the dissent, the regulation's 'all or part' reference says nothing different. That term makes clear that a worker can be paid on a salary basis even if he additionally gets non-salary compensation, like a bonus. But the employee still must be paid a salary. And Hewitt was not.

*Id.* (quoted by the district court at ROA.4410).

The district court found this reasoning "easily maps onto the instant case" (ROA.4410), but not by applying § 602(a)'s text, as *Helix* requires. Instead, the district court disregarded the fact that the Plaintiffs received a weekly base salary, as defined under § 602(a), and treated that weekly base salary as nothing but a weekly minimum guarantee provided to hourly and daily-rate employees. ROA.4411-13. This was clearly erroneous because § 602(a) defines what constitutes payment of a weekly salary, and as discussed above, NES's compensation structure complied. *Helix*, 598 U.S. at 51; ROA.1274-77; *see also Coates*,

961 F.3d at 1045 (holding § 602(a) simply requires payment of a predetermined amount on a weekly or less frequent basis, and if that is provided, the salary-basis requirement is met "no matter how much [the employer's] method of compensation resembles payroll procedures for the typical hourly wage-earner").

The fact that NES paid the Plaintiffs additional compensation on top of their weekly base salary for work beyond a predetermined amount per week was immaterial because the regulations expressly provide that the employer may pay the employee additional compensation, beyond their weekly base salary, "on any basis." *See* 29 C.F.R. §§ 541.602(a) (salary paid on a weekly or less frequent basis need only be "part of the employee's compensation"), 541.604(a) (employer may provide the employee additional compensation "on any basis" without violating the salary basis requirement). The question under § 602(a) is whether the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

*Id.* § 541.602(a). All of these requirements were met here, and nothing in *Helix* is to the contrary.

### C. Gentry *inappropriately rewrites the salary-basis regulations to impose an additional "normal workweek" requirement.*

The district court also relied on the district court opinion in *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) (Edison, Mag. J.), *adopted*, 2022 WL 889276 (S.D. Tex. Mar. 25, 2022) (Brown, J.), which a panel of this Court affirmed. *See Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. 2024). *See* ROA.4407-11.[5]

In *Gentry*, the plaintiff was a highly compensated engineer who initially worked solely by the hour but was converted to a weekly salary equal to eight hours of pay for every week he performed any work, plus an hourly rate for work beyond eight hours in a week. 2022 WL 658768, at *1-2. The magistrate judge that recommended the ruling did not evaluate whether the compensation structure complied with § 602(a); instead, the judge construed § 604(a) of the regulations to require

---

[5] Concurrently with this brief, pursuant to Fed. R. App. P. 40(g), NES has requested that this Court review the holding in *Gentry* en banc. *See* Petition for Initial Hearing En Banc (filed May 22, 2025).

compliance with § 604(b) if the employee received any compensation beyond the guaranteed weekly salary for time worked during "the normal workweek," meaning 40 hours. *Id.* at *5. Because the plaintiff received hourly compensation for work performed *during* the normal workweek, the magistrate judge opined that § 604(b) applied. *Id.* at *6. And, because the employer did not comply with § 604(b), the judge held that the salary-basis test was not satisfied. *Id.* The district court then adopted that recommended ruling without change. 2022 WL 889276 (S.D. Tex. Mar. 25, 2022).

On appeal, a panel of this Court essentially adopted the relevant part of the magistrate judge's analysis, holding that one of the examples of a compliant compensation structure described in § 604(a) adds a requirement to § 602(a) that the "predetermined amount" or salary must represent all compensation for work performed during the "normal workweek;" otherwise, § 604(b) applies to the exclusion of § 602(a). *Gentry*, 102 F.4th at 719. The panel held that this interpretation of the regulations reads them all "in harmony" and is necessary to ensure that the salary paid under § 602(a) represents a "true" weekly salary. *Id.* at 719, 723.

Respectfully, this holding is anti-textual, as the panel appeared to recognize. *See id.* at 723 n.56 (citing a 2005 dissenting opinion by Supreme Court Justice Stevens saying it is "a strange principle that requires strict adherence to the text of one provision while allowing another to have virtually no real world application") (quoting *Dodd v. United States*, 545 U.S. 353, 371 (2005) (Stevens, J., dissenting)). The substance of § 604(a) provides:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. . . . Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

29 C.F.R. § 541.604(a). Nothing in the regulation suggests an intent to modify § 602(a) to impose any additional requirements. To the contrary, the text of the regulation makes clear that there are no additional requirements and affirms that the employer may provide "additional compensation" on "any basis" without it affecting the employee's status. *See id.*; *see also Greinstein*, 2024 WL 3771455, at *2 (explaining that, "rather than triggering an 'additional hurdle' to satisfy the salary-basis

test, § 604(a) permits additional pay so long as the underlying compensation scheme satisfies § 602(a).") (citations omitted); *Coates*, 961 F.3d at 1045 (holding that if § 602(a) is satisfied, the employees are exempt, and "no other contractual 'bells and whistles'" are required).

The basis for the "normal workweek" or "true salary" requirement the panel found in *Gentry* is not the text of § 602(a) but an *example* provided in § 604(a). *See Gentry*, 102 F.4th at 719. That section provides three nonexclusive examples of compliant compensation structures:

> Thus, *for example* under the salary requirement described in § 541.600(a)(2) [defining the salary-level requirement], an exempt employee guaranteed at least $1,128 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $1,128 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $1,128 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek.

29 C.F.R. § 541.604(a) (emphasis added).

The third example states that if an employer adopts a compensation structure where the employee receives additional compensation on top of their weekly salary that is "based on hours worked for work beyond the normal workweek," that does not affect the employee's exempt status. *Id.*

But it does *not* state that the example imposes any additional requirements, on top of those in § 602(a), nor does it state that the exemption is lost if the additional compensation is for time worked *during* the normal workweek. *See id.* Indeed, this Court has repeatedly held the opposite. *See Venable*, 117 F.4th at 299-300 (holding compensation structure that included daily compensation for work performed during a normal workweek on top of a base salary complied with the salary-basis test); *Greinstein*, 2024 WL 3771455, at *2 (explaining that, "rather than triggering an 'additional hurdle' to satisfy the salary-basis test, § 604(a) permits additional pay so long as the underlying compensation scheme satisfies § 602(a)."). Nevertheless, with no textual basis, the *Gentry* panel held that the third example adds a "true salary" requirement to § 602(a) that requires the predetermined amount to represent all compensation for "all work performed that week." 102 F.4th at 720.

The panel purported to find support for this interpretation in *Helix* (*id.* at 720 & n.33), but *Helix* does not support it. The cited language from *Helix* addressed an argument by the employer that the employee— whose pay was "based solely on a daily rate," 598 U.S. at 43—was nevertheless

compensated on a weekly or less frequent "basis" because that was how often he received his paycheck. *See id.* at 52-53. The Supreme Court rejected this pay-frequency argument, holding that the compensation "basis" refers to "the unit or method for calculating pay, not the frequency of its distribution." *Id.* at 53. The Court explained: "an employee receives compensation on a weekly—as opposed to a daily or hourly—basis, as § 602(a) demands, when he gets a weekly rate. The provision's temporal dividing line is not about paycheck frequency." *Id.*

The discussion in *Helix* merely explains the difference between an employee who receives a predetermined salary on a weekly basis and an employee who receives his paycheck on a weekly basis. *See id.* It does not even suggest that the "predetermined amount" or salary under § 602(a) must include all compensation for work performed during the regular workweek. Indeed, in *Helix*, it was undisputed that the employee was paid solely by the day. *Id.* at 43. And the salary-basis regulations provide that the employee's salary may constitute only "part" of the employee's compensation, with "additional compensation" paid to the employee "on any basis." *See* 29 C.F.R. §§ 541.602(a) (employee's salary may constitute only "part of the employee's compensation"), 541.604(a) (employer may

provide the employee "additional compensation," "paid on any basis," "without losing the exemption or violating the salary basis requirement"); *see also Helix*, 598 U.S. at 46 (holding that § 602(a) requires that the employee "get at least part of his compensation through a preset weekly (or less frequent) salary").

Despite the limited scope of the discussion in *Helix* and the actual text of the regulation, the panel in *Gentry* read the Supreme Court's use of the words "weekly rate," and the third example from § 604(a), to impose an additional requirement that the "predetermined amount" under § 602(a) must compensate the employee for all work performed during the normal workweek or else § 602(a) does not apply. *See Gentry*, 102 F.4th at 720 (holding that the salary must compensate the employee "for all work performed that week"), 722 (holding that § 604(a) "does not envision hourly pay for work *within* the normal workweek"). This interpretation is supported neither by *Helix* nor by the regulations, and it has been directly rejected by at least one other circuit. *See Wilson*, 80 F.4th at 1179 n.4 (finding *Gentry* unpersuasive because § 604(a), "by its plain language, [does not] exclude other compensation schemes where

additional compensation is calculated hourly but not beyond the 40-hour workweek").

*Gentry* also conflicts with other decisions of this Court. This Court has repeatedly held—both before and after *Gentry*—that § 602(a) applies to employees who receive day-rate compensation for work performed *during the normal workweek* on top of their base salaries. *See Venable*, 117 F.4th at 299-300 (holding employees who were paid a predetermined salary, plus day-rate compensation for time spent on a customer's rig, met the salary-basis test under § 602(a)); *Hebert*, 2023 WL 4105427, at *2 (holding employees who were paid a predetermined salary, plus day-rate compensation for time spent working at offshore sites, met the salary-basis test under § 602(a)). These holdings are fundamentally inconsistent with *Gentry* because they recognize that additional compensation may be provided for work performed during the normal workweek without it affecting the employee's exempt status.

The real basis for *Gentry*'s holding that the "predetermined amount" under § 602(a) must compensate the employee for all time worked during the regular workweek appears to be a concern that if the regulations are applied as written, it would create loophole around the

requirements of § 604(b). *See* 102 F.4th at 723 & nn.55-56 (expressing concern that if the employer's interpretation of the regulations were correct, it would allow employers to circumvent the requirements of § 604(b), citing the DOL's concern that it "effectively nullif[ies] 541.604(b)").

Whatever the policy implications of this interpretation, it is not the role of this or any other court to rewrite the regulations to better reflect what the DOL may have intended. *See, e.g., Cargill v. Garland*, 57 F.4th 447, 472 n.13 (5th Cir. 2023) (en banc) ("It is our responsibility to apply the law as written, regardless of what we think about the law's wisdom or utility."), *aff'd*, 602 U.S. 406 (2024). If the regulations, as written, permit employers to avoid the FLSA overtime requirement under circumstances the DOL did not intend (which is far from clear, given the language the DOL chose to use), the DOL can correct it by revising the regulations. But, unless and until it does, employers have a right to rely on the plain language of the regulations to structure their affairs. *Cf. Gregory v. Helvering*, 293 U.S. 465, 469 (1935) (holding taxpayers have a "legal right" to "decrease the amount of what otherwise would be his taxes, or altogether avoid them, by any means which the law permits");

37

*Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375-76 (5th Cir. 1987) (holding corporations have a right to structure their affairs to avoid the general jurisdiction of a state's courts). This Court should not take it upon itself to correct the DOL's perceived mistakes in drafting the regulations.

### D.     *Pickens is equally non-textual and contrary to* Helix.

After NES filed this appeal, the Sixth Circuit issued a divided panel decision reaching the same conclusion as *Gentry* with regard to the same compensation structure by the same employer, but applying a slightly different analysis. *See Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 581-82 (6th Cir. 2025). Whereas *Gentry* held that one of the examples in § 604(a) modifies § 602(a) to require that the predetermined weekly amount must compensate the employee for all work performed during "the normal workweek," 102 F.4th at 719-21, *Pickens* held that the undefined words "salary" and "weekly basis" impute an unstated requirement that the predetermined amount paid under § 602(a) compensate the employee for all work performed in a "regular week's worth of work." 133 F.4th at 581-82.

Like *Gentry*, *Pickens* is at odds with the plain language of the regulations and with the other authorities discussed above, including

*Helix*. Section 602(a) of the regulations, which is titled "salary basis," establishes the salary-basis requirement. *See* 29 C.F.R. § 541.602(a). It defines what "salary" means under the regulations. *See Helix*, 598 U.S. at 51 (stating that 602(a) "embodies the standard meaning of the word 'salary'"). According to the Supreme Court, the word "salary" simply refers to "fixed compensation regularly paid." *Id.* That "fixed compensation" is the "predetermined amount" that must be paid on a "weekly, or less frequent basis." 29 C.F.R. § 541.602(a). Nothing in the regulation purports to require that the predetermined amount constitute all compensation for "regular" work, or for all work performed in a "normal" or "regular" workweek. In fact, the regulations say the opposite—that the "predetermined amount" need only constitute "part" of the employee's compensation, and "additional compensation" may be paid on "any basis," including hourly or daily, without losing the exemption. *Id.* §§ 541.602(a), -.604(a). Thus, *Pickens*'s holding conflicts with the text of the regulation.

Dissenting Sixth Circuit Judge Eric Murphy noted this defect in the majority's reasoning. *See Pickens*, 133 F.4th at 593, 595 (emphasizing that the regulation explicitly provides that the predetermined amount

need only be "part of the employee's compensation"). He concluded that the regulation unambiguously requires only that the "employer must pay the predetermined amount each week that an employee performs work, no matter how much work the employee performs," and the employer's compensation structure in that case clearly satisfied these requirements. *Id.* at 595-96. If the employee worked only one minute in a week, he was entitled to the full salary. *Id.* at 594, 596. Judge Murphy concluded there was "no linguistically plausibly way to read 'on a weekly basis' to mean 'for all the work performed during a *regular* workweek'" when the unambiguous regulations do not purport to require it. *Id.* at 597 (emphasis in original); *see also id.* at 595 ("[T]he text [of § 602(a)] leaves no doubt that 'on a weekly basis' cannot perform the role that the majority gives it.").

As discussed above, this Court should reject the non-textual holdings in both *Pickens* and *Gentry* that are against the great weight of authority and should hold that NES's compensation structure satisfies the salary-basis test under § 602(a). And, because it does, the district court erred in granting the Plaintiffs' Motion for Partial Summary Judgment and in denying NES's Motion for Summary Judgment.

40

## CONCLUSION

The district court erred in holding that NES's compensation structure does not comply with the DOL's salary-basis test and that NES is liable to the Plaintiffs for unpaid overtime under the FLSA. Therefore, this Court should reverse the district court's judgment and render a judgment that Plaintiffs take nothing. Alternatively, if this Court finds there are unresolved material issues, it should reverse and remand for further proceedings.

Respectfully submitted,

*/s/ J. Stephen Barrick*
J. Stephen Barrick
Texas Bar No. 00796168
sbarrick@hicks-thomas.com

Eric Grant
Texas Bar No. 24076167
grant@hicks-thomas.com

HICKS THOMAS LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 547-9100
(713) 547-9150 (Fax)

*Attorneys for Defendant-Appellant*
*NES Global, LLC*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations set in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed R. App. P 32(f) and Fifth Circuit Rule 32.2, this brief contains 8,249 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. P 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Dated:  May 22, 2025

*/s/ J. Stephen Barrick*