No. 24-20480

# United States Court of Appeals
# for the Fifth Circuit

LOYDA ALVAREZ; LEDYS DUNN, Independent Executor of the Estate of
Sammie D. Dunn; ALBERT RODRIGUEZ; AN NG; ANDREW JAMIESON, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

NES GLOBAL, L.L.C.,

*Defendant-Appellant/Cross-Appellee.*

Appeal From Cause No. 4:20-CV-01933
In the Southern District of Texas
(Honorable Keith P. Ellison, presiding)

**BRIEF OF APPELLEES/CROSS-APPELLANTS (SECOND BRIEF)**

Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com
*Attorneys for Plaintiffs-Appellees-
Cross-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**

Loyda Alvarez; Ledys Dunn, Independent Executor of the Estate of Sammie D. Dunn; Albert Rodriguez; An Ng; Andrew Jamieson, and all other plaintiffs listed on Plaintiffs' Notice of Appeal. ROA.5558-5560.

**Counsel for Plaintiffs-Appellees:**

Richard J. (Rex) Burch and David I. Moulton, Bruckner Burch PLLC; Michael A. Josephson, Andrew W. Dunlap, Josephson Dunlap, LLP

**Defendant-Appellant:**

NES Global, LLC

**Counsel for Defendant-Appellant:**

Ashlee Cassman Grant, Justin A. Guilfoyle, and Jennifer R. DeVlugt, Baker & Hostetler LLP; J. Stephen Barrick and Eric Grant, Hicks Thomas LLP


Dated: July 14, 2025                        /s/ David I. Moulton
                                            Attorney For Plaintiffs-
                                            Appellees/Cross-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

NES admits this case is controlled by *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. 2024). Doc. 67, NES's Pet. For Initial Hearing En Banc, at 4 ("[t]he outcome of this appeal is largely controlled by [*Gentry*]").

While NES claims *Gentry* "conflicts" with a Tenth Circuit decision, this Circuit, the Sixth Circuit, and the Tenth Circuit all disagree. *Gentry,* 102 F.4th at 725 ("as the Tenth Circuit acknowledged in that case, *Gentry* … is factually dissimilar"); *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 585 (6th Cir. 2025) (agreeing with *Gentry* and noting the Tenth Circuit's case "is not to the contrary"). As Judge Sutton explained, the "stark contrast" in the factual circumstances means "[w]e have no need to embrace or reject" the Tenth Circuit's rationale in this case. *Pickens*, 133 F.4th at 585. Because the Supreme Court, this Court, the Sixth Circuit, and the Department of Labor (under Presidents Bush, Trump, Biden, etc.) all agree NES's pay scheme flunks the "salary basis" test, NES's appeal does not warrant oral argument.

The cross-appeal involves straightforward application of summary judgment principles. There is evidence from which a jury could reasonably infer NES—despite being warned by the Department of Labor and instructed by its counsel—recklessly disregarded its known obligations under the Fair Labor Standards Act (FLSA). Indeed, as Judge Kethledge noted, even adopting a pay plan like NES's reflects an obvious attempt to dodge the FLSA's requirements, not comply with them. Under black letter law, that warrants a jury trial—not summary judgment. Oral argument is not necessary.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................ii

STATEMENT REGARDING ORAL ARGUMENT ......................................iii

TABLE OF CONTENTS ...............................................................................iv

TABLE OF AUTHORITIES ..........................................................................vi

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE .......................................................................2

   1. Factual Background. .............................................................................2

   2. Procedural History. ..............................................................................8

SUMMARY OF ARGUMENT .....................................................................9

ARGUMENT .................................................................................................13

   1. Standard of Review. ...........................................................................13

   2. NES's day-rate Retainer fails the FLSA's salary-basis test........................14

     A. The FLSA requires overtime pay unless an exemption applies..........................14

     B. NES's 1 (or 2) day Retainer isn't a salary any more than *Helix's* 1-day (or *Gentry's* 8-hour guarantee). ..................................................................15

     C. NES didn't pay a § 602(a) "weekly-rate only" so it must either comply with § 604 or pay overtime. .......................................................................17

       i. NES paid daily or hourly for time worked within the normal workweek, so § 604(a) doesn't apply. ...................................................17

       ii. Section 604(b) requires a guarantee and a "reasonable relationship.".........18

   3. *Gentry* is in line with *Helix* as well as pre-*Helix* decisions from other circuits. ......21

   4. NES's other cases similarly do not undermine *Gentry* is wrong.............................27

   5. The District Court erred in granting summary judgment on willfulness. .............29

iv

A. Willful is a state-of-mind factual inquiry dependent on all the circumstances. .............................................................................29

B. Because credibility cannot be weighed at the summary judgment stage, summary judgment is rarely appropriate with respect to a state of mind........31

C. A jury must decide if NES willfully violated the FLSA......................................33

6. Summary judgment on NES's good faith defense was improper..........................35

7. Conclusion .........................................................................................36

ADDENDUM..........................................................................................1

1. 29 CFR § 541.602 (ending 12/31/2019) ........................................................2

2. 29 C.F.R. § 541.602 (starting 1/1/2020)........................................................5

3. 29 CFR § 541.604 (ending 12/31/2019) ........................................................9

4. 29 CFR § 541.604 (starting 1/1/2020) ........................................................10

# TABLE OF AUTHORITIES

## Cases

*60 Ivy Street Corp. v. Alexander,*
  822 F.2d 1432 (6th Cir.1987) ......................................................48

*Elmwood Dry Dock & Repair v. Int'l Bldg.Sys.,*
  92-3131,1993 WL 432361 (E.D. La. Oct. 19, 1993)......................48

*Adams v. All Coast, L.L.C.,*
  15 F.4th 365 (5th Cir. 2021) .......................................................19

*AIG Specialty Ins. Co. v. Tesoro Corp.,*
  840 F.3d 205 (5th Cir. 2016) ......................................................18

*Allen v. Bd. of Pub. Educ. for Bibb Cnty.,*
  495 F.3d 1306 (11th Cir. 2007) ..................................................44

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,*
  469 F. Supp. 2d 1086 (M.D. Fla. 2006) .....................................45

*Alvarez v. NES Glob. LLC,*
  709 F. Supp. 3d 284 (S.D. Tex. 2023).........................................36

*Anani v. CVS RX Servs., Inc.,*
  730 F.3d 146 (2d Cir. 2013) ................................................. 37, 38

*Bell v. Callaway Partners, LLC,*
  394 F. App'x 632 (11th Cir. 2010).......................................... 43, 44

*Bell v. Callaway Partners, LLC,*
  No. 1:06-CV-1993-CC, 2010 WL 6231196 (N.D. Ga. Feb. 5, 2010) ................. 43, 44

*Bernard v. IBP, Inc. of Neb.,*
  154 F.3d 259 (5th Cir.1998) .......................................................51

*Brock v. Claridge Hotel & Casino,*
  846 F.2d 180 (3d Cir. 1988)...........................................35, 39, 40

*Canal Barge Co. v. Torco Oil Co.,*
  220 F.3d 370 (5th Cir.2000) .......................................................47

*Century Sur. Co. v. Colgate Operating, L.L.C.,*
  116 F.4th 345 (5th Cir. 2024) .....................................................16

*Coates v. Dassault Falcon Jet Corp.,*
  961 F.3d 1039 (8th Cir. 2020) ............................................... 37, 39

*Corp. Investigative Div., Inc. v. Am. Tel. & Tel. Co.,*
  884 F. Supp. 220 (W.D. La. 1995).............................................46

*Dacar v. Saybolt, L.P.,*
  914 F.3d 917 (5th Cir. 2018) ................................................ 45, 51

*Dewan v. M-I, L.L.C.,*
  858 F.3d 331 (5th Cir. 2017) ......................................................20

*Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.,*
    73 F.4th 322 (5th Cir. 2023) ...............................................................17

*E.M.D. Sales, Inc. v. Carrera,*
    604 U.S. 45 (2025)........................................................................ 19, 20

*Fontenot v. McCall's Boat Rentals, Inc.,*
    227 F. App'x 397 (5th Cir. 2007).......................................................47

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.,*
    102 F.4th 712 (5th Cir. 2024) ......................................................passim

*Greene v. Tyler Techs., Inc.,*
    526 F. Supp. 3d 1325 (N.D. Ga. 2021).............................................45

*Greinstein v. Granite Servs. Int'l Inc.,*
    No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024) .......................43

*Helix Energy Sols. Grp., Inc. v. Hewitt,*
    598 U.S. 39 (2023).........................................................................passim

*Hewitt v. Helix Energy Sols. Grp., Inc.,*
    15 F.4th 289 (5th Cir. 2021) ............................................ 32, 35, 38, 40

*Halle v. Galliano Marine Serv., L.L.C.,*
    855 F.3d 290 (5th Cir. 2017) ..............................................................18

*Hebert v. FMC Techs., Inc.,*
    No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023).................. 40, 41

*Hughes v. Gulf Interstate Field Servs., Inc.,*
    878 F.3d 183 (6th Cir. 2017) ........................................................38, 39

*Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.,*
    579 F.3d 546 (5th Cir. 2009) ..............................................................20

*International Shortstop, Inc. v. Rally's Inc.,*
    939 F.2d 1257 (5th Cir. 1991) ............................................................48

*Janvey v. Romero,*
    817 F.3d 184 (5th Cir. 2016) ........................................................47, 49

*John v. State of La. (Bd. of Trs. for State Colleges & Universities),*
    757 F.2d 698 (5th Cir. 1985) ..............................................................17

*Karr v. City of Beaumont,*
    950 F.Supp. 1317 (E.D. Tex. 1997) ...................................................47

*Marx v. Gen. Revenue Corp.,*
    568 U.S. 371 (2013) ......................................................................35, 36

*McCumber v. Eye Care Center of America, Inc.,*
    No. Civ. A. 09-1000, 2011 WL 1542671 (M.D. La. Apr. 20, 2011) ............46

*Meesook v. Grey Canyon Fam. Med., P.A.,*
    No. SA-13-CV-72928 XR, 2014 WL 4072078 (W.D. Tex. Aug. 15, 2014)..............51

*Mireles v. Frio Foods, Inc.,*
    899 F.2d 1407 (5th Cir.1990) .............................................................51

*Mohammadi v. Nwabuisi,*
  990 F. Supp. 2d 723 (W.D. Tex. 2014) .......................................................... 51

*Molina v. Home Depot USA, Inc.,*
  20 F.4th 166 (5th Cir. 2021) ........................................................................... 47

*Mondeck v. LineQuest, L.L.C.,*
  No. 22-50185, 2023 WL 4015361 (5th Cir. June 14, 2023) ......................... 19

*Mumby v. Pure Energy Servs. (USA), Inc.,*
  636 F.3d 1266 (10th Cir. 2011) ..................................................................... 45

*Perry v. City of New York,*
  78 F.4th 502 (2d Cir. 2023) ........................................................................... 45

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
  133 F.4th 575 (6th Cir. 2025) ................................................................. passim

*Ramos v. Al-Bataineh,*
  599 F. App'x 548 (5th Cir. 2015) ................................................................... 44

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133 (2000) ................................................................................. 47, 49

*Safeco Ins. Co. of America v. Burr,*
  551 U.S. 47 (2007) ................................................................................... 45, 49

*Sealey v. EmCare, Inc.,*
  No. 2:11-CV-00120, 2013 WL 164040 (S.D. Tex. Jan. 14, 2013) .............. 46

*Semenovich v. Project Performance Co., Inc.,*
  *2016 WL 1076926 (E.D. Va. Mar. 18, 2016)* ............................................... 45

*Singer v. City of Waco, Tex.,*
  324 F.3d 813 (5th Cir. 2003) ............................................................ 20, 51, 52

*Smiley Team II, Inc. v. Gen. Star Ins. Co.,*
  No. 23-40129, 2024 WL 2796652 (5th Cir. May 31, 2024) ......................... 16

*Taylor-Travis v. Jackson State Univ.,*
  984 F.3d 1107 (5th Cir.) ........................................................................... 47, 49

*Tran v. Thai, C.A.,*
  H-08-3650, 2010 WL 5232944 (S.D. Tex. Dec. 16, 2010) .......................... 46

*Venable v. Schlumberger Ltd.,*
  No. 6:16-CV-00241, 2022 WL 895447 (W.D. La. Mar. 25, 2022) .............. 42

*Venable v. Smith Int'l, Inc.,*
  117 F.4th 295 (5th Cir. 2024) ............................................................ 13, 29, 31

*Wilson v. Schlumberger Tech. Corp.,*
  80 F.4th 1170 (10th Cir. 2023) ................................................................. 41, 42

*Zannikos v. Oil Inspections (U.S.A.), Inc.,*
  605 Fed.Appx. 349 (5th Cir. 2015) ................................................................ 46

**Statutes**

29 U.S.C. § 207(a) ...........................................................................................21
29 U.S.C. § 213(a)(1) ......................................................................................21
29 U.S.C. § 216(b) ...........................................................................................51
29 U.S.C. § 255(a) ...........................................................................................44

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................17

**Regulations**

29 C.F.R. § 541.1(f) (2003) ...........................................................................39
29 C.F.R. § 541.602(a) ............................................................................. 13, 30
29 C.F.R. § 541.602(a)(1) ...............................................................................36
29 C.F.R. § 541.604(a) .............................................................................passim
29 C.F.R. § 541.604(b) .............................................................................passim
29 C.F.R. § 578.3(c) ........................................................................................45
29 C.F.R. § 602(a) ...........................................................................................26
29 C.F.R. § 604 ................................................................................................26
29 C.F.R. § 604(b) ...........................................................................................35
*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees,*
    69 Fed. Reg. 22122 (Apr. 23, 2004) .......................................................34

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Loyda Alvarez ("Appellee" or "Alvarez") brought her claim for overtime pay under the Fair Labor Standards Act. 29 U.S.C. § 201 et seq. The district court had subject matter jurisdiction over Alvarez's similar state law claims under the New Mexico Minimum Wage Act pursuant to 28 U.S.C. § 1367.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final judgment. The district court entered the final judgment on July 23, 2024 (ROA.4837-4840); the district court denied Appellant's motion for new trial or to alter or amend the judgment on September 26, 2024 (ROA.4904-4915); NES filed its notice of appeal on October 24, 2024. ROA.5371-5372. Plaintiffs-Appellees filed their notice of cross-appeal on November 7, 2024 (ROA.5558-5560).

## STATEMENT OF THE ISSUES

1.    Did the district court err in finding NES failed the salary basis test where:

    a.    NES "guaranteed" Plaintiffs as little as 1 day's pay (at the applicable Day Rate) even though they normally worked at least 5 days a week;

    b.    NES did not pay for the other days in the normal workweek unless Plaintiffs worked those days

    c.    NES's "additional" day rate pay was for time worked within the normal workweek;

     d.     NES failed to make good on its alleged "guaranteed" pay 95% of the time;

     e.     NES reduced Plaintiffs' pay in partial day increments; and

     c.     The ratio of Appellee's "usual earnings" to their "guaranteed" salary was more than 3.62 times the regulatory limit?

2.     Is there a question of fact with respect to NES's alleged good faith defense?

3.     Is there a question of fact with respect to whether NES's violation of the FLSA was willful?

## STATEMENT OF THE CASE

### 1. Factual Background.

Prior to December 2016, NES paid its employees "a straight hourly or day rate for all hours worked each workweek." ROA.6414 at ¶ 4. Then the Department of Labor (DOL) audited NES. The DOL found NES owed approximately $2.1M in unpaid overtime because it misclassified employees as "exempt" from the FLSA. ROA.6421. In particular, NES violated the salary basis test by, inter alia, failing to pay a "minimum guarantee." ROA.6425.

After the audit, NES adopted a "Retainer" pay structure for its day-rate and hourly-rate employees. ROA.4403-4404. Under this scheme, NES was supposed to pay a minimum number of hours or days as a "Retainer" if the employee performed any work in a workweek. The number of days or hours covered by the Retainer is the

"Retainer Period." *Id.* "The Retainer Period ranged from one to three days for day-rate employees and from five to 20 hours for hourly employees[.]" ROA.4404, 6573:20-23, 6574:1-10 (Plaintiffs paid on a day rate had Retainers "equal to one day, two days, or three days" of pay.). But only one Plaintiff had a 3-day Retainer and only for a small portion of his employment. ROA.6594 at ¶ 13. A 20-hour Retainer was also rare, accounting for just 2.1% of all hourly workweeks within the three-year limitations period. *Id.* By contrast, dozens of Plaintiffs had a Retainer equal to just 1 day's pay, i.e., a single "Day Rate." ROA.1325, 1525, 1529-1530, 1545-1546, 1548, 1567, 1602, 1605, 1631, 1656, 1662, 1703, 1713, 1722, 1731, 1735, 1750, 1763, 1766, 1779, 1782, 1785, 1788, 1801, 1804, 1808-1809, 1818, 1849, 1885, 1891, 1918-1919, 1929, 1938, 1940, 1946, 1948, 1957, 1961, 1980, 1982, 1984, 1986, 1987, 1998, 2000, 2009, 2014, 2024, 2036.

NES claims its Retainer Policy provides a "set weekly guarantee." ROA.6442. The employee's Retainer is calculated based on "the hourly rate used to create the retainer." ROA.6442. NES published a chart explaining the calculation:

| Hourly Rate | Retainer |
|---|---|
| Less than $65 | Need to do a re-assessment on classification, but if truly exempt calculate the retainer to get closest to $950 as possible. Must be above $913 |
| $65-$99 | Retainer is set at 15 hours |
| $100-$199 | Retainer is set at 10 hours |
| $200+ | Retainer is set at 5 hours |
| Day Rate | |
| Day rate less than $500 | Need to do a re-assessment on classification, but if truly exempt 3 day retainer |
| $500-$950 | 2 day retainer |
| $950+ | 1 day retainer |

ROA.6443. Thus, for example, NES set the "Retainer Period" for employees with an "Hourly Rate" of $200 or more per hour at 5 hours, but for workers with an Hourly Rate between $65 and $99 per hour, NES set the Retainer at 15 hours. ROA.6443. For employees with an Hourly Rate below $65 an hour, the goal was to "calculate the retainer to get closest [sic] to $950 as possible." ROA.6443. According to NES policy at the time, that Retainer "must be above $913." ROA.6442-6443.

"For all hours worked after the retainer, [the] employee is paid at the hourly rate used to create the Retainer." ROA.6442. For instance, if an employee with a 5-hour Retainer works 13 hours in a week, they are paid their hourly rate for all 13 hours. If the employee worked 50 hours in a week, they are paid their hourly rate for 50 hours.

For workers paid a "Day Rate," a similar calculation is performed. ROA.6443. If the employee's Day Rate is between $500 and $950, the so-called "set weekly guarantee" was a "2 day retainer," while employees whose Day Rate was $950 or more received a

"1 day retainer." ROA.6443. The Retainer is thus calculated by multiplying the Day Rate times the number of days in a week covered by the Retainer ("Retainer Period"), even if that is just one day. ROA.6443, 6575:21-23 ("NES calculated [Alvarez's Retainer] by multiplying $560 times two"). The Retainer isn't entered as a flat sum in NES's payroll system. ROA.6442. Instead, the formula used to calculate the Retainer is "entered into the Additional pay info. Example: $70hr x 15hr = $1050 retainer." ROA.6442.

In late 2019, NES revised its Retainer Policy by reducing the allegedly "guaranteed" portion of the pay to be "in line with new regulations that took effect in January 2020." ROA.6581:6-17. NES's 2019 Retainer chart set the **maximum** Retainer Period at 2 days for day-rate employees and just 14 hours for hourly employees:

| Hourly Rate | Retainer |
|---|---|
| Less than $50 | Commercial and Legal will need to review closer; retainer must exceed $700 and must be in whole hour increments. |
| $50-$64 | Retainer is set at 14 hours |
| $65-$74 | Retainer is set at 11 hours |
| $75-$84 | Retainer is set at 10 hours |
| $85-$99 | Retainer is set at 9 hours |
| $100-$124 | Retainer is set at 7 hours |
| $125-$149 | Retainer is set at 6 hours |
| $150-$199 | Retainer is set at 5 hours |
| $200+ | Retainer is set at 4 hours |
| **Day Rate** | **Retainer** |
| Day rate less than $700 | Need to do re-assessment on classification, but if truly exempt 2 day retainer |
| $700+ | 1 day retainer |

ROA.6583, 6581:22-6582:7. As the rate went up, the Retainer Period went down. Under NES's revised policy, an employee paid an "Hourly Rate" could have a Retainer covering as few as 4 hours. ROA.6583. An employee paid a "Day Rate" could have a "1 day

retainer" equal to exactly one day's pay. ROA.6443, 6583.

Plaintiffs "typically work[ed] at least five days a week" though many worked six or seven. ROA.6586:15-6587:2. NES's contracts define "Normal Hours of Work" as 8-10 hours per day. ROA.1513-2046, 6641 at ¶ 4. The mode of the required hours per day in NES's contracts with Plaintiffs is 10 and the mean is 9.86. *Id.*

Alvarez's contract says her Retainer Period is two days and her "Additional Daily Rate" is $560 per day "for all additional days worked." ROA.6456-6457. So if Alvarez worked six days in a workweek, for example, her total pay would be $3,360. ROA.4404.

While NES promised to "guarantee" the Retainer, it did not actually do so. Some examples of NES failing to even pay day-rate workers their full day's pay include:

| Name | Timesheet | Retainer Pay Failure |
|------|-----------|----------------------|
| Gerard Shallow | 1 Day on 7/25/2019. ROA.6475, 6559:25-6560:2. | $631.20. ROA.6485 [NES-ALVAREZ_006102] (7/26), 6561:13-16. |
| Gerard Shallow | 0.5 Days on 12/23/2019. ROA.6476, 6560:7-13. | $500. ROA.6488 [NES-ALVAREZ_006105] (12/27), 6561:7-6562:21. |
| JoLyn Anderson | 1 Day on 11/26/2019. ROA.6504, 6563:18-25. | $525. ROA.6512 [NES-ALVAREZ_003225] (11/29), 6564:7-6565:7. |
| Traci Hall | 0.5 Days on 12/26 & 12/27/2019. ROA.6518, 6566:11-17. | $550. ROA.6524 [NES-ALVAREZ_008363] (12/27), 6566:22-6567:13. |
| Babak Akbari | 0.5 Days (6 hrs) on 10/5/2019. ROA.6528, 6554:18-24. | $460. ROA.6531 [NES-ALVAREZ_005519] (10/4), 6555:5-22. |
| Charles Crawford | 1 Day on 11/16/2018. ROA.6534, 6556:18-6557:7. | $650. ROA.6537 [NES-ALVAREZ_005596] (11/16); 6557:15-6558:24. |
| Charles Crawford | 1 Day on 11/19/2018. ROA.6535, 6556:18-6557:7. | $650. ROA.6537 [NES-ALVAREZ_005596] (11/23), 6557:15-6558:24. |

NES's failure to pay the Retainer was the rule, not the exception.

Plaintiffs worked less than their Retainer Period on 19 occasions; NES failed to pay the Retainer 18 times. ROA.6593 at ¶ 7, 6595. The only Retainer payment NES

made was to Richard McSween in the pay period August 1-14, 2020. ROA.6593 at ¶ 8. That was after it got sued in this case. ROA.29 (Complaint filed June 2, 2020). NES also admits it did not pay the Retainer if: (1) the work location was closed; (2) the employee did not work; or (3) the employee had jury duty all week. ROA.6588:8-16. NES did not have a sick leave policy. ROA.6590:1-4. Thus, NES did not pay when an employee was out sick *unless* its customer paid. ROA.6589:17-6590:13. That is how it was until May 2023, when NES's IT team "hardcoded [the Retainer] in the background of the system to ensure that everyone receives their guaranteed pay." ROA.6550:7-12, 24-25.

NES had a financial incentive to avoid paying the Retainer, because "typically when the retainer is paid but the worker works less days than the retainer it does come out of [NES's] profit[.]" ROA.6576:25-6577:3; *see also* ROA.6439 (new MSA "gives [NES] the ability to charge retainers in the event someone doesn't work the set hours opposed to just straight out of profit."); ROA.6591:1-7 ("NES just eats the cost"). And until May 2023, NES's payroll system did not guarantee the Retainer. ROA.6550:16-25. Prior to May 2023, each employee's Retainer was, allegedly, entered into NES's payroll system manually. ROA.6550:20-23. For an employee to be protected from receiving less than their Retainer "require[d] a human being to notice there is a problem" with being paid less than the Retainer and "do something about it." ROA.6551:18-6552:5.

The Retainer covers a tiny fraction of the employees' "usual earnings at the assigned hourly [or] daily … rate" for their "normal scheduled workweek." 29 C.F.R. 541.604(b). For example, the actual "earnings" of a employees with a 1-day Retainer

Period will be more than 200% of the Retainer every time she works more than 2 days in a workweek. ROA.6442-6443, 6583, 6587:10-19; *see also* ROA.6378 at ¶¶ 10-11 (chart of pay formula examples). And an hourly Plaintiff on a 5-hour retainer will exceed 200% of the Retainer after just 10 hours in a workweek. ROA.6442-6443, 6583.

Reality matches the prediction—NES's records confirms it failed the reasonable relationship test in 94% of the workweeks in the three-year limitations period. ROA.6594 at ¶ 12, 6596 (Reasonable Relationship Summary). On average, the ratio of Plaintiffs' "actual earnings" to NES's Retainer was 3.62-to-1. ROA.6594 at ¶ 11.

## 2. Procedural History.

In June 2020, Loyda Alvarez sued NES Global LLC (Defendant-Appellant) seeking unpaid overtime under the FLSA and the NMMWA. ROA.29, 35-38. She alleged NES failed to pay her, and other workers like her, overtime for hours worked in excess of 40 hours in a workweek. The District Court granted Alvarez's motion for the facilitation of a court-approved notice in August 2021. *Alvarez v. NES Glob. LLC*, No. 4:20-CV-1933, 2021 WL 3571223 (S.D. Tex. Aug. 11, 2021), *reconsideration denied*, No. 4:20-CV-01933, 2021 WL 4593985 (S.D. Tex. Oct. 6, 2021). ROA.876, 880.

A total of 85 individuals filed Notices of Consent to join the collective and remained in the case. ROA.989-1090, 1155, 1157, 1165, 1170, 4727. Plaintiffs moved for partial summary judgment as to NES's exemption defenses, arguing that they are not exempt from the FLSA's overtime requirements because NES did not pay them on a salary basis. ROA.5962. NES moved for summary judgment, arguing that it properly

classified Plaintiffs as exempt from overtime requirements and it acted in good faith in implementing and executing the compensation structure at issue. ROA.1260. NES also asserted it did not violate the FLSA willfully. ROA.1260.

The District Court granted Plaintiffs' motion for partial summary judgment, finding NES failed to pay Plaintiffs on a salary basis. ROA.4398. The District Court granted NES's motion for summary judgment on willfulness and good faith. ROA.4398. Both sides appeal the summary judgment. In a subsequent Order, which is not the subject of the parties' appeals, the District Court limited the scope of the Judgment to the day-rate employees because there is another pending case involving the hourly employees. ROA.4730 ("the Court hereby limits its Summary Judgment Order to those Plaintiffs who received a retainer plus additional compensation on a daily basis.").

## SUMMARY OF ARGUMENT

NES's "Retainer" pay scheme is dead-on-arrival under *Helix*, *Gentry*, and *Picken*s. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023); *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. 2024); *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 578 (6th Cir. 2025); *see also* Doc. 67, NES's Pet. For Initial Hearing En Banc, at 4 (admitting "[t]he outcome of this appeal is largely controlled by [*Gentry*]").

The reason is simple. From *Helix* we know that a 1-day guarantee fails the salary basis test required for FLSA exemption for two reasons: (1) it is not a weekly salary under § 602(a) because it is payment on *more frequent basis* than weekly; and (2) it bears no reasonable relationship to the total pay for the week under § 604(b). *Helix*, 598 U.S.

at 47, 50. From *Gentry* and *Pickens* we know an 8-hour guarantee fails the salary basis test for the same reasons. *Gentry*, 102 F.4th at 721, 724; *Pickens*, 133 F.4th at 583, 591.

Under NES's Retainer plan, dozens of Plaintiffs had a 1-day Retainer. Other than the label NES attached to it, a 1-day Retainer is literally identical in every way to the day rate plan rejected by this Court (en banc) and the Supreme Court in *Helix*. *Helix*, 598 U.S. at 47, 50. And NES doesn't argue the legality of its Retainer plan is affected by the number of days or hours covered by the Retainer Period. Thus, this Court can analyze NES's claim of compliance based on a 1-day Retainer (the shortest Day Rate Retainer) or 5-hour Retainer (the shortest Hourly Rate Retainer applicable to Plaintiffs). ROA.6442-6443, 6583. But it would make no difference if the guarantee analyzed is 2 days. For employees who typically work 5, 6, or 7 days a week, 2 days is still decidedly more frequent than the "weekly, or less frequent basis" required by the law. *Helix*, 598 U.S. at 46, 49.

Despite what NES argues, this Court (the Sixth Circuit, and other courts) have held *Gentry* does not conflict with *Helix* or the other cases NES cites. *Gentry,* 102 F.4th at 724-25; *Pickens*, 133 F.4th at 585-86. Rather, those cases involve salaries based on a typical workweek, which satisfies § 602(a), and additional pay for work beyond the normal workweek, or for special work not directly tied to time (days or hours) worked, both of which are permitted by § 604(a). But NES's Retainer fails to meet either rule.

Recall, § 602(a) requires the salary be based on a week or longer, that is, a "weekly, or less frequent **basis**[.]" 29 C.F.R. § 541.602(a). Basing an employee's pay on just 1 or

2 days' pay is not paying by the week, especially when the employee typically works 5, 6, or 7 days a week. So NES's Retainer fails to satisfy § 602(a). ROA.1513-2046, 6586:15-6587:2; 6641 at ¶ 4. And NES's so called "additional" day rates are paid based on time worked *within* the normal workweek, not "beyond the normal workweek" as permitted by § 604(a). That matters because "§ 604(a) expressly contemplates hourly compensation for work beyond the normal work week, while § 604(b) concerns hourly compensation within the employee's normal scheduled workweek." *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 300 (5th Cir. 2024) (quoting *Gentry*, 102 F.4th at 723).

As NES concedes, application of § 604(b) is dispositive of NES's defense. NES admits—as it must—that its Retainer plan flunks the reasonable relationship test required by § 604(b). At an average ratio of 3.62-to-1, NES can't even come close. ROA.6594. Accordingly, this Court should affirm summary judgment for Plaintiffs.

However, the District Court's summary judgment with respect to whether NES acted in good faith and not willfully should be overturned. Consider the inferences that could be drawn from the fact NES failed to pay the Retainer on 18 of the 19 occasions when an employee worked less than the Retainer Period, and the only time it did was after this case was filed. Maybe a jury will believe NES's self-serving testimony that its 95% failure rate was just a mistake. But a jury could just as easily find NES never guaranteed the Retainer because NES never actually paid it until after this case was filed. Nor does a jury have to credit NES's testimony that the DOL "verbally blessed" NES's pay plan after it was found to owe $2.1M for failing to pay guaranteed salaries.

In context, just NES's failure to pay the Retainer presents a genuine issue of material fact about willfulness. The DOL and its lawyers told NES to pay a guaranteed salary, but NES failed to do so 95% of the times it ever came up (and 100% of the times it came up before this case was filed). ROA.6593 at ¶¶ 7-8. The almost complete failure rate is predictable even if we credit NES's testimony that it relied on a human being to notice a Retainer is owed and manually correct the payroll. ROA.6551:18-6552:5. That's something NES could have avoided easily by simply "hardcoding" the Retainer it into payroll (as NES finally did in 2023). ROA.6550:7-12, 24-25, 6551:18-6552:5. NES's alleged "manual check" for shortfalls in Retainer payments is particularly suspicious since detecting any shortfalls would reduce NES's profits. ROA. 6439, 6576:25-6577:3; *see also* ROA.6591:1-7. Because a jury could easily conclude NES knowingly or recklessly failed to guarantee its alleged Retainer, summary judgment was improper.

Nor does a jury have to believe NES's Retainer plan was a good-faith attempt to comply with, rather than evade, the FLSA's requirements. Faced with functionally the same pay plan (the same one in *Gentry*), Sixth Circuit Judge Kethledge recognized this token "salary" scheme "appears—patently—to be a circumvention of the statutory overtime rule." *See* Oral Argument at 26:10-18, *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (No. 24-5407) (6th Cir. 2025, available here). A jury could easily agree NES's guarantee of as little as 1 day's pay, with every other day in the week paid only if it is worked, is similarly an attempt to evade compliance with the FLSA.

## ARGUMENT

### 1. Standard of Review.

The District Court decided this case on cross motions for summary judgment. Memorandum & Order, ROA.4398. This "Court reviews district court judgments rendered on cross-motions for summary judgment de novo." *Century Sur. Co. v. Colgate Operating, L.L.C.*, 116 F.4th 345, 348–49 (5th Cir. 2024) (cleaned up). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Smiley Team II, Inc. v. Gen. Star Ins. Co.*, No. 23-40129, 2024 WL 2796652, at *1 (5th Cir. May 31, 2024) (quoting Fed. R. Civ. P. 56(a)).

When parties file cross-motions for summary judgment, it "does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *John v. State of La. (Bd. of Trs. for State Colleges & Universities)*, 757 F.2d 698, 705 (5th Cir. 1985). Instead, this Court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 327 (5th Cir. 2023) (citation omitted). This Court can affirm a summary judgment for any reason supported by the record and presented to the district court, even if the district court did not rely on that reason. *AIG Specialty Ins. Co. v. Tesoro Corp.*, 840 F.3d 205, 209 (5th Cir. 2016).

13

While both Plaintiffs and NES moved for summary judgment on liability, their burdens are not the same. "The FLSA requires employers to provide overtime pay to any employee who works more than forty hours per week unless an exemption from this protection applies." *Halle v. Galliano Marine Serv., L.L.C.*, 855 F.3d 290, 293 (5th Cir. 2017). "[T]he employer has the burden of establishing that the exemption applies by a preponderance of the evidence." *Mondeck v. LineQuest, L.L.C.*, No. 22-50185, 2023 WL 4015361, at *2 (5th Cir. June 14, 2023) (citing *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 368 (5th Cir. 2021)); *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025) (same). The employer "must establish beyond peradventure *all* of the essential elements of the … defense to warrant judgment in his favor." *Id.* (citing *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)). Thus, with respect to Plaintiffs' motion for summary judgment, NES was the non-movant but nonetheless maintained the burden of proof.

With respect to NES's motion for summary judgment that it acted in good faith, NES bears the burden of proof on good faith. *See, e.g., Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003). Plaintiffs bear the burden to demonstrate a fact issue on willfulness. *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009).

### 2. NES's day-rate Retainer fails the FLSA's salary-basis test.

### A. The FLSA requires overtime pay unless an exemption applies.

The FLSA requires employers pay their employees at least "one and one-half times the[ir] regular rate" when they work more than 40 hours a week. 29 U.S.C. § 207(a).

Employees working "in a bona fide executive, administrative, or professional" capacity are exempt from this protection. 29 U.S.C. § 213(a)(1). NES claims Plaintiffs are exempt from overtime under the "'bona fide executive' or 'EAP' exemption." Doc. 68 at 16-17. To qualify for exemption, NES had to prove it met: (1) the "job duties" test; (2) the "salary level" test; and (3) the "salary basis" test. *Helix*, 598 U.S. at 44-45; *Gentry*, 102 F.4th at 718. The District Court ruled in favor of Plaintiffs on part three—the "salary basis" test—reserving judgment on the first two parts only if the salary basis were met. ROA.4405 ("If the salary basis test is met, then only will the Court consider whether the other elements of the exemption are also satisfied.").

## B. NES's 1 (or 2) day Retainer isn't a salary any more than *Helix's* 1-day (or *Gentry's* 8-hour guarantee).

NES's Retainer pay scheme violates the FLSA for the same reasons as the pay plans in *Helix*, *Gentry*, and *Pickens*. Neither a one-day guarantee (*Helix*), nor an 8-hour guarantee (*Gentry* and *Pickens*) qualifies as payment on a salary basis. *Helix*, 598 U.S. at 50 (payment equivalent to 1 day's pay is not a "weekly rate" as required by § 602(a) even if it exceeds the salary level and is paid in any week the employee performs any work); *Gentry*, 102 F.4th at 721 (a "salary" based on eight hours "failed to provide a weekly rate" and was thus "not a true salary but was illusory"); *Pickens*, 133 F.4th at 583 (finding "salary" based on eight hours was not a "weekly rate, which compensates an employee for a week's work no matter the number of hours worked."). Just as a one-day or eight-hour guarantee does not qualify as a salary, neither does NES's "Retainer" of one (or

15

two) days' pay because § 602(a) "applies solely to employees paid by the week (or longer)[.]" *Helix*, 598 U.S. at 50.

To argue that it pays on a salary basis, NES claims an employee that "had a daily rate of $1,000" and a 2-day Retainer, would be "entitled to the full $2,000 base salary," if they worked any time at all. Doc. 68 at 15. But under NES's Retainer scheme, the employee wouldn't have a 2-day Retainer. He would only have a 1-day Retainer, so the "guarantee" would only be $1,000. ROA.6443 (over $950 is a 1-day Retainer), 5383 (over $700 is a 1-day Retainer). And he would earn all additional days worked at his day rate of $1,000. ROA.6443, 5383. This is exactly the scenario the Supreme Court rejected in *Helix*. *Helix*, 598 U.S. at 51 ("a worker [who] is paid $1,000 each day, and usually works seven days a week," is paid "precisely with regard to [the] number of [days worked] not, "as § 602(a) requires, by ignoring that number and paying a predetermined amount.").

Because NES cannot meet § 602(a), its Retainer scheme could only qualify under § 604(b), which offers a way for hourly and day-rate pay to qualify as payment on a salary basis. "An employer may satisfy the salary-basis test in one of two ways under the regulations." *Pickens,* 133 F.4th at 580 (citing *Helix,* 598 U.S. at 46). "The first approach appears in § 602 … and applies to employees paid by the year, month, or week." *Id.* "The second approach appears in § 604(b) of the regulations" under the title "*Minimum guarantee plus extras.*" *Id.* at 581. Under the second, "an employee whose earnings are 'computed on an hourly, a daily, or a shift basis' nonetheless receives a 'salary' if he is guaranteed a certain amount per week that is 'roughly equivalent' to his 'usual earnings.'"

*Id.* (quoting 29 C.F.R. § 541.604(b)).

### C. NES didn't pay a § 602(a) "weekly-rate only" so it must either comply with § 604 or pay overtime.

NES paid a "minimum guarantee plus extras" (under 29 C.F.R. § 604) as opposed to a "straight weekly salary" or a "weekly-rate-only" (under 29 C.F.R. § 602(a)). Despite what NES implies, Plaintiffs don't argue, and *Gentry* does not hold, that "weekly-rate-only" means the employee gets a salary and nothing else. Doc. 68 at 27. What *Helix*, *Gentry*, and *Pickens* all confirm is that a "weekly salary" under § 602(a) means the "full salary for that week—what § 602(a)'s prior sentence calls the 'predetermined amount'"—is guaranteed (not merely a fraction of it). *Helix*, 598 U.S. at 50–51 (cleaned up); *Gentry*, 102 F.4th at 721 ("guaranteed weekly salary" of 8 hours' pay "failed to provide a weekly rate, it was not a true salary but was illusory."); *Pickens*, 133 F.4th at 583 ("Unlike a weekly rate, which compensates an employee for a week's work, no matter the number of hours worked, the rate Pickens received compensated him for either an hour's work or eight hours' work."). Accordingly, NES must meet the requirements of § 604 to qualify for exemption. *See Helix*, 598 U.S. at 55-57; *Pickens*, 133 F.4th at 583; *Gentry*, 102 F.4th at 721.

### i. NES paid daily or hourly for time worked within the normal workweek, so § 604(a) doesn't apply.

NES says § 604(a) authorizes it label as little as one days' pay (or five hours' pay) a salary and pay for every other day in the week based directly on the number of days (or hours) worked. There are several problems. "First, § 604(a) expressly contemplates

hourly compensation for work beyond the normal work week, while § 604(b) concerns hourly compensation within the employee's normal scheduled workweek." *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 300 (5th Cir. 2024) (quoting *Gentry*, 102 F.4th at 723). The plain text of § 604(a) states any "additional" time-based compensation must be "based on hours worked for work beyond the normal workweek." *See Pickens*, 133 F.4th at 584 (quoting 29 C.F.R. § 541.604(a)); *Gentry*, 102 F.4th at 722. It wasn't.

For example, NES's alleged "salary" for Alvarez covered just two days of work. ROA.4403-4404. But Alvarez's normal workweeks were *at least* 40 hours, and typically 5 or more days. ROA.6456, 6586:15-6587:2, 6707. So the so-called "additional compensation" NES paid Alvarez was not "additional" pay, it was just normal, week in and week out pay. It kicked in after Alvarez worked just two days of her normal five days, it **was not based** on work performed "beyond the normal workweek." *See* 29 C.F.R. §§ 541.602(a), 604(a). As the Fifth Circuit has repeatedly held, that means § 604(b) applies. *Gentry*, 102 F.4th at 723; *Venable*, 117 F.4th at 300 (accord).

### ii.    Section 604(b) requires a guarantee and a "reasonable relationship."

Unlike § 604(a), § 604(b) authorizes time-based payments for time worked during the normal workweek. 29 C.F.R. § 541.604(b). It also permits the employer to set the "guaranteed" portion of the pay at an amount *lower* than would otherwise be required under § 602(a). *Id.* (permitting the employer to guarantee just $500 even though the employee typically earned between $600 and $750 a week). However, to qualify as a *bona fide* "salary," the "guaranteed amount" must be "reasonably related" to compensation

"actually earned." 29 C.F.R. § 541.604(b); *Helix*, 598 U.S. at 47; *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 293-94 (5th Cir. 2021), *aff'd sub nom.*, 598 U.S. 39 (2023); *Gentry*, 102 F.4th at 724; *Pickens*, 133 F.4th at 591. That is, the "weekly salary guarantee" must be "roughly equivalent to the employee's usual earnings at the assigned hourly … rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b). A "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." DOL Opinion Letter FLSA 2018-25, 2018 WL 5921453, at *2 (citing 29 C.F.R. § 541.604(b) and noting 1.83 to 1 "far exceeds" the permissible ratio); *Gentry*, 102 F.4th at 724 (a ratio of 5.19 to 1 is "grossly disproportionate").

Without § 604(b), "employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employee for partial day absences)." Dep't of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004). "Such a pay system would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion." *Hewitt,* 15 F.4th at 294 (citing 69 Fed. Reg. 22184); *see also Helix*, 598 U.S. at 61 ("employers would assure [day-rate or shift-rate nurses] $455 per week in a heartbeat if doing so eliminated the need to pay overtime."); *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 185 (3d Cir. 1988) (an employee is not paid on a "salary basis" if "the employee's usual weekly income" calculated on an hourly basis "far exceeds the 'salary' guarantee" the employer provided). Requiring the salary

"guarantee" be reasonably related to the amount actually earned "create[s] a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Helix*, 598 U.S. at 47.

NES insists a "true salary" exists whenever the employee will earn at least the minimum salary level in any week worked. Doc. 68 at 12. But NES's reading renders § 604(b) superfluous. After all, the first requirement of § 604(b) is a "guarantee of at least the minimum weekly required amount paid on a salary basis[.]" 29 C.F.R. § 604(b). Thus, the second prong of § 604(b) "would be left with no work to perform, its terms dead letters all." *Pickens,* 133 F.4th at 582. And the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same [regulatory] scheme." *Id.* at 583 (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)).

So why does § 604(b) require the guaranteed pay be close enough to the "amount actually earned" to ensure the "compensation system [is] functioning … like a true salary[?]" *Helix*, 598 U.S. at 47. Because § 602(a) requires the employer to guarantee the "full salary for any week" in which the employee works. 29 C.F.R. § 541.602(a)(1). While § 604(b) allows the employer to guarantee something less, the guaranteed portion must still be reasonable under the circumstances. *Id.* at 541.604(b).

If "functioning … like a true salary" just meant guaranteeing an amount of pay exceeding the minimum salary level in any week the employee worked, *Helix* would have won at the Supreme Court. "Indeed, this argument echoes the Helix dissent."

*Gentry*, 102 F.4th at 721. As the dissent argued, the *Helix* plaintiff's "daily 'predetermined' rate ($963 per day) was higher than the weekly minimum requirement of $455 per week specified in the regulations. If a worker is guaranteed at least $455 for any day that he works, that worker by definition is guaranteed at least $455 for any week that he works." *Helix*, 598 U.S. at 64–65 (Kavanaugh, J., dissenting). But, of course, the majority "disagreed with this analysis[.]" *Alvarez v. NES Glob. LLC*, 709 F. Supp. 3d 284, 296 (S.D. Tex. 2023) (ROA.4410).

The *Helix* "majority rejected this argument as 'a non-sequitur to end all non-sequiturs,' characterized it as 'carting § 604(b) off the stage,' and pointed out … the salary level test … is distinct from the salary basis test." *Gentry*, 102 F.4th at 721, n. 42 (quoting *Helix*, 598 U.S. at 55, n.5). "Furthermore, as the [*Helix*] majority explained, this argument overlooks that § 602(a) requires payment be 'without regard' to the number of days worked." *Id.* "When an employee's take-home pay is determined by the number of days worked, payment is not 'without regard' to their daily rate." *Id.*

Here, NES's retainer plan covers as little as one day's pay, meaning the pay for a normal workweek is invariably determined by the number of days worked. Because that is not payment on a "weekly, or less frequent" basis, NES fails the salary basis test.

### 3. *Gentry* is in line with *Helix* as well as pre-*Helix* decisions from other circuits.

Like NES does here, the *Gentry* defendant argued the plaintiffs' interpretation was inconsistent with *Helix* and other (mostly pre-*Helix*) decisions from other Circuits.

21

The Fifth Circuit flatly disagreed. *Gentry*, 102 F.4th at 725 ("our holding is consistent with, the regulatory text, and decisions from our sister circuits upholding salaries that—unlike [NES's]—paid employees a weekly rate."). Analyzing the same arguments NES makes here, the *Gentry* panel found its "interpretation of sections 602(a), 604(a), and 604(b) is consistent with three pre-*Helix* decisions from the Second, Third, and Eighth Circuits." *Gentry,* 102 F.4th at 724.

"To start, both the Second and Eighth Circuits have upheld compensatory schemes wherein employees were assured an annual salary, whose weekly or biweekly pay was a portion of that salary based on the expected hours worked per week, and who received additional compensation for hours worked beyond the agreed-upon workweek." *Gentry*, 102 F.4th at 724 (citing *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 147 (2d Cir. 2013)); *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1044 (8th Cir. 2020).

To support its § 602 argument, NES says *Anani* is inconsistent with § 602(a)'s requirement that the salary be a weekly rate. Doc. 68 at 32. It isn't. In *Anani*, a pharmacist received a guaranteed weekly base salary, based on a 44-hour week that always exceeded $1,250. *Anani*, 730 F.3d at 147. This salary indisputably covered **all** the hours he was required to work. The court specifically noted the pharmacist "worked [any] extra shifts voluntarily" and this voluntary "extra work"—beyond his required schedule—was paid by the hour. *Id.* at 147. That is, CVS paid the pharmacist a salary covering all his required work hours and paid him extra for working hours he chose—but was not required—to work. If the pharmacist **elected** to work more than 44 hours

in a week, CVS paid him extra based on an hourly rate calculated by dividing his weekly salary by 44 hours. *Id.* Since any additional time worked was at the pharmacist's option, the additional "straight time" pay was for hours worked "beyond the normal workweek[.]" 29 C.F.R. § 541.604(a) ("the exemption is not lost if an exempt employee who is … paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek.") (emphasis added); *cf. Hewitt*, 15 F.4th at 303 (recognizing this option matters since "[m]illions of Americans prefer more free time over more money") (Ho, J., concurring). In other words, the "situation[] in which [*Anani* chose to] ignore § 541.604(b) [was a] situation[] in which the textual requirements of 29 C.F.R. §§ 541.601, 541.602(a) are already clearly met." *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189 (6th Cir. 2017).

*Coates* involved "employees [who] received [an] annual salary and [their] weekly pay was their annual salary divided by expected hours worked per year." *Gentry,* 102 F.4th at 724. So *Anani* and *Coates* "upheld compensation schemes that are markedly distinct from [NES's]" because NES "provided a guaranteed weekly rate equivalent to [as little as 1 day's or 5 hours' worth of pay] and "additional compensation" for work performed *during* the workweek." *Id.* "Furthermore, [the *Anani* and *Coates*] employees were paid a true weekly rate based upon their agreed-upon work schedule with their employer. As such, [those] practices are consistent with [*Gentry*]." *Id.*

The differences don't stop there. In *Coates*, there is no indication the plaintiffs contested the application of § 602(a). Indeed, the *Coates* plaintiffs argued the alleged

"salary" was subject to improper reductions, not that it was set too low vis-à-vis their actual earnings. *Coates*, 961 F.3d at 1045-46. Because both § 602(a) and § 604(b) prohibit the same deductions from the guaranteed pay, it made no difference to the analysis which regulation applied. *Coates*, 961 F.3d at 1048 (agreeing with *Hughes v. Gulf Interstate Field Servs. Inc.*, 878 F.3d 183, 191 (6th Cir. 2017)).

"In *Brock v. Claridge Hotel & Casino*, the Third Circuit considered and rejected a pay scheme analogous to [NES's]." *Gentry,* 102 F.4th at 724. "In *Brock*, all employees with supervisory capacity were guaranteed a weekly salary of $250 and were paid by the hour once they reached the $250 minimum, which was typically within a few hours of work." *Id.* (citing *Brock*, 846 F.2d at 182-83). At that time, the minimum required salary level was just $155 a week, with the "short test" kicking in at $250 a week. 29 C.F.R. § 541.1(f) (2003). But "earning a certain level of income is necessary, but insufficient on its own, to avoid the overtime protections of the FLSA. The employee must also be paid on a salary basis, [otherwise] … the employee is not exempt no matter how highly paid they might be." *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 291 (5th Cir. 2021) (en banc), aff'd, 598 U.S. 39 (2023). This was fatal to the *Brock* defendant's exemption (as it is to NES's here).

"Finding that the guaranteed salary bore 'no relation' to the supervisors' typical week and the 'additional' hourly compensation was dissimilar to the regulatory examples, the Third Circuit concluded the supervisors were not paid on a salary basis." *Gentry,* 102 F.4th at 724-25 (citing *Brock*, 846 F.2d at 185). "The Department of

Regulations has cited [*Brock*] several times when explaining the salary basis test." *Id.* at 725 (citing 69 Fed. Reg. 22122, 22177, 22183 (Apr. 23, 2004)).

Nor does the unpublished decision in *Hebert v. FMC Techs., Inc.* suggest *Gentry* is discrepant from prior cases. *Gentry,* 102 F.4th at 725 n.70 (citing *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023), *cert. denied*, 144 S. Ct. 820 (2024)). "*Hebert* is fully consistent with [this Court's decision in *Gentry*] as the [*Hebert*] record indicated that Hebert's biweekly salary was a function of this annual salary and roughly equated the hours worked during his normal workweek." *Id.* at 725 n.70. The *Hebert* plaintiff normally worked "in the office" but would "occasionally visit offshore sites to assist with the installation of FMC equipment." *Hebert*, 2023 WL 4105427, at *1. The "office" work differed materially from the "field" work. *Id.* And for the occasional days "he was required to be in the field to assist with installation projects[,]" the plaintiff received a "field service premium[.]" *Id.* at *2. In other words, Hebert's salary was like the *Anani* and *Coates* salaries, which compensated the employee for all hours worked during their normal workweek. And both *Hebert* and *Gentry* are "consistent with [the] conclusion that a salary must provide a weekly rate." *Gentry,* 102 F.4th at 725 n.70. "Hebert's premium payments constituted true, additional compensation under § 541.604(a) because they were in addition to this weekly rate." *Id.*

NES's one or two day "salary" and additional day-rate payments, however, was NES's attempt to "artificially divide pay into a 'salary' and additional compensation in order to avoid paying employees a true salary." *Id.* at 719 n.22 (citing 14 Fed. Reg. 7730

(Dec. 28, 1949)). That isn't allowed. *Id.* In fact, that's why the reasonable relationship test—§ 604(b)—exists. *Id.* (citing 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004)).

NES is also wrong about *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023). *See* Doc. 68, Appellant's Br., at 44. True, the *Gentry* panel found "*Schlumberger* overlooked the 'antecedent' question in *Helix*: whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate." *Gentry,* 102 F.4th at 725 (citing *Helix*, 598 U.S. at 50 n.3).[1] However, the factual differences preclude NES's from relying on *Wilson v. Schlumberger.* Indeed, even the "Tenth Circuit acknowledged [NES's pay plan] is factually dissimilar." *Id.* (citing *Schlumberger*, 80 F.4th at 1179 n.4). "In *Schlumberger*, the Tenth Circuit found that a measurement-while-drilling operator was paid on a salary basis when he was guaranteed a fixed, biweekly salary in addition to extra compensation for time spent on a drilling rig." *Id.* (citing *Schlumberger*, 80 F.4th at 1173). "The court held that the employee was paid on a salary basis because he received the "same salary every week" which was "not based upon his hours, days, or shifts of work." *Id.* (citing *Schlumberger*, 80 F.4th at 1177); *Pickens*, 133 F.4th at 585-86. The Tenth Circuit even said "[g]iven the stark contrast in fact patterns our respective courts are concerned with, we are hard-pressed to say that the logic of *Gentry* bears on this case."

---

[1] "*Litz* also relied on the same flawed rationale rejected in *Helix*. Moreover the weekly guaranteed salary seemingly bore no relationship to the hours actually worked; under *Helix*, such a scheme now requires analysis under § 604(b)." *Gentry*, 102 F.4th at 725 n.70.

*Schlumberger*, 80 F.4th at 1179 n.4.[2]

Thus, the Courts of Appeal agree that pay plans based on days or hours worked (like NES's and those in *Gentry*, *Pickens,* and *Helix*) are so dissimilar from Schlumberger's and the logic of *Wilson v. Schlumberger* doesn't transfer. *Schlumberger*, 80 F.4th at 1179 n.4; *Gentry,* 102 F.4th at 725; *Pickens*, 133 F.4th at 585-86. NES knows it loses under *Gentry*, *Pickens*, and *Helix*, so its only hope is to argue that it pays like *Wilson*, but that's simply not the case. NES must either satisfy § 604(b)'s reasonable relationship test or pay overtime. Because there's no dispute NES fails the reasonable relationship test, the District Court's ruling that Plaintiffs are non-exempt should be affirmed.

### 4. NES's other cases similarly do not undermine *Gentry* is wrong.

NES misrepresents the unpublished decision in *Greinstein* by suggesting the Fifth Circuit found the compensation structure complied with the salary-basis test. Doc. 68 at 30. *Greinstein* acknowledged that a certified question from the district court about the interaction between § 602(a) and § 604(a) was answered by *Gentry* while *Greinstein's* appeal was pending. *Greinstein v. Granite Servs. Int'l Inc.*, No. 23-10781, 2024 WL 3771455, at *2 (5th Cir. Aug. 13, 2024). Greinstein's pay, like the pay in *Schlumberger*, *Anani*, and *Coates* was different from NES's two-day "Retainer" pay. Greinstein was paid "$1,800 weekly for up to 40 hours of work and $45 per hour for time worked over 40 hours."

---

[2] The other Schlumberger case NES relies on involves the same plan as *Wilson's. Venable v. Schlumberger Ltd.*, No. 6:16-CV-00241, 2022 WL 895447, at *3 (W.D. La. Mar. 25, 2022), *aff'd sub nom. Venable v. Smith Int'l, Inc.*, 117 F.4th 295 (5th Cir. 2024).

*Id.*, at \*1. Not only did Greinstein's $1,800 arguably cover a standard 40-hour workweek, but his additional hourly compensation arguably complied § 604(a) as being for hours "beyond the normal workweek." *Id.*; 29 C.F.R. § 541.604(a). Perhaps even more to the point, however, the Fifth Circuit expressly declined to address whether Greinstein's pay met § 602(a) and acknowledged "[w]e express no opinion on Greinstein's alternative argument that he is not exempt under the FLSA under [§ 604(b).]" *Id.* at \*2.

NES also claims its Retainer pay is the same as that in in *Bell.* Doc. 68 at 32-33 (citing *Bell v. Callaway Partners, LLC*, 394 F. App'x 632 (11th Cir. 2010)). But again, the employer in *Bell* did what NES didn't: it set the salary at a level that covered the normal workweek. *See Bell v. Callaway Partners, LLC*, No. 1:06-CV-1993-CC, 2010 WL 6231196, at \*2-3 (N.D. Ga. Feb. 5, 2010) (employer paid a "guaranteed weekly salary" plus "a bonus for billable hours worked in excess of 40 hours"). Unlike here, "it was a rare occasion for most Plaintiffs to perform [extra] work[.]" *Id.* at \*12 (citing examples). Because the salary was set with reference to the actual, normal workweek, and the extra hours worked reflected true "overtime," the *Bell* court had no occasion to evaluate the impact of § 604(b) (especially since none of the *Bell* plaintiffs' challenges hinged on § 604(b)). *Id.* at \*6; *Bell*, 394 F. App'x at 634.[3]

In contrast, Plaintiffs normal workweek of 5-7 days per week, 10 hours per day

---

[3] The Supreme Court's *Helix* decision means we "must read sections 602(a), 604(a), and 604(b) in harmony." *Gentry*, 102 F.4th at 723 (citing *Helix*, 598 U.S. at 56). Thus, even if *Bell* meant what NES alleges it does, *Helix* overruled it.

on average, greatly exceeded the 1-2 days upon which their Retainer was based. ROA.1513-2046, 6442-6443, 6583, 6586:15-6587:2, 6641 at ¶ 4.

**5. The District Court erred in granting summary judgment on willfulness.**

NES willfully violated the FLSA if it "either 'knew or showed reckless disregard for ... whether its conduct was prohibited by the statute.'" *Ramos v. Al-Bataineh,* 599 F. App'x 548, 551 (5th Cir. 2015) (citing *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1324 (11th Cir. 2007) (the 3-year limitations period "may apply when it simply disregarded the possibility that it might be violating the FLSA.")). Indeed, an employee may show an employer willfully violated the FLSA by providing some evidence the employer "recklessly disregarded a potential violation." The FLSA's default 2-year limitations period is extended to 3 years if the violation is "willful." 29 U.S.C. § 255(a).

**A. Willful is a state-of-mind factual inquiry dependent on all the circumstances.**

"Reckless disregard" is when an employer acted despite "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 68 (2007) (cleaned up). "All the facts and circumstances surrounding the violation shall be taken into account[.]" 29 C.F.R. § 578.3(c). An employer's conduct shall be deemed to be in reckless disregard of the requirements of the FLSA "if the employer should have inquired further into whether its conduct was in compliance with the [FLSA] and failed to make adequate further inquiry." *Id.*

"Although consultation with an attorney may help prove that an employer lacked

willfulness, such a consultation is, by itself, insufficient to require a finding in favor of the employer." *Greene v. Tyler Techs., Inc.*, 526 F. Supp. 3d 1325, 1351 (N.D. Ga. 2021) (quoting *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011)); *see also, Dacar v. Saybolt, L.P.*, 914 F.3d 917, 927 (5th Cir. 2018), as amended on denial of reh'g and reh'g en banc (Feb. 1, 2019) (noting "reliance on advice of counsel" does not "necessarily preclude a willfulness determination"). This is particularly true if the violation turns not on the "attorney-approved design," but rather the client's own knowledge of the facts. *See Perry v. City of New York*, 78 F.4th 502, 523 (2d Cir. 2023). Evidence of a "deliberate scheme by Defendant to circumvent the requirements of the FLSA" is evidence of willfulness. *Semenovich v. Project Performance Co., Inc.*, No. 1:14CV1780 (JCC/MSN), 2016 WL 1076926, at *6 (E.D. Va. Mar. 18, 2016); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 469 F. Supp. 2d 1086, 1093 (M.D. Fla. 2006) (actions taken "for the purpose of evading the requirements of the FLSA" are evidence of willfulness); *see also Sealey v. EmCare, Inc.*, No. 2:11-CV-00120, 2013 WL 164040, at *3 (S.D. Tex. Jan. 14, 2013) ("if a jury were to find that Plaintiffs were entitled to overtime pay, they might also find that Defendants knew that Plaintiffs were entitled to the compensation but attempted to circumvent the regulations by classifying the Plaintiffs as independent contractors rather than employees").

Willfulness focuses on what NES knew, thought, and did, both when it initially decided to classify Plaintiffs as exempt from the overtime requirements, as well as what it knew, thought, and did, in continuing to classify Plaintiffs as exempt after learning

that the pay practice at issue was potentially illegal. *See Tran v. Thai*, C.A. H-08-3650, 2010 WL 5232944, at *6 (S.D. Tex. Dec. 16, 2010) (finding an employer must demonstrate "ongoing efforts" to comply with the law); *see also Corp. Investigative Div., Inc. v. Am. Tel. & Tel. Co.*, 884 F. Supp. 220, 224 (W.D. La. 1995) (whether conduct is willful "demands an evaluation of [the employer's] state of mind at the time the error was made").

Indeed, an employee may show an employer willfully violated the FLSA by providing some evidence the employer "recklessly disregarded a potential violation." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed.Appx. 349, 360 (5th Cir. 2015) (emphasis added). Thus, a defendant's awareness of the possibility that its workers could be misclassified can serve as a basis for a "willful" finding. *See McCumber v. Eye Care Center of America, Inc.*, No. Civ. A. 09-1000, 2011 WL 1542671, at *13 (M.D. La. Apr. 20, 2011); *see also Karr v. City of Beaumont*, 950 F.Supp. 1317, 1325 (E.D. Tex. 1997) (denying summary judgment to the employer because plaintiffs showed that defendants knew they were bound by the FLSA, but never investigated working through off-duty hours.)

## B. Because credibility cannot be weighed at the summary judgment stage, summary judgment is rarely appropriate with respect to a state of mind.

A summary judgment is reviewed *de novo*. *Molina v. Home Depot USA, Inc.*, 20 F.4th 166, 168 (5th Cir. 2021). This Court must "credit the nonmoving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Janvey v. Romero*, 817 F.3d 184, 187 (5th Cir. 2016); *see also Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (the court "must disregard all evidence favorable to the moving party that the jury is not required to believe"); *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1112 (5th Cir.), *cert. denied*, 142 S. Ct. 101 (2021) (same).

Credibility is the sole province of the jury, and this Court "cannot second guess" a jury's "decision to believe one witness' testimony over another's or to discount a witness' testimony." *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 402 (5th Cir. 2007) (quoting *Canal Barge Co. v. Torco Oil Co.,* 220 F.3d 370, 375 (5th Cir.2000). In fact, "the finder of fact is not necessarily obliged to accept a witness's testimony, even if some parts of it are not directly contradicted by other testimony in the record." *Id.* Thus, the question here is whether a jury *could* (not must) find NES's acted with reckless disregard for its obligations under the FLSA. Respectfully, the evidence shows a trial is required to resolve the issues of whether NES willfully violated the FLSA.

When resolution of the disputed factual issue turns on the credibility of the parties, or their subjective state of mind, summary judgment is not appropriate. *Elmwood Dry Dock & Repair v. Int'l Bldg. Sys.*, No. CIV. A. 92-3131, 1993 WL 432361, at *1 (E.D. La. Oct. 19, 1993) (citing *International Shortstop, Inc. v. Rally's Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991) ("the Fifth Circuit has routinely found summary judgment inappropriate in such situations")). Trial is necessary because "it is particularly difficult for the nonmoving party to challenge the 'self-serving testimony' of the moving party without the benefit of trial accessories, namely cross-examination." *International Shortstop*, 939 F.2d at 1265 (citing *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432 (6th Cir.1987)

(observing that "the likelihood of self-serving testimony and the necessity for the fact-finder's credibility determinations" make summary judgment inappropriate when state of mind is at issue)). Only through live cross-examination can the fact-finder observe the demeanor of a witness and assess his credibility. *Id.*

### C. A jury must decide if NES willfully violated the FLSA.

NES's manual system for "guaranteeing" the Retainer failed 95% of the time an Appellant worked less than the Retainer Period (and 100% of the time before this lawsuit was filed). ROA.6593 at ¶¶ 7-8; *see also* ROA.4418 ("The record shows that Defendant failed to pay Plaintiffs their full "guaranteed" Retainer on several occasions."). The District Court determined NES's near wholesale failure to keep its word was not sufficient, on its own, to support a finding of willfulness. ROA.4418. But evidence of NES's abysmal failure rate did not occur in a vacuum. NES's failures happened after (1) the DOL found NES liable for $2.1M in unpaid wages because it failed to pay guaranteed salaries; and (2) NES's lawyer advised it that NES must pay guaranteed salaries to qualify for exemption. ROA.6425, 1358 at 27:19-29:14. The District Court also credited NES's self-serving, speculative testimony that "the DOL's closing its audit and agreeing to the settlement terms was an informal approval that these proposed pay practices complied with the FLSA." ROA.4419.

The District Court erred because these kinds of credibility determination are not for summary judgment. Because "the jury is not required to believe" NES's failures were merely "mistakes," nor that a DOL settlement means it blessed NES's post-audit

pay plan, it was improper for the District Court to find this evidence dispositive. *See Janvey*, 817 F.3d at 187; *see also, Reeves*, 530 U.S. at 151 (the court "must disregard all evidence favorable to the moving party that the jury is not required to believe"); *Taylor-Travis*, 984 F.3d at 1112. Instead, the District Court was required to believe Plaintiffs' evidence and construe inferences in her favor, including: (1) the DOL told NES to guarantee salaries; (2) NES's lawyers told it to guarantee salaries; and (3) 95% of the time it ever came up, NES failed to guarantee salaries.

While NES eventually guaranteed the Retainer by hard-coding it into the payroll system, a jury can decide if NES's unreliable, manual pay system represents "an unjustifiably high risk of harm that is either known or so obvious that it should be known" its employees wouldn't receive their Retainer. *See Safeco,* 551 U.S. at 68 (cleaned up). Rather than pay the Retainer automatically, NES's system required a human being to notice if an employee is owed the Retainer and to do something about it. ROA.6551:18-6552:5. The 95% failure rate is not surprising given how impractical it would be to recognize a Retainer is owed and that paying it would eat into NES's profits. ROA.6439, 6576:25-6577:3, 6591:1-7. When all the facts and circumstances are considered together and inferences drawn in Plaintiffs' favor, a jury does not have to believe that NES's manual system was an attempt to guarantee the Retainer. Instead, the jury could conclude that NES either knowingly violated the FLSA or acted with reckless disregard for whether its manual "guarantee" was a guarantee at all.

The District Court also erred by finding—as a matter of law—that NES's

Retainer scheme was an effort to comply with, rather than evade, the FLSA's overtime requirements. ROA.4419. Reasonable minds can differ, which makes summary judgment inappropriate. In *Pickens*, for example, the employer purported to guarantee an 8-hour "salary" which, as discussed above, is not materially different from NES's Retainer (which could be as little as 4 hours). *See Pickens*, 133 F.4th at 583. Sixth Circuit Judge Kethledge recognized HR-IT's 8-hour "salary" scheme "appears—patently—to be a circumvention of the statutory overtime rule." *See* Oral Argument at 26:10-18, *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (No. 24-5407) (6th Cir. 2025, available <u>here</u>).[4] A reasonable jury could agree NES designed its Retainer scheme to evade the FLSA's requirements, not comply with them.

## 6. Summary judgment on NES's good faith defense was improper.

A court must award a prevailing FLSA plaintiff liquidated damages in an amount equal to actual damages unless the employer is able to demonstrate a good-faith basis for believing its complied with the FLSA. *See* 29 U.S.C. § 216(b); *Mohammadi v. Nwabuisi*, 990 F. Supp. 2d 723, 749 (W.D. Tex. 2014), *aff'd in part, rev'd in part and remanded*, 605 F. App'x 329 (5th Cir. 2015). "A district court may, 'in its sound discretion,' refuse to award liquidated damages if the employer demonstrates good faith and reasonable grounds for believing it was not in violation." *Dacar*, 914 F.3d at 931 (citing 29 U.S.C. § 260). An employer "faces a 'substantial burden' of demonstrating good faith and a reasonable

---

[4]    Full    url:    opn.ca6.uscourts.gov/internet/court_audio/audio/02-05-2025    -Wednesday/24-5407 Lynwood Pickens v Hamilton-Ryker IT Solutions.mp3.

belief that its actions did not violate the FLSA." *Meesook v. Grey Canyon Fam. Med., P.A.*, No. SA-13-CV-72928 XR, 2014 WL 4072078, at *1 (W.D. Tex. Aug. 15, 2014) (citing *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir.2003)); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir.1998); *see also Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 (5th Cir.1990) (employer faces a heavy burden to show good faith). An employer that willfully violates the FLSA cannot be said to have acted in good faith, thus the lower court must award liquidated damages if the employer commits a willful FLSA violation. *Singer*, 324 F.3d at 823.

The District Court granted NES's summary judgment that it was in good faith because "the same facts that precluded a finding of willfulness also preclude a finding that [NES] did not act in good faith[.]". ROA.4421. As shown above however, the District Court erred when it determined NES is entitled to summary judgment on willfulness. Since a jury can find NES willfully violated the FLSA, and if it does, liquidated damages will be mandatory, summary judgment on liquidated damages should be reversed. *See Singer*, 324 F.3d at 823.

### 7. Conclusion

The Court should affirm summary judgment for Plaintiffs that they were nonexempt because NES failed to pay them on a salary basis. The Court should reverse summary judgment for NES because a jury could conclude that NES willfully violated the FLSA and therefore, lacked good faith.

Dated: July 14, 2025.                    Respectfully submitted,

                                         **BRUCKNER BURCH PLLC**

                                         By: <u>/s/ David I. Moulton</u>
                                             Richard J. (Rex) Burch
                                             Texas Bar No. 24001807
                                             David I. Moulton
                                             Texas Bar No. 24051093
                                         11 Greenway Plaza, Suite 3025
                                         Houston, Texas 77046
                                         Tel: (713) 877-8788
                                         Fax: (713) 877-8065
                                         <u>rburch@brucknerburch.com</u>
                                         <u>dmoulton@brucknerburch.com</u>
                                         *Attorneys for Plaintiffs-Appellees-Cross-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

     1.    This document complies with the type-volume limit of Fed. R. App. P. 32(g) and 28.1(e)(2)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 32.2:

- ■ this document contains 15,048 words, or

- ☐ this brief uses a monospaced typeface and contains _____ lines of text.

     2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

- ■ this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Garamond font, or

- ☐ this document has been prepared in a monospaced typeface using _____ with _____.

Dated: July 14, 2025          **/s/David I. Moulton**

                                        David I. Moulton

**ADDENDUM**

No. 24-20480

---

# United States Court of Appeals for the Fifth Circuit

---

LOYDA ALVAREZ; LEDYS DUNN, Independent Executor of the Estate of Sammie D. Dunn; ALBERT RODRIGUEZ; AN NG; ANDREW JAMIESON, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

NES GLOBAL, L.L.C.,

*Defendant-Appellant/Cross-Appellee.*

---

Appeal From Cause No. 4:20-CV-01933
In the Southern District of Texas
(Honorable Keith P. Ellison, presiding)

---

**PERTINENT REGULATORY PROVISIONS**

---

The regulations set forth below changed over the period relevant to this appeal as indicated.

| Regulation | Page |
|---|---|
| 29 C.F.R. § 541.602 (ending 12/31/2019) | |
| 29 C.F.R. § 541.602 (starting 1/1/2020) | |
| 29 C.F.R. § 541.604 (ending 12/31/2019) | |
| 29 C.F.R. § 541.602 (starting 1/1/2020) | |

1.  **29 CFR § 541.602 (ending 12/31/2019)**

## § 541.602 Salary basis.

(a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

(b) Exceptions. The prohibition against deductions from pay in the salary basis requirement is subject to the following exceptions:

(1) Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. Thus, if an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

(2) Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability (including work-related accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned

by such sickness or disability. The employer is not required to pay any portion of the employee's salary for full-day absences for which the employee receives compensation under the plan, policy or practice. Deductions for such full-day absences also may be made before the employee has qualified under the plan, policy or practice, and after the employee has exhausted the leave allowance thereunder. Thus, for example, if an employer maintains a short-term disability insurance plan providing salary replacement for 12 weeks starting on the fourth day of absence, the employer may make deductions from pay for the three days of absence before the employee qualifies for benefits under the plan; for the twelve weeks in which the employee receives salary replacement benefits under the plan; and for absences after the employee has exhausted the 12 weeks of salary replacement benefits. Similarly, an employer may make deductions from pay for absences of one or more full days if salary replacement benefits are provided under a State disability insurance law or under a State workers' compensation law.

(3) While an employer cannot make deductions from pay for absences of an exempt employee occasioned by jury duty, attendance as a witness or temporary military leave, the employer can offset any amounts received by an employee as jury fees, witness fees or military pay for a particular week against the salary due for that particular week without loss of the exemption.

(4) Deductions from pay of exempt employees may be made for penalties imposed in good faith for infractions of safety rules of major significance. Safety rules of major significance include those relating to the prevention of serious danger in the workplace or to other employees, such as rules prohibiting smoking in explosive plants, oil refineries and coal mines.

(5) Deductions from pay of exempt employees may be made for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules. Such suspensions must be imposed pursuant to a written policy applicable to all employees. Thus, for example, an employer may suspend an exempt employee without pay for three days for violating a generally applicable written policy prohibiting sexual harassment. Similarly, an employer may suspend an

exempt employee without pay for twelve days for violating a generally applicable written policy prohibiting workplace violence.

(6) An employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment. In such weeks, the payment of an hourly or daily equivalent of the employee's full salary for the time actually worked will meet the requirement. However, employees are not paid on a salary basis within the meaning of these regulations if they are employed occasionally for a few days, and the employer pays them a proportionate part of the weekly salary when so employed.

(7) An employer is not required to pay the full salary for weeks in which an exempt employee takes unpaid leave under the Family and Medical Leave Act. Rather, when an exempt employee takes unpaid leave under the Family and Medical Leave Act, an employer may pay a proportionate part of the full salary for time actually worked. For example, if an employee who normally works 40 hours per week uses four hours of unpaid leave under the Family and Medical Leave Act, the employer could deduct 10 percent of the employee's normal salary that week.

(c) When calculating the amount of a deduction from pay allowed under paragraph (b) of this section, the employer may use the hourly or daily equivalent of the employee's full weekly salary or any other amount proportional to the time actually missed by the employee. A deduction from pay as a penalty for violations of major safety rules under paragraph (b)(4) of this section may be made in any amount.

Copied from:

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 FR 22122-01, 2004 WL 865626 (April 23, 2004).

**2. 29 C.F.R. § 541.602 (starting 1/1/2020)**

## § 541.602 Salary basis.

(a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

(1) Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

(2) An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

(3) Up to ten percent of the salary amount required by § 541.600(a) may be satisfied by the payment of nondiscretionary bonuses, incentives and commissions, that are paid annually or more frequently. The employer may utilize any 52–week period as the year, such as a calendar year, a fiscal year, or an anniversary of hire year. If the employer does not identify some other year period in advance, the calendar year will apply. This provision does not apply to highly compensated employees under § 541.601.

(i) If by the last pay period of the 52–week period the sum of the employee's weekly salary plus nondiscretionary bonus, incentive, and commission payments received is less than 52 times the weekly salary amount required by § 541.600(a), the employer may make one final payment sufficient to achieve the required level no later than the next pay period after the end of the year. Any such final payment made after the end of the 52–week period may count only toward the prior year's salary amount and not toward the salary amount in the year it was paid.

(ii) An employee who does not work a full 52–week period for the employer, either because the employee is newly hired after the beginning of this period or ends the employment before the end of this period, may qualify for exemption if the employee receives a pro rata portion of the minimum amount established in paragraph (a)(3) of this section, based upon the number of weeks that the employee will be or has been employed. An employer may make one final payment as under paragraph (a)(3)(i) of this section within one pay period after the end of employment.

(b) Exceptions. The prohibition against deductions from pay in the salary basis requirement is subject to the following exceptions:

(1) Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. Thus, if an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

(2) Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability (including work-related accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability. The employer is not required to pay any portion of the employee's salary for full-day absences for which the employee receives compensation under the plan, policy or practice. Deductions for such full-day absences also may be made before the employee has qualified under the plan, policy or practice, and after the employee has exhausted the leave allowance thereunder. Thus, for example, if an employer maintains a short-term disability insurance plan providing salary replacement for 12 weeks starting on the fourth day of absence, the employer may make deductions from pay for the three days of absence before the employee qualifies for benefits under the plan; for the twelve weeks in which the employee receives salary replacement benefits under the plan; and for absences after the employee has exhausted the 12 weeks of salary replacement benefits. Similarly, an employer may make deductions from pay for absences of one or more full days if salary replacement benefits are provided under a State disability insurance law or under a State workers' compensation law.

(3) While an employer cannot make deductions from pay for absences of an exempt employee occasioned by jury duty, attendance as a witness or temporary military leave, the employer can offset any amounts received by an employee as jury fees, witness fees or military pay for a particular week against the salary due for that particular week without loss of the exemption.

(4) Deductions from pay of exempt employees may be made for penalties imposed in good faith for infractions of safety rules of major significance. Safety rules of major significance include those relating to the prevention of serious danger in the workplace or to other employees, such as rules prohibiting smoking in explosive plants, oil refineries and coal mines.

(5) Deductions from pay of exempt employees may be made for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules. Such suspensions must be imposed pursuant to a written policy applicable to all employees. Thus, for example, an employer may suspend an exempt employee without pay for three days for violating a generally applicable written policy prohibiting sexual harassment. Similarly, an employer may suspend an exempt employee without pay for twelve days for violating a generally applicable written policy prohibiting workplace violence.

(6) An employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment. In such weeks, the payment of an hourly or daily equivalent of the employee's full salary for the time actually worked will meet the requirement. However, employees are not paid on a salary basis within the meaning of these regulations if they are employed occasionally for a few days, and the employer pays them a proportionate part of the weekly salary when so employed.

(7) An employer is not required to pay the full salary for weeks in which an exempt employee takes unpaid leave under the Family and Medical Leave Act. Rather, when an exempt employee takes unpaid leave under the Family and Medical Leave Act, an employer may pay a proportionate part of the full salary for time actually worked. For example, if an employee who normally works 40 hours per week uses four hours of unpaid leave under the Family and Medical Leave Act, the employer could deduct 10 percent of the employee's normal salary that week.

(c) When calculating the amount of a deduction from pay allowed under paragraph (b) of this section, the employer may use the hourly or daily equivalent of the employee's full weekly salary or any other amount proportional to the time actually missed by the employee. A deduction from pay as a penalty for violations of major safety rules under paragraph (b)(4) of this section may be made in any amount.

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 84 FR 51230-01

### 3. 29 CFR § 541.604 (ending 12/31/2019)

§ 541.604 Minimum guarantee plus extras.

(a) An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

(b) An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, an exempt employee guaranteed compensation of at least $500 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $150 per shift without violating the salary basis requirement. The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. It does not apply, for example, to an exempt store manager paid a guaranteed salary of $650 per week who also receives a commission of one-half percent of

all sales in the store or five percent of the store's profits, which in some weeks may total as much as, or even more than, the guaranteed salary. *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 FR 22122-01, 2004 WL 865626 (April 23, 2004).

### 4. 29 CFR § 541.604 (starting 1/1/2020)

§ 541.604 Minimum guarantee plus extras.

(a) An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $684 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $684 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

(b) An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, an exempt employee guaranteed compensation of at least $725 for any week in which the

employee performs any work, and who normally works four or five shifts each week, may be paid $210 per shift without violating the $684-per-week salary basis requirement. The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. It does not apply, for example, to an exempt store manager paid a guaranteed salary per week that exceeds the current salary level who also receives a commission of one-half percent of all sales in the store or five percent of the store's profits, which in some weeks may total as much *51308 as, or even more than, the guaranteed salary.

Copied from:

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 84 FR 51230-01, 2019 WL 4690536 (Sept. 27, 2019).