No. 24-20480

# 𝔘nited 𝔖tates 𝔠ourt of 𝔄ppeals for the 𝔉ifth 𝔠ircuit

LOYDA ALVAREZ; LEDYS DUNN, Independent Executor of the Estate of Sammie D. Dunn; ALBERT RODRIGUEZ; AN NG; ANDREW JAMIESON, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

NES GLOBAL, L.L.C.,

*Defendant-Appellant/Cross-Appellee.*

Appeal From Cause No. 4:20-CV-01933
In the Southern District of Texas
(Honorable Keith P. Ellison, presiding)

## REPLY BRIEF OF APPELLEES/CROSS-APPELLANTS

Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com
*Attorneys for Plaintiffs-Appellees-Cross-Appellants*

# TABLE OF CONTENTS

1. Summary. ..........................................................................................................1

2. NES's "Retainer" does not satisfy the salary-basis test. ...............................3

   A. NES's "Retainer" is not paid on a "weekly basis." ...................................3

   B. It is error to ignore § 604(b) as NES suggests. .......................................9

   C. *Gentry* is not out of line. ........................................................................10

3. Fact issues prevent summary judgment on willfulness and good faith. ................14

4. Conclusion .....................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Anani v. CVS RX Servs., Inc.*,
   730 F.3d 146 (2d Cir. 2013) .................................................................6

*Bell v. Callaway Partners, LLC*,
   No. 1:06-CV-1993-CC, 2010 WL 6231196 (N.D. Ga. Feb. 5, 2010) ..........6

*Blake v. Broadway Servs., Inc.*,
   No. CV SAG-18-0086, 2020 WL 1675954 (D. Md. Apr. 6, 2020) ....... 11, 12

*Brock v. Claridge Hotel & Casino*,
   846 F.2d 180 (3d Cir. 1988) ........................................................passim

*Campbell v. AG Elec. Co., Inc.*,
   No. 19-80456-CIV, 2019 WL 7344824 (S.D. Fla. Oct. 17, 2019) ............17

*Coates v. Dassault Falcon Jet Corp.*,
   961 F.3d 1039 (8th Cir. 2020) ...............................................................6

*Cowart v. Ingalls Shipbuilding, Inc.*,
   213 F.3d 261 (5th Cir. 2000) ...............................................................12

*Douglas v. Argo-Tech Corp.*,
   113 F.3d 67 (6th Cir. 1997) .................................................................11

*Flowers v. Wal-Mart Inc.*,
   79 F.4th 449 (5th Cir. 2023) ...............................................................14

*Fontenot v. McCall's Boat Rentals, Inc.*,
   227 F. App'x 397 (5th Cir. 2007) ................................................... 15, 19

*Friedman v. S. Fla. Psychiatric Assocs., Inc.*,
   139 F. App'x 183 (11th Cir. 2005) ........................................................17

*Gagnon v. United Technisource, Inc.*,
   607 F.3d 1036 (5th Cir. 2010) ...............................................................6

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
   102 F.4th 712 (5th Cir. 2024) ......................................................passim

*Greinstein v. Granite Servs. Int'l Inc.*,
   No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024) ............2, 10, 11

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
   598 U.S. 39 (2023) .......................................................................passim

*Hewitt v. HelixEnergy Sols. Grp., Inc.*,
   15 F.4th 289 (5th Cir. 2021) .......................................................... 5, 14

*Hogan v. Allstate Ins. Co.*,
   361 F.3d 621 (11th Cir. 2004) .............................................................11

*International Shortstop, Inc. v. Rally's Inc.*,
   939 F.2d 1257 (5th Cir. 1991) ....................................................... 15, 19

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
   133 F.4th 575 (6th Cir. 2025) .......................................................................passim
*Ramos v. Al-Bataineh,*
   599 F. App'x 548 (5th Cir. 2015) .................................................................17
*Venable v. Smith Int'l, Inc.,*
   117 F.4th 295 (5th Cir. 2024) .................................................................. 7, 8
*Wilson v. Schlumberger Tech. Corp.,*
   80 F.4th 1170 (10th Cir. 2023) ........................................................................7

## Regulations

29 C.F.R. § 541.118(b) ...............................................................................13
29 C.F.R. § 541.602(a) ...............................................................1, 2, 4, 7
29 C.F.R. § 541.604(b) ...............................................................2, 7, 8
69 Fed. Reg. 22122 (Apr. 23, 2004) ...........................................................14

1.      **Summary.**

Both the Supreme Court and *en banc* Fifth Circuit precedent establish that an employee guaranteed a single day's worth of pay is not paid on a salary basis, regardless of how highly paid he may be. NES's "Retainer" plan authorizes **the same** pay plan. NES "guarantees" as little as 1 day's pay and makes the pay for every other day in the workweek contingent on the employee actually working. That pay plan is by definition *more* frequent than weekly, not a "weekly, or less frequent basis[.]" 29 C.F.R. § 541.602(a). And it makes no difference if NES's "Retainer" is based on 2 (or, rarely, 3) days, since 2 days is *also* shorter than a week (certainly for any of the Plaintiffs). But despite employing a pay plan this Court (*en banc*) found to be illegal more than 4 years ago, NES still insists its pay plan is legal.

Not only that, NES says a jury could not possibly find it recklessly disregarded its obligations under the FLSA. But NES *knew* the FLSA required it to guarantee payment of its "Retainer." Doc. 72 at 42. Even if the "terms of [NES's alleged] minimum weekly guarantee do not themselves require a finding that [NES] willfully violated the provisions of the FLSA[,] the "violation would be willful … if that guarantee was never in effect." *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 188–89 (3d Cir. 1988) (reversing and remanding for consideration of willfulness and good faith).

Nonetheless, NES **never once** made good on its alleged "guarantee" until after it got sued. ROA.6167 at ¶¶ 8-9. In other words, NES knew it was legally obligated to

do something, promised to do it, even claimed to monitor the circumstances that would require it to do something, but then **never** actually did it (despite multiple opportunities). *Id.* On this record, a jury could find NES recklessly disregarded its obligations under the FLSA. *Brock*, 846 F.2d at 189.

NES says its pay plan passes the "salary basis" test under 29 C.F.R. § 541.602(a) because its "Retainer" of as little as 4 hours' pay is "predetermined" and exceeds the salary level test and nothing else matters. Doc. 77 at 10. Thus, NES asserts § 541.604 is irrelevant because NES alleges part of Alvarez's pay was paid on a salary basis. *Id.* at 9–10, 15. But all three regulatory provisions—§§ 602(a), 604(a) and 604(b)—require that at least part of the employee's pay be "paid on a salary basis." 29 C.F.R. § 541.602(a); § 541.604(a); & § 541.604(b). Because all three provisions share this common trait, it cannot be used to distinguish them.

That's why "we cannot simply 'cart § 604(b) off the stage' but must read sections 602(a), 604(a), and 604(b) in harmony." *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 723 (5th Cir. 2024) (quoting *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 56 (2023)). Indeed, "§ 604(a) 'supplements' and 'builds upon' § 602(a)." *Greinstein v. Granite Servs. Int'l Inc.*, No. 23-10781, 2024 WL 3771455, at *2 (5th Cir. Aug. 13, 2024) (citing *Gentry*, 102 F.4th at 719, 722). When the regulations are read together, applying the ordinary definition of "weekly salary," it is clear a guarantee of 1-2 days' pay does not meet the salary-basis test. Accordingly, summary judgment on salary-basis should be affirmed.

**2.      NES's "Retainer" does not satisfy the salary-basis test.**

NES's response gets off on the wrong foot by insisting § 602(a)'s only requirements are a "predetermined amount me[eting] the salary-level test" that is "regularly received … each pay period on a weekly or less frequent basis." Doc. 77 at 2, 11-12. We know that's wrong. The "Supreme Court dismissed [NES's] argument that § 602(a) requires only that employees receive a preset and non-reducible sum [equal to or exceeding the minimum required salary level] each weekly pay period." *Gentry*, 102 F.4th at 720 n.33 (citing *Helix*, 598 U.S. at 52–53). And it is easy to see why.

**A. NES's "Retainer" is not paid on a "weekly basis."**

The Supreme Court, this Court, and the Sixth Circuit have all explained: "employees are paid on a 'weekly basis' only when their 'predetermined sum' is *calculated*, not merely provided, by the week." *Gentry*, 102 F.4th at 720 (quoting *Helix*, 598 U.S. at 52-53); *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 581 (6th Cir. 2025) ("It is not enough for an employee to be guaranteed *some* fixed amount weekly, which merely makes up a small subset of his pay. He must be paid a weekly *rate*, rather than a daily or hourly one.") (cleaned up). That's because the "'basis' of payment … refers to the unit or **method for calculating pay**, not the frequency of its distribution." *Helix*, 598 U.S. at 53. "Most simply put, an employee paid on an hourly basis is paid by the hour, an employee paid on a daily basis is paid by the day, and an employee paid on a weekly basis is paid by the week—irrespective of when or how often his employer actually doles out the money." *Id.*

3

NES is simply wrong when it says "it is immaterial how NES chose to set the 'predetermined amount' portion of the employees' compensation" because "[n]othing in the regulations" requires a salary be based on what an employee earns for a week. Doc. 77 at 2, 15. Section 602(a) specifically requires the salary have a "weekly, or less frequent basis[.]" 29 C.F.R. § 541.602(a). It "cannot be a day, or other more frequent measure," such as the 1 or 2 days NES expressly used. *Helix*, 598 U.S. at 52; ROA.6443, (2017 Retainer Chart); 6583 (2019 Retainer Chart).

A "weekly salary" pays the employee for a week's worth of work. *Helix*, 598 U.S. at 53; *Gentry*, 102 F.4th at 720 ("a weekly rate compensates employees for all work performed that week"). Despite what NES claims, this definition of "weekly basis" is not causing the sky to fall. Since 1938, when the Department of Labor first set up the salary basis test, the ordinary meaning of "salary" has been a fixed, periodic payment to a person for "his regular work" over a week, a month, or a year. *Pickens*, 133 F.4th at 582. "That same meaning prevails today." *Id.* As the Supreme Court explained, "the salary-basis test, in largely the form it exists today, goes back to nearly the FLSA's beginnings." *Helix*, 598 U.S. at 60. That's why a predetermined guarantee based on: 1-days' pay (*Helix*); 8 hours' pay (*Gentry* and *Pickens*); or 1 to 2 days' pay (NES's "Retainer") is not payment on a "weekly basis" even if it also exceeds the minimum salary level. ROA.6443, 6583.

That NES still insists its "Retainer" of 1-day's pay is a "salary" and not a day rate smacks of bad faith. Hewitt's day-rate was $963. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15

F.4th 289, 292 (5th Cir. 2021). At NES, Hewitt's "Retainer" would have been 1-days' pay. ROA.6443 (2017 Retainer Chart showing a "1 day retainer" for a "Day Rate" of "$950+"); ROA.6583 (2019 Retainer Chart showing "1 day retainer" for a "Day Rate" of "$700+"). So under Helix's pay plan or NES's, Hewitt's pay would have been calculated exactly the same: No. of Days Worked x Day Rate. The only "difference" between NES's 1-day "guaranteed Retainer" and Helix's day-rate guarantee is that NES calls it a "Retainer." But the character of NES's guarantee is not determined by "an arbitrary label—it is an actual fact[,]" that it is a day rate exactly like Helix's. *See, e.g., Gagnon v. United Technisource, Inc.,* 607 F.3d 1036, 1041 (5th Cir. 2010) (the arbitrary labels used in a wage contract do not control under the FLSA). "The economic reality of [NES's] compensation scheme is precisely the same as the scheme at issue in *Helix,* a system in which each employee's pay packet turns solely on the number of days he works each week." *Pickens,* 133 F.4th at 585.

Determined to dig in its heels despite *Helix,* NES says *Gentry* is wrong because some pre-*Helix* decisions (*Anani, Bell,* and *Coates*) did not evaluate whether the salaries at issue covered the employees' normal workweek. Doc. 77 at 19-20. But those courts didn't have to consider the ordinary, dictionary meaning of "salary," because those employers weren't trying to pass off 1 day's pay (or even less) as a "weekly salary."[1] In each case, the salary covered at least a 40-hour workweek. *See Anani v. CVS RX Servs.,*

---

[1] NES authorized Retainers based on just 4 hours' pay. *See* ROA.6583.

*Inc.*, 730 F.3d 146, 147 (2d Cir. 2013) (salary covered normal 44-hour week, any additional work was voluntary);[2] *Bell v. Callaway Partners, LLC*, No. 1:06-CV-1993-CC, 2010 WL 6231196, at *2-3, *11-12 (N.D. Ga. Feb. 5, 2010) ("normal workweek" of 40 hours covered by the salary, and any additional hourly pay was available only *after* the normal workweek and "it was a rare occasion for most Plaintiffs to perform [extra] work"); *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1045-46 (8th Cir. 2020) (weekly pay equal to yearly salary divided by expected hours worked per year 2080, or 40 hours a week, and plaintiffs never contested application of § 602(a)).

Because of factual differences to NES's "Retainer," those courts, along with *Wilson v. Schlumberger*, and *Venable v. Smith Int'l*, didn't have reason to consider the "antecedent question in *Helix*: whether the salary, regardless of the frequency which it was distributed, provided a true weekly rate." *Gentry*, 102 F.4th at 725 (discussing *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023) (citing *Helix*, 598 U.S. at 50 n.3); *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 298 (5th Cir. 2024) (oil-field reamers' "annual salary was paid bi-weekly … and could receive job bonuses" for services performed on customer's drilling rigs).

Though it cites *Venable*, NES never addresses the core distinction it recognizes. NES never addresses why § 604(b) "requires a reasonable relationship between the

---

[2] *Anani* also concluded (erroneously) § 604(b) was irrelevant because the plaintiff was a "highly compensated employee." *Anani*, 730 F.3d at 149–150. Both this Court (en banc) and, later, the Supreme Court, rejected that conclusion. *Helix*, 598 U.S. at 58.

guaranteed amount and the employee's usual weekly earnings" while § 604(a) "contains no such requirement." *Venable*, 117 F.4th at 300. It cannot be to ensure the employee receives at least the minimum amount required by the salary **level** test, because both § 602(a) and § 604(b) require the employee receive at least the minimum salary level "paid on a salary basis." 29 C.F.R. § 541.602(a) & § 541.604(b). Instead, it is to ensure the guaranteed portion is "functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Helix*, 598 U.S. at 47.

And a "weekly salary" under § 602(a) pays the employee for a week's worth of work. *Gentry*, 102 F.4th at 720 ("a weekly rate compensates employees for all work performed that week"). If the hourly pay is only for hours beyond the normal workweek, the person's salary covers the full workweek. *Id.* at 719; *Venable*, 117 F.4th at 300. That person is protected from partial day deductions, a reduction of their normal, weekly pay if they miss work for jury duty, etc. *Pickens*, 133 F.4th at 582. "The 'weekly basis' phrase thus works hand in hand with the rest of § 602(a)." *Helix*, 598 U.S. at 54.

But if their normal weekly pay depends in the number of days worked, then they are not paid a "true salary" under 602(a). *Pickens*, 133 F.4th at 582; *Helix*, 598 U.S. at 51. That's only permissible under § 604(b), which requires the guarantee be "close enough" to what the person actually earns in a normal workweek to ensure it functions

like a "true salary." *Helix*, 598 U.S. at 47; 29 C.F.R. § 541.604(b). But, again, NES concedes it cannot meet the requirements of § 604(b).

NES can only calculate Alvarez's weekly pay "by counting [how many days she labored] once the week is over—not, as § 602(a) requires, by ignoring that number and paying a predetermined amount." *Helix*, 598 U.S. at 51. NES **never** paid the alleged "weekly Retainer" when Plaintiffs worked less than the 1 or 2 days covered by their Retainers until after it got sued. *See* Doc. 72 at 15 (Retainer Pay Failure chart). In fact, NES did *less* than the employer in *Helix*—as NES paid partial days to Plaintiffs on a 1-day Retainer when they worked less than a full day. *Id.* NES paid Plaintiffs only half the Retainer because they worked half-days. *Id.* That makes NES's Retainer even less like a salary than Helix's day-rate—because NES's version doesn't even guarantee a single day's pay (much less a week's).

Because NES insists the basis of calculation for its "Retainer" is "completely irrelevant," it claims as little as 1 day's pay represents a weekly salary. Doc. 77 at 11; ROA.6443, 6583. That is precisely the argument rejected in *Helix. Helix*, 598 U.S. at 54, n. 5 (plaintiff did not get a salary "because his weekly take-home pay could be as little as $963 or as much as $13,482, depending on how many days he worked"). Instead, the Supreme Court explained that a "weekly basis" reflects what the employee earns for a week, just as an hourly basis reflects what an employee earns for an hour. *Id.* at 52-53; *Gentry*, 102 F.4th at 721 ("The 'unit or method for calculating pay' was by the hour, meaning that Plaintiffs' 'salary' was paid on an hourly basis and not by the week as

§ 602(a) requires."); *Pickens*, 133 F.4th at 581 ("To be paid on a weekly basis … an employee must paid for a regular week's worth of work."). The result is the same for a Retainer of 2 (or, for 1 Plaintiff, 3) days. ROA.6443 (2017 Retainer Chart). Therefore, "§ 602(a) does not govern this appeal because [NES] did not compensate [Alvarez] on a 'weekly basis.'" *Gentry*, 102 F.4th at 722.

**B. It is error to ignore § 604(b) as NES suggests.**

While NES insists its "Retainer" be analyzed under § 602(a) with a blind eye to § 604(b), it is error to do so, even though they "offer non-overlapping paths to satisfy the salary-basis requirement," because "§ 604(b) tak[es] over where § 602(a) leaves off[.]" *Helix*, 598 U.S. at 56. The regulations "must be read to complement each other" because "§ 602(a) … works in tandem with § 604(b)[.]" *Id.* at 55, 57.

Again, NES attempts to distinguish between these independent, "non-overlapping paths" by pointing to a characteristic that is common to both (a guarantee of at least the minimum salary level "paid on a salary basis"). Doc. 77 at 2, 11-12. The question is whether NES is entitled to a reading of § 602(a) that "cart[s] § 604(b) off the stage[.]" *Helix*, 598 U.S. at 56; *Gentry*, 102 F.4th at 723. That is, can NES obtain the benefit of § 604(b)'s lower "guarantee" requirement (a predetermined payment that covers less than a week's worth of work) without the burden (ensuring the guarantee is reasonably related to the employee's actual earnings). The answer from the Supreme Court and this Court is "No." *Helix*, 598 U.S. at 56; *Gentry*, 102 F.4th at 723

### C. *Gentry* is not out of line.

Most of NES's briefing is an attempt to cast *Gentry* as inconsistent with other cases. Under our "rule of orderliness," no panel can overrule its holding absent circumstances which are not present here. As the opinions themselves recognize, *Gentry* is the first published decision on the issue and, thus, it is circuit precedent. Undeterred, NES pretends its preferred decisions are factually identical and irreconcilable.

NES admitted misstating the holding of *Greinstein* in its opening brief. *See* Doc. 77 at 26, n. 13. But that didn't stop NES from misusing *Greinstein* again. This time, to claim *Greinstein* is at odds with *Gentry*, NES cuts a quote short **mid-sentence**. Doc. 77 at 26. The part NES carts off stage is "§ 604(a) 'supplements' and 'builds upon' § 602(a)." *Greinstein*, 2024 WL 3771455, at *2 (quoting *Gentry*, 102 F.4th at 719, 722). So rather than being at odds, *Greinstein* emphasizes what *Gentry* (and the Supreme Court) require: that § 602 be read in harmony with § 604. *Id.*; *Gentry*, 102 F.4th at 723 ("We … must read sections 602(a), 604(a), and § 604(b) in harmony."); *Helix*, 598 U.S. at 57 ("the two provisions … must be read to complement each other").

NES gets *Hogan v. Allstate Ins. Co.* wrong because, contrary to what NES says, it also reads the regulations in harmony. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621 (11th Cir. 2004). In *Hogan*, insurance agents were paid a non-deductible, guaranteed minimum monthly salary plus commissions based on the number of policies they sold. *Id.* at 625-26. According to NES, only the salary should matter. But the Court found the insurance agents were paid on a salary basis because commissions in addition to a salary were

allowed under former § 118, which contained a provision similar to the current § 604(a) that allows additional compensation in the form of commissions to be paid on top of a salary without violating the salary-basis requirement. *Id.* So *Hogan* does not say § 602(a) can be read in isolation as NES suggests—instead, *Hogan* reinforces the concept that § 602(a) must be read in harmony with § 604(a). *Id.*

The *Douglas* and *Blake* cases cited by NES are also not inconsistent with *Gentry. See* Doc. 77 at 11-12. In both, the plaintiffs' salaries were calculated based on a standard 40-hour workweek, so they were paid on a "weekly basis." *See Douglas v. Argo-Tech Corp.,* 113 F.3d 67, 69 (6th Cir. 1997) (union president guaranteed 40-hours' salary "no matter how many hours he actually worked" plus "the average overtime worked by the employees in their home department."); *Blake v. Broadway Servs., Inc.,* No. CV SAG-18-0086, 2020 WL 1675954, at *6 (D. Md. Apr. 6, 2020) (security officers guaranteed forty hours' pay even for weeks in which they worked less than forty hours, plus additional pay for hours worked in excess of forty). Moreover, in *Blake* the court found § 604(b)'s reasonable relationship test was satisfied. *Blake,* 2020 WL 1675954 at *8.

Nor is *Gentry* out of line with *Cowart v. Ingalls Shipbuilding, Inc.,* 213 F.3d 261 (5th Cir. 2000). First, *Cowart* predates both the current regulations (adopted in 2004) and the Supreme Court's 2023 decision in *Helix.* Second, *Cowart* only addresses the requirement that a weekly salary must not be "subject to reduction[.]" *Cowart,* 213 F.3d at 264-65. Under Ingalls's policy, salary deductions were allowed for personal leave of a day or longer, including "eight consecutive hours in one or two days, including absences which

involve the last four hours of one day and the first four hours of the next day." *Id.* at 263 (cleaned up). While this Court was not persuaded Ingalls's "eight consecutive hours provision is impermissible under the FLSA," it nonetheless analyzed whether the plaintiffs' pay was actually "subject to" reduction and found that it was not. *Id.* at 265-66. So *Cowart* has nothing to do with whether NES paid a salary on a "weekly, or less frequent basis" as required by the current regulations and *Helix*.

NES also says its plan is permissible under *Brock v Claridge Hotel & Casino*, 846 F.2d 180 (3d Cir. 1988). Doc. 77 at 14-17. It does so by applying the predecessor regulation to § 602(a) in isolation. *Id.* According to NES, the regulations applicable at the time *Brock* was decided were "materially different" and would allow NES's pay because they didn't include "reasonable relationship" or "normal workweek language." *Id.* at 22. Of course, this ignores the fact that "normal workweek" is included in the ordinary definition of "salary." *See, e.g, Pickens*, 133 F.4th at 582. But NES is also wrong because the predecessor regulations *Brock* applied contained provisions like current § 604(a). *Brock*, 846 F.2d at 183 (citing 29 C.F.R. § 541.118(b) (superseded)), which allowed additional compensation in addition to a salary for "commissions based on sales," or "a bonus based on profits."). And although it was not § 604(b) yet, *Brock* applied the "reasonable relationship test," which at that time was set forth in the DOL's "Wage and Hour Division Field Operations Handbook" that "provides instructions for Wage and Hour enforcement." *Id.* at 191 (Stapleton, concurring).

Presaging *Helix's*, *Gentry's*, and *Pickens'* application of § 602(a), the *Brock* court

determined that a $250 guaranteed weekly salary for an employee who received $25 per hour was an "illusion" because he could "achieve his 'salary' after ten hours"—far short of a normal workweek. *Id.* at 184–85. The *Brock* court also found the additional hourly compensation was not authorized under the predecessor to § 604(a). *Id.* at 185. And finally, the *Brock* court found no reasonable relationship between the alleged salary and the weekly pay. *Id.* So again, *Brock* confirms what we already know: "We … must read sections 602(a), 604(a), and § 604(b) in harmony." *Gentry*, 102 F.4th at 723.

To make matters worse for NES, *Brock* rejects NES's argument that a predetermined payment above the minimum salary is all that matters. *Brock*, 846 F.2d at 185 ("The underlying issue … is whether an otherwise hourly wage can be transformed into payment on a salary basis … by virtue of the guaranteed minimum weekly payment. We hold that, in these circumstances, it cannot."). But even setting the details aside, NES's reading of *Brock* cannot be correct because as this Court noted, "The Department of [Labor's] Regulations [have] cited [*Brock*] several times when explaining the salary basis test." *Gentry*, 102 F.4th at 725 (citing 69 Fed. Reg. 22122, 22177, 22183 (Apr. 23, 2004) available at: [Federal Register :: Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees](#) (last accessed Sept. 3, 2025)). To top it all off, the *en banc* Fifth Circuit relied on *Brock* in reaching its decision (later affirmed by the Supreme Court) in *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 294 (5th Cir. 2021) (en banc), aff'd, 598 U.S. 39 (2023).

The District Court's finding that Plaintiffs were not paid on salary basis must be

affirmed. The notion that a 1-day (or 2-day) "Retainer" is a weekly salary has been squarely rejected by the Supreme Court, this Court (*en banc* in *Hewitt* and again in *Gentry*), and the Sixth Circuit. Even as a matter of common parlance, a weekly salary doesn't mean payment for one day, any more than rent paid "on a weekly basis" for Monday through Sunday could mean the tenant owes more starting on Tuesday. *Pickens,* 133 F.4th at 581.

**3.        Fact issues prevent summary judgment on willfulness and good faith.**

It is well-established that on summary judgment "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023). Respectfully, the District Court erred by straying from this standard by crediting NES's testimony over Alvarez's evidence. For example, while NES's 30(b)(6) witness claimed the 95%+ failure rate of its supposed "guaranteed" Retainer were simply "mistakes," a jury is not required to believe her. Further, a deposition is not a substitute for "live cross-examination" where the jury can "observe the demeanor of a witness and assess his credibility." *International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991). Indeed, a jury is not required to believe testimony "even if some parts of it are not directly contradicted by other testimony in the record." *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 402 (5th Cir. 2007).

NES claims witness credibility is irrelevant because "many of the key facts … rested on *documents*, not witness credibility[.]" Doc. 77 at 33. But the only "document"

NES points to is a single paragraph in a 2016 Department of Labor (DOL) audit that its witnesses claim justifies the day-rate Retainer. Doc. 77 at 33 (citing ROA.1463).[3]

However, NES admits the DOL and its lawyers advised it the FLSA requires guaranteed salaries. Doc. 72 at 42. At all relevant times, NES's in-house lawyer knew that "if an employee is paid only a day rate, no guaranteed salary, then that – they would be entitled to overtime." ROA.1386 at 138:5–12. So there's no question NES knew that failure to pay guaranteed salaries to employees otherwise admittedly paid by the day would violate the FLSA. *Id.* In fact, NES claims it set up a multi-step review process to make sure every paycheck is correct. ROA.5970-71 at ¶ 12; ROA.6121:1-15; 6121:20-6122:7; 6123:22-6124:17.

Nonetheless, until this lawsuit was filed, **every** time a Plaintiff worked less than the number of days used to calculate the Retainer, NES failed to pay the alleged "guaranteed" Retainer. ROA.6167 at ¶¶ 8-9. The **one** time NES actually paid the Retainer was **after** this lawsuit was filed. *Id.* at ¶¶ 7-8. In other words, before this lawsuit was filed, Plaintiffs' "weekly pay [was] always a function of how many days [they] labored." *Helix*, 598 U.S. at 51. So, setting aside whether its 1 or 2 day "Retainer" qualifies as a salary at all, a jury could easily find NES knowingly paid Plaintiffs a day rate, not its alleged "salary," despite knowing a salary was required. *Id.*

Moreover, NES isn't being honest when it represents its "mistakes"—never, ever

---

[3] While NES also points to "ROA.1236," it has nothing to do with willfulness.

paying the alleged "guarantee" when due—were "quickly-corrected[.]" Doc. 77 at 35, 37. NES **never** paid a Retainer until after this lawsuit was filed. ROA.6167 at ¶¶ 7-8. It did not "quickly correct" prior "mistakes"—rather, the only time it ever paid a Retainer was to Richard McSween in August 2020. *Id.*

NES's failures include paying only a half-day when the basis for calculating the Retainer was a full-day. Doc. 72 at 15 (chart of examples of failure to pay Retainer); ROA.5971 at ¶ 13. For example, when Kevin Pederson worked a half-day when he was under a 1-day Retainer of $1,200, NES only paid him $600:

**DEBUNKING NES'S ALLEGED RETAINER PAYMENTS**

| Name | Days Worked | What would we expect his pay to be? | What was he paid? | What does it mean? |
|---|---|---|---|---|
| Pederson | 0.5 days<br>Doc. 111-7 at 1 | $1,200<br>(Retainer of $1,200 and 1 day@$1,200 = $1,200).<br>Doc. 111-6 at 1-2. | $600<br>Doc. 111-8 at 1. | Confirms "Retainer" not guaranteed. |

ROA.4374. These failures occurred despite NES's lawyers' advice and the DOL's audit. ROA.1463; Doc. 72 at 42. NES's failure to guarantee its so-called salaries are relevant because NES's defense depends on it proving its salaries were "not subject to reduction because of variation in the quality or quantity of work performed." *Helix*, 598 U.S. at 46 (citing § 602(a)). Even if NES believed back in 2016 the DOL approved of treating a day-rate as a salary, it still paid half-days—something the salary basis test has never allowed. *See, e.g., Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185 (11th Cir. 2005); *Campbell v. AG Elec. Co., Inc.*, No. 19-80456-CIV, 2019 WL 7344824, at *2 (S.D. Fla. Oct. 17, 2019) ("When an employer impermissibly reduces an employee's pay

because of a partial day's absence, the 'salary basis' of pay rule is violated and the employee is considered a non-exempt employee entitled to overtime pay."). Given NES's admitted knowledge of its obligations, a jury could find NES willfully violated the FLSA. *Ramos v. Al-Bataineh*, 599 F. App'x 548, 551 (5th Cir. 2015).

To be sure, NES's witnesses claim the Retainer pay failures were merely "mistakes," rather than a knowing or reckless failure to comply with the salary-basis requirement for NES's exemption defense. ROA.4418 (citing defense witness transcripts); *see also* Doc. 77 at 36-37 (same); Doc. 72 at 42. But NES's self-serving testimony is unsupported by any documents. Indeed, NES does not identify a single instance (prior to this lawsuit) where it paid a full Retainer to any Plaintiff that worked less than the basis used to calculate their Retainer. *See* Doc. 77. And the question isn't whether the jury must find NES's violation to be willful, but whether it could.

Alvarez also points to several facts undermining NES's witness's credibility, including the lack of any real system for paying Retainers; the fact that NES benefitted directly by not paying the Retainers; and that NES was advised by the DOL and its lawyers to guarantee its workers payment on a salary basis, not short-change at every opportunity, which is what NES did. *See, e.g.* Doc. 72 at 43-44. When the District Court believed NES's witnesses over Alvarez's evidence, it erred. Respectfully, willfulness and good faith should be remanded for trial.

NES's failures are remarkably similar to those that led the Third Circuit to reverse the finding on willfulness and good faith in *Brock*. In *Brock*, as here, the number of

"instances when the guaranteed payment applied [were] rare" because the "salary" was "earned" early within the normal workweek, which is to say the "salary" was illusory in the first place. *Brock*, 846 F.2d at 182, 187. In *Brock*, the employees received less than the guaranteed salary amount on 305 instances out of 70,000 payments (or about 4.4 times out of 1,000). *Id* at 182, n.1. Claridge argued only a tiny fraction (12 of the 305 instances) represented potential improper deductions, and only back paid those amounts after the DOL began its investigation. *Brock,* 846 F.2d at 182.

At NES the failure to pay the alleged "salary" occurred at a slightly higher frequency: "18 out of 3,753 employee workweeks" (or about 4.8 times out of 1,000). Doc. 77 at 36. But NES never paid the full salary in any of the 18 instances where it should have paid the full Retainer to a Plaintiff who worked less than the basis used to calculate their Retainer. ROA.6167 at ¶¶ 8-9. As discussed *supra*, again, the only instance NES identified of it paying the Retainer when it came into play was after this lawsuit was filed. Thus, NES's behavior is worse than Claridge's. And the Third Circuit reversed the district court's finding the violation was not willful in *Brock*. *Brock,* 846 F.2d at 188–9. The reason is obvious, if Claridge's failures to pay the guaranteed salary meant it "intended to never enforce the [salary] agreement, or that its enforcement procedures amounted to reckless disregard of the terms of the agreement, then the court must find Claridge willfully violated the [FLSA]." *Id.* at 189. Even a broken clock is right twice per day—but NES's Retainer was never correct. Respectfully, the fact NES went 0 for 18 on its alleged "guarantee" should be put to the jury.

No juror must believe NES's witnesses—instead, jurors should observe the live cross-examination at trial and decide for themselves if NES knowingly or recklessly failed to guarantee salaries as required for NES's exemption defense. *See Fontenot*, 227 F. App'x 397 at 402; *International Shortstop, Inc.,* 939 F.2d at 1265. Accordingly, the District Court's summary judgment on willfulness and good faith should be reversed. *See Brock*, 846. F.2d at 189 ("The violation would be willful … if that guarantee was never in effect.").

**4.    Conclusion.**

NES's pay plan isn't a salary because it's based on 1-2 days' pay, not a week, so summary judgment that it is not entitled to its exemption defenses and Plaintiffs are entitled to overtime damages should be affirmed. But NES didn't even do what it says its lawyers and the DOL told it do. Because, at the very least, there is a question of fact with respect to whether NES knew, or showed reckless disregard for whether, it was violating the FLSA, summary judgment on willfulness and good faith should be reversed.

Dated: September 3, 2025.         Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: /s/ David I. Moulton
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    David I. Moulton
    Texas Bar No. 24051093
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com
*Attorneys for Plaintiffs-Appellees-Cross-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

      1.    This document complies with the type-volume limit of Fed. R. App. P. 32(g) and 28.1(e)(2)(C) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 32.2:

■  this document contains 5,280 words, or

☐  this brief uses a monospaced typeface and contains _____ lines of text.

      2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

■  this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Garamond font, or

☐  this document has been prepared in a monospaced typeface using _____ with _____.

Dated: September 3, 2025        **/s/David I. Moulton**

                                      David I. Moulton