Case No. 24-20480

# United States Court of Appeals for the Fifth Circuit

LOYDA ALVAREZ; LEDYS DUNN, Independent
Executor of the Estate of Sammie D. Dunn; ALBERT RODRIGUEZ;
AN NG; ANDREW JAMIESON, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

NES GLOBAL, L.L.C.,

*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division
Civil Action No. 4:20-CV-01933

## SUR-REPLY BRIEF OF DEFENDANT-APPELLANT
## AND CROSS-APPELLEE NES GLOBAL, LLC

J. Stephen Barrick
Texas Bar No. 00796168

HICKS THOMAS LLP
700 Louisiana St., Suite 2300
Houston, Texas 77002
(713) 547-9100

*Attorneys for NES Global, LLC*

112726305

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................ii

TABLE OF AUTHORITIES.............................................................iii

SUR-REPLY ARGUMENT .............................................................1

   I.   The controlling text of the regulation does not support the Plaintiffs' arguments. .........................................1

   II.   The Plaintiffs continue to overstate the holdings in *Helix*..................................................................3

   III.   The Plaintiffs' argument that sections 602(a) and 604(b) should be "harmonized" is a request for judicial revision of the regulations. .......................................8

   IV.   The Plaintiffs' interpretation of the salary-basis regulations will produce nonsensical and paradoxical results. ..............................................................10

   V.   The Plaintiffs' continued reliance on *Brock* is misplaced............................................................13

   VI.   No evidence supports the allegation that NES "willfully" violated the FLSA. ....................................15

CONCLUSION ..........................................................................18

CERTIFICATE OF COMPLIANCE.............................................19

112726305

# TABLE OF AUTHORITIES

## Cases

*Anthony v. U.S.*,
520 F.3d 374 (5th Cir. 2008) .............................................................. 10

*Arnold v. Ben Kanowsky, Inc.*,
361 U.S. 388 (1960) .................................................................. 13, 14

*Brock v. Claridge Hotel & Casino*,
846 F.2d 180 (3d Cir. 1988) ....................................................... 13, 14

*Copeland v. C.I.R.*,
290 F.3d 326 (5th Cir. 2002) ......................................................... 2, 3

*Cowart v. Ingalls Shipbuilding, Inc.*,
213 F.3d 261 (5th Cir. 2000) ............................................................ 13

*Dacar v. Saybolt, L.P.*,
914 F.3d 917 (5th Cir. 2018) (per curiam) ................................... 15, 18

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018) ................................................................... 13, 14

*ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*,
867 F.3d 564 (5th Cir. 2017) ....................................................... 2, 3, 9

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
102 F.4th 712 (5th Cir. 2024) ............................................................ 6

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
598 U.S. 39 (2023) ..................................................... 3, 4, 5, 6, 7, 8, 9

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) ......................................................................... 2, 9

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
15 F.4th 289 (5th Cir. 2021) (en banc),
*aff'd*, 598 U.S. 39 (2023) .................................................................. 10

112726305

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*,
  579 F.3d 546 (5th Cir. 2009) .............................................................. 15

*Perez v. Sturgis Pub. Sch.*,
  598 U.S. 142 (2023) ............................................................................ 2

*Sepulveda v. Allen Fam. Foods, Inc.*,
  591 F.3d 209 (4th Cir. 2009) .............................................................. 1

## Regulations

29 C.F.R. § 541.118(b) (superseded) ...................................................... 14

29 C.F.R. § 541.601 ................................................................................ 3

29 C.F.R. § 541.602 ................................................................................ 1

29 C.F.R. § 541.602(a) ................................................................ 1, 2, 4, 5, 8, 9

29 C.F.R. § 541.603(c) ............................................................................ 17

29 C.F.R. § 541.604 .............................................................................. 3, 4

29 C.F.R. § 541.604(a) .......................................................................... 3, 12

29 C.F.R. § 541.604(b) ..................................................................... 4, 5, 8, 9

69 Fed. Reg. 22,176 (Apr. 23, 2004) ...................................................... 1

69 Fed. Reg. 22,184 (Apr. 23, 2004) ...................................................... 5

## Other Authorities

Brief for Petitioners, *Helix Energy Sols. Grp., Inc. v. Hewitt*,
  No. 21-984 (U.S. July 8, 2022) ............................................................ 3

Plaintiffs' Brief in Opposition to Defendants' Renewed Motion for
  Summary Judgment, *Greinstein v. Granite Servs. Int'l, Inc.*,
  No. 2:18-cv-00208-Z-Br (N.D. Tex. June 4, 2025) ............................ 12

iv

## SUR-REPLY ARGUMENT

### I.   The controlling text of the regulation does not support the Plaintiffs' arguments.

The Plaintiffs continue to run from the actual text of the controlling regulations. The principal salary-basis regulation, 29 C.F.R. § 541.602 ("§ 602"), defines what constitutes a "salary" that meets the "salary basis" test. It provides that:

> An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a). Contrary to the Plaintiffs' suggestions, there is nothing in the regulation requiring a "true salary" that compensates the employee for all work performed in a "normal workweek." *See id.*; *see also* 69 Fed. Reg. 22,176 (Apr. 23, 2004) (discussing "salary basis" under § 602). Nor is there anything in the regulation defining what is a "true" salary or what constitutes a "normal" workweek. *See id.*; *see also Sepulveda v. Allen Fam. Foods, Inc.*, 591 F.3d 209, 213 (4th Cir. 2009) ("The FLSA does not define 'work' or 'workweek.'").

Under settled law, this Court interprets federal regulations the same way it interprets statutes, and when the language of the regulation is unambiguous—as it undisputedly is here—the interpretation begins and ends with the text of the regulation. *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 573 (5th Cir. 2017) (citing *Copeland v. C.I.R.*, 290 F.3d 326, 332-33 (5th Cir. 2002)). The Court applies the regulations as written, and it is never the Court's role to fix or rewrite the regulations based on speculation about what the Secretary of Labor may have intended, or under the banner of advancing the objectives of the regulation. *See Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023) (discussing statutory interpretation); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (same).

But that is what the Plaintiffs are advocating. Indeed, none of their arguments are based on the actual text of the regulation. That is because the regulation not only does *not* require the "predetermined amount" to constitute all of the employee's compensation in a normal workweek, but it explicitly provides that the predetermined amount need only constitute "***part*** of the employee's compensation." 29 C.F.R. § 541.602(a) (emphasis added). And this is reinforced by § 604(a), which provides that the

2

employer may pay the employee "additional compensation" on top of the employee's base salary "on any basis" without losing the exemption. 29 C.F.R. § 541.604(a). Thus, under the plain and unambiguous text of the regulation, which controls under *ExxonMobil* and *Copeland*, there is no requirement that the employer pay a "true" salary for a "normal workweek," and to read such requirements into the regulation would be improper.

## II.   The Plaintiffs continue to overstate the holdings in *Helix*.

To support their position, the Plaintiffs continue to drastically overstate the Supreme Court's holdings in *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023). The sole issue presented for review in *Helix* was whether the salary-basis requirement applies at all to highly compensated employees. *See* Brief for Petitioners at i-ii, *Helix Energy Sols. Grp., Inc. v. Hewitt*, No. 21-984 (U.S. July 8, 2022) (Question Presented).[1] In its opinion, the Supreme Court framed the issue as

---

[1] The sole issue Helix presented in its Supreme Court brief was: "Whether a supervisor making over $200,000 each year is entitled to overtime pay because the standalone regulatory exemption set forth in 29 C.F.R. § 541.601 remains subject to the detailed requirements of 29 C.F.R. § 541.604 when determining whether highly compensated supervisors are exempt from the FLSA's overtime-pay requirements." Brief for Petitioners at i-ii, *Helix Energy Sols. Grp., Inc. v. Hewitt*, No. 21-984 (U.S. July 8, 2022)

"whether a high-earning employee is compensated on a 'salary basis' ***when his paycheck is based solely on a daily rate***—so that he receives a certain amount if he works one day in a week, twice as much for two days, three times as much for three, and so on." *Helix*, 598 U.S. at 43 (emphasis added). The Court concluded that: (a) the salary-basis requirement applied; and (2) the employee in *Helix* was not paid on a salary basis and, therefore, was entitled to overtime pay under the FLSA. *Id.* at 43-46.

To squeeze support out of *Helix* for their interpretations of the salary-basis regulations, the Plaintiff overstate some of its holdings and observations. First, in its opinion in *Helix*, the Supreme Court included a background discussion about the "bona fide executive" exemption and the relationship between sections 602 and 604. *See Helix*, 598 U.S. at 44-47. After discussing § 602(a)—the "main salary-basis provision"—the Court discussed § 604(b), which it said is a separate and distinct avenue for satisfying the salary-basis requirement that applies only to employees paid "on an hourly, a daily or a shift basis." *Id.* at 46. Section 604(b) requires the employer to pay a minimum amount per week that is "roughly equivalent to the employee's usual earnings at the assigned

hourly, daily or shift rate for the employee's normal scheduled workweek." *Id.* at 47 (quoting § 604(b)). The Court noted that these requirements "create a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Id.* (citing commentary from 69 Fed. Reg. 22,184).

The Plaintiffs seize upon the Court's references to "normal scheduled workweek" and "true salary" to imply that the Supreme Court recognized a new requirement *of § 602(a)* that the "predetermined amount" under that section must constitute a "true salary" that includes all compensation for a "normal scheduled workweek." *See* Alvarez Reply at 7-8. But the Supreme Court made no such holding—it was merely commenting on § 604(b), which is separate and independent from § 602(a). *Helix*, 598 U.S. at 47, 50 n.3, 56. Indeed, the Court held that "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt." *Id.* at 50 n.3. It is therefore clear that, contrary to the Plaintiffs' arguments, the Supreme Court did not in any way recognize a "true salary" or "normal workweek" requirement under § 602(a).

Another part of the *Helix* opinion the Plaintiffs seize upon is the Court's reasons for rejecting an argument that the "basis" for an employee's pay refers to how often he receives a paycheck. *See* Alvarez Reply at 3-4 (citing *Helix*, 598 U.S. at 52-53). In *Helix*, the employer argued that even though the employee in that case was paid solely on a daily basis, he should be treated as if he were paid on a weekly or less frequent basis because he received his paycheck every two weeks. 598 U.S. at 52-53. In rejecting this pay-frequency argument, the Court held:

> [The] basis of payment typically refers to the unit or method for calculating pay, not the frequency of its distribution. Most simply put, an employee paid on an hourly basis is paid by the hour, an employee paid on a daily basis is paid by the day, and an employee paid on a weekly basis is paid by the week— irrespective of when or how often his employer actually doles out the money.

*Id.* at 53.

The Plaintiffs argue this is a holding that § 602(a) is not satisfied merely by paying the employee "a preset and non-reducible sum [equal to or exceeding the minimum required salary level] each weekly pay period." Alvarez Reply at 3 (quoting *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 720 n.33 (5th Cir. 2024) (citing *Helix*, 598 U.S. at 52-53)). This assertion is misleading because it suggests that § 602(a)

6

does not mean what it says but, rather, requires something more (*i.e.*, full compensation for the "normal workweek"). But the Supreme Court held no such thing. In actuality, the Court was referring to "paycheck frequency," *Helix*, 598 U.S. at 53, which apparently is why the footnote that the Plaintiffs quote refers to the "pay period." The Supreme Court did not reject any argument NES has made here, as the Plaintiffs contend; it rejected the argument that the pay "basis" is a matter of paycheck frequency.

The Plaintiffs also seize upon the Supreme Court's reference to "calculating pay," arguing it means that the method by which the employer "calculated" the *amount* of the employee's weekly salary determines whether it is paid on a weekly or less frequent "basis." *See* Alvarez Reply at 3-4. This, again, misstates the Supreme Court's holding. The "unit or method for calculating pay" refers to how the salary amount is used in calculating the employee's pay—whether the employee receives it for each month, week, day, or some other time period—not how the salary amount itself was determined. *See Helix*, 598 U.S. at 52-53. The point the Court was making was that the pay "basis" is not controlled by

how frequently the employee's paycheck is distributed. *See id*. That holding is not relevant here.

## III. The Plaintiffs' argument that sections 602(a) and 604(b) should be "harmonized" is a request for judicial revision of the regulations.

The Plaintiffs argue that sections 602(a) and 604(b) need to be "harmonized" in order to save § 604(b) from being "carted off the stage." *See* Alvarez Reply at 2, 9, 10 (mirroring a comment by the majority in *Helix*, 598 U.S. at 56, that one of the employer's arguments "relies on carting § 604(b) off the stage").[2] Their reasoning is not that any of the provisions are in actual or apparent conflict; it is that if the regulations are applied as written, it will be too easy for employers like NES to avoid triggering § 604(b) and its requirements—in particular, the "reasonable relationship" test—by adopting a hybrid pay structure that complies with all the requirements of § 602(a). *See* Alvarez Reply at 2, 10, 13.

---

[2] Justice Kagan's "carted off the stage" comment is inapplicable here. The argument the Court was addressing in *Helix* was that even though the employee was paid "solely on a daily rate," and § 604(b)—not § 602(a)—prescribes the salary-basis requirements for such employees, § 604(b) nevertheless should not apply because the employee was highly compensated. *See* 598 U.S. at 56. Thus, the employer in *Helix* was arguing that the directly applicable provision should not apply. Here, in contrast, NES did not pay the Plaintiffs "solely on a daily rate" but, rather, guaranteed them a "predetermined amount" every week they performed any work, as required under § 602(a). NES's argument is that, by its express terms, § 602(a) controls the salary-basis analysis, not § 604(b).

This is not a legitimate argument for "harmonizing;" it is plea for this Court to **rewrite** the regulation. In essence, the Plaintiffs argue that the Secretary, in drafting the regulations, must have intended to require the "predetermined amount" in § 602(a) to constitute a "true" salary that compensates the employee for all work performed in a "normal workweek," and that this Court should effectuate that assumed intent by reading those requirements into § 602(a), even though the Secretary did not do so herself—and effectively overrule the Supreme Court when it held that sections 602(a) and 604(b) are "independent," and that "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt." *Helix*, 598 U.S. at 50 n.3.

This is exactly what the Supreme Court has admonished courts **not** to do when construing statutes and regulations. "[I]t is never [the Court's] job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced." *Henson*, 582 U.S. at 89; *see ExxonMobil*, 867 F.3d at 573 ("We interpret regulations in the same manner as statutes, looking first to the regulation's plain language.")

(quoting *Anthony v. U.S.*, 520 F.3d 374, 380 (5th Cir. 2008)). As this Court put it in its *en banc* opinion in *Helix*, the Court's job is "to follow the text— not to bend the text to avoid perceived negative consequences" or "to satisfy the policy preferences" of any group or individual. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 298 (5th Cir. 2021) (en banc), *aff'd*, 598 U.S. 39 (2023). Accordingly, the Plaintiffs' request for this Court to revise the regulation should be rejected.

## IV.    The Plaintiffs' interpretation of the salary-basis regulations will produce nonsensical and paradoxical results.

Another reason to reject the Plaintiffs' interpretation of the salary-basis regulations is that it produces nonsensical and paradoxical results that, if accepted, would plague employers in this circuit. Consider the example of a business manager who typically works 40 hours a week and is paid a $5,000/week salary:

(1)     If the employee receives his weekly salary and nothing more, he clearly satisfies the salary-basis test under § 602(a).

(2)     If the same employee's $5,000/week salary was set by assuming 5 days of work at $1,000 per day, the mere fact that that calculation occurred transforms him into a daily rate

employee; § 602(a) no longer applies; and he must satisfy the requirements of § 604(b) to meet the salary-basis test.

(3)    If the same employee under example (1) also receives a bonus of $100 per hour for time worked in excess of 40 hours per week, he still satisfies the salary-basis test under § 602(a).

(4)    If the same employee's bonus is triggered at 30 hours instead of 40 hours, he is transformed into an hourly employee; § 602(a) no longer applies; and he must satisfy all the requirements of § 604(b) because his $5,000/week salary does not include all compensation for work performed during a "normal workweek."

(5)    Same facts as example (3), except the employee actually works significantly more than 40 hours in a typical workweek. Under the Plaintiffs' interpretation, the employee is transformed into an hourly employee; § 602(a) no longer applies; and he must satisfy all the requirements of § 604(b) to meet the salary-basis test because his "normal workweek"

11

exceeds 40 hours, and his $5,000/week salary no longer covers all work performed in his "normal workweek."[3]

These examples show that the Plaintiffs' (and, indeed, *Gentry*'s) interpretation of the regulations is unreasonable. In every example, the express requirements of § 602(a) are met. But in three of the examples, additional requirements not found in the regulation are imposed to render § 602(a) inapplicable. And, paradoxically, the employer's provision of additional compensation to an employee who otherwise meets the salary-basis requirement *negates* that requirement, even though § 604(a) explicitly provides that it will not—that "additional compensation" may be provided on "any basis" whatsoever, including hourly or daily, without it affecting the employee's exempt status. 29 C.F.R. § 541.604(a). The Plaintiffs' interpretation rewrites the regulations, establishes a regime where the issue of whether an employee is paid on a "salary basis" is highly fact-specific and dependent upon the individual employee's work

---

[3] The plaintiffs in the *Greinstein* case (represented by the same counsel representing the Plaintiffs here) are actually advocating this position on remand. *See* Plaintiffs' Brief in Opposition to Defendants' Renewed MSJ at 13-14, *Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-cv-00208-Z-BR (N.D. Tex. June 4, 2025) (arguing they were not paid on a salary basis because they received additional hourly compensation for work in excess of 40 hours and their "normal" workweeks exceeded 40 hours per week).

12

history, and discourages employers from paying additional compensation to salaried employees for working excess hours in a workweek.

## V.    The Plaintiffs' continued reliance on *Brock* is misplaced.

In their Reply Brief, the Plaintiffs place special emphasis on *Brock v. Claridge Hotel & Casino*, 846 F.2d 180 (3d Cir. 1988)—a 37-year-old, divided Third Circuit opinion applying predecessor regulations that are different, and under a since-overruled regime where FLSA exemptions were narrowly construed. *See* Alvarez Reply at 1, 12-13, 17-18 (relying on *Brock*); *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88-89 (2018) (holding FLSA exemptions must be given a "fair reading" rather than narrowly construed) (overruling *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

As discussed in NES's responsive brief, the Plaintiffs' reliance on *Brock* is misplaced. *See* NES Resp. at 14-17. First, as the Plaintiffs themselves admit, *Brock*'s age, and the fact that it applied predecessor regulations that are different from the current regulations, are grounds to distinguish it. *See* Alvarez Reply at 11 (distinguishing *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000), on the grounds that, like *Brock*, it "predates both the current regulations (adopted in

2004) and the Supreme Court's 2023 decision in *Helix*"). Indeed, the salary-basis issue in this case would not even be in controversy under the regulations that *Brock* applied because those regulations expressly provided that, even without the weekly base salary, NES's compensation structure would satisfy the salary-basis requirement. *See* 29 C.F.R. § 541.118(b) (superseded) (providing that the salary-basis requirement is met if the "employee [is] paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work.") (quoted in *Brock*, 846 F.2d at 190 (Stapleton, J., concurring)).

*Brock*'s analysis also does not apply. As noted above, when *Brock* was decided, the law required courts to narrowly construe FLSA exemptions. *Arnold*, 361 U.S. at 392 (overruled by *Encino Motorcars*, 584 U.S. at 88-89). Thus, the court rejected the hybrid pay structure at issue because the regulations did not *specifically* provide that it satisfied the salary-basis requirement. *Brock*, 846 F.2d at 185. Moreover, *Brock* was decided long before there was an established line of authority upholding hybrid compensation structures under § 602(a). *See* NES Resp. at 7 & n.4

14

(collecting cases decided between 2010 and 2024). Thus, it is inappropriate to apply the *Brock* analysis here, and the Plaintiffs' invitation to do so should be rejected.

## VI.  No evidence supports the allegation that NES "willfully" violated the FLSA.

As explained in detail in NES's responsive brief, the district court correctly held that no evidence supports the Plaintiffs' allegation that NES "willfully" violated the FLSA. *See* NES Resp. at 22-31 (ECF No. 77). Evidence of mere negligence is legally insufficient; the Plaintiffs must come forward with evidence that NES "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009); *see Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018) (per curiam) (evidence of negligence is insufficient).

The Plaintiffs do not even attempt to show there is evidence that NES knew the Plaintiffs were not exempt or were improperly classified as exempt. Nor do they attempt to show that NES recklessly disregarded whether they were. Instead, they argue that NES knew that it needed to comply with its own compensation structure, and there were instances where some Plaintiffs worked less than their "retainer period" and were

15

not paid their full retainer for that week. *See* Alvarez Reply at 14-19. The Plaintiffs characterize this as evidence that the base retainer was never actually guaranteed and that NES never intended to comply with the compensation structure at issue. *Id.* at 1-2, 15-17.

This argument is unavailing. The evidence shows that NES nearly always paid the retainer. It was only in extraordinarily rare instances (less than 0.48% of employee workweeks), when certain employees worked some but less than their "retainer period" in a week, that NES failed to pay the full retainer. *See* ROA.6594 ¶ 12 (18 out of 3,753 employee workweeks). NES's representatives testified that these were simply mistakes, ROA.4418, and there is no evidence that NES refused to correct them.

The Plaintiffs attempt to cast doubt on whether these occasional underpayments really were mistakes, but they obviously were mistakes because the full salary or "retainer" was ***guaranteed in writing*** for any week in which the employee performed any work. *See* ROA.1319 (standard offer letter providing that the weekly retainer is "guaranteed," and the employee is "entitled" to receive it for every "work week in which

any time is worked"); *see also* ROA.1513-1992 (offer letters to the Plaintiffs).

The Plaintiffs emphasize that NES did not correct these mistakes until after Alvarez filed this lawsuit in mid-2020, but the evidence shows that NES was never notified of any complaints or concerns before this lawsuit. ROA.1317 ¶ 16. The Plaintiffs cite no evidence that NES was ever informed of any underpayments of any employee's retainer before Alvarez filed this lawsuit, and no evidence that NES refused or resisted paying any amount still owed after being notified.[4] And the Plaintiffs admit that NES corrected the problem after learning of it in this lawsuit. *See* Alvarez Br. at 34 (admitting that "NES eventually guaranteed the Retainer by hard-coding it into the payroll system") (ECF No. 72).

Ultimately, the issue of whether NES willfully violated the FLSA is moot because NES did not violate the FLSA. But assuming this Court holds otherwise, the evidence is not legally sufficient to support the allegation that NES willfully violated the statute. The evidence at most suggests that NES might have been negligent in implementing its

---

[4] Under the regulations, erroneous or improper deductions that are isolated or inadvertent, and that the employer reimburses, do not result in a loss of the exemption. 29 C.F.R. § 541.603(c).

retainer pay structure, which is insufficient as a matter of law to show a willful violation of the FLSA. *Dacar*, 914 F.3d at 926.

## CONCLUSION

For all of the reasons assigned, this Court should reverse the district court's judgment and render a judgment that the Plaintiffs take nothing. In the alternative, in the event that this Court finds that the Plaintiffs were not exempt and affirms that portion of the district court's judgment, this Court should overrule the Plaintiffs' cross-points and affirm the district court's findings and judgment on willfulness and good faith.

Respectfully submitted,

*/s/ J. Stephen Barrick*
J. Stephen Barrick
Texas Bar No. 00796168
sbarrick@hicks-thomas.com

HICKS THOMAS LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 547-9100
(713) 547-9150 (Fax)

*Attorneys for Defendant-Appellant*
*NES Global, LLC*

112726305

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations set in this Court's Order of September 10, 2025, because it contains 3,721 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. P 32(a)(6) because it was prepared in a proportionately spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Dated: September 23, 2025

*/s/ J. Stephen Barrick*